## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELCORDIA TECHNOLOGIES, INC., | |
| *Plaintiff*, | |
| vs. | Case No. 04-CV-874 GMS |
| ALCATEL USA, INC. | **JURY TRIAL DEMANDED** |
| *Defendant,*<br>*Counterclaim-Plaintiff.* | |

### ALCATEL USA'S ANSWER AND COUNTERCLAIMS TO
### PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

For its Answer to Plaintiff Telcordia Technologies, Inc.'s ("Plaintiff") First Amended

Complaint and Demand for Jury Trial ("First Amended Complaint"), Defendant Alcatel USA,

Inc. ("Alcatel USA"), upon knowledge as to its own acts and upon information and belief as to

the acts of others, by and through its undersigned attorneys, responds to each of the numbered

paragraphs thereof as follows:

### THE PLAINTIFF

1.      Alcatel USA lacks knowledge or information sufficient to form a belief as to the

truth and correctness of the allegations in Paragraph 1 of the First Amended Complaint and

therefore denies the allegations.

2.      Alcatel USA lacks knowledge or information sufficient to form a belief as to the

truth and correctness of the allegations in Paragraph 2 of the First Amended Complaint and

therefore denies the allegations.

## THE DEFENDANTS

3.    Alcatel USA admits the allegations in Paragraph 3 of the First Amended Complaint.

4.    Alcatel USA states that its wholly owned subsidiaries sell and offer for sale networking products throughout the United States. Alcatel USA denies the remaining allegations in paragraph 4.

## JURISDICTION AND VENUE

5.    Alcatel USA admits that the First Amended Complaint contains averments of patent infringement that arise under Title 35 United States Code.

6.    Alcatel USA admits that 28 U.S.C. §§ 1331 and 1338(a) grant this Court subject matter jurisdiction over civil actions arising under the patent laws of the United States.

7.    For purposes of this litigation only, Alcatel USA does not contest that this Court has personal jurisdiction over Alcatel USA.

8.    For purposes of this litigation only, Alcatel USA does not contest that venue is proper under 28 U.S.C. §§ 1391(b), (c) and 1400(b).

## COUNT I: INFRINGEMENT OF THE '306 PATENT

9.    Paragraph 9 of the First Amended Complaint realleges and incorporates by reference paragraphs 1-9 of the First Amended Complaint. Thus, Alcatel USA answers paragraph 9 in the same manner it answered paragraphs 1-9.

10.    Alcatel USA admits that, on its face, United States Patent No. 4,893,306 (the "'306 patent") is entitled "Method and Apparatus for Multiplexing Circuit and Packet Traffic"; was filed on November 10, 1987; issued from United States Patent Application No. 118,977 on January 9, 1990; and named Hung-Hsiang J. Chao, Sang H. Lee, and Liang T. Wu as inventors.

2

063535.1001

Alcatel USA admits that what appears to be a copy of the '306 patent was attached to the First Amended Complaint as Exhibit A. Alcatel USA denies the remaining allegations in Paragraph 10 of the First Amended Complaint.

11.     Alcatel USA admits that, on its face, the '306 patent lists Bell Communications Research, Inc. as assignee. Alcatel USA lacks knowledge or information sufficient to form a belief as to the truth and correctness of the remaining allegations in Paragraph 11 of the First Amended Complaint and therefore denies the allegations.

12.     Alcatel USA denies the allegations in Paragraph 12 of the First Amended Complaint.

13.     Alcatel USA denies the allegations in Paragraph 13 of the First Amended Complaint.

14.     Alcatel USA denies the allegations in Paragraph 14 of the First Amended Complaint.

15.     Alcatel USA denies the allegations in Paragraph 15 of the First Amended Complaint.

16.     Alcatel USA denies the allegations in Paragraph 16 of the First Amended Complaint.

## COUNT II: INFRINGEMENT OF THE '633 PATENT

17.     Paragraph 17 of the First Amended Complaint realleges and incorporates by reference paragraphs 1-16 of the First Amended Complaint. Thus, Alcatel USA answers paragraph 17 in the same manner it answered paragraphs 1-16.

18.     Alcatel USA admits that, on its face, United States Patent No. Re 36,633 (the "'633 patent") is entitled "Synchronous Residual Time Stamp for Timing Recovery in a

3

Broadband Network"; issued on March 28, 2000 from United States Patent Application No. 08/555,196, which was filed on November 8, 1995; and named Paul E. Fleischer and Chi-Leung Lau as inventors. Alcatel USA admits that what appears to be a copy of the '633 patent was attached to the First Amended Complaint as Exhibit B. Alcatel USA denies the remaining allegations in Paragraph 18 of the First Amended Complaint.

19.     Alcatel USA admits that, on its face, the '633 patent lists Telcordia Technologies, Inc. as assignee. Alcatel USA lacks knowledge or information sufficient to form a belief as to the truth and correctness of the remaining allegations in Paragraph 19 of the First Amended Complaint and therefore denies the allegations.

20.     Alcatel USA denies the allegations in Paragraph 20 of the First Amended Complaint.

21.     Alcatel USA denies the allegations in Paragraph 21 of the First Amended Complaint.

22.     Alcatel USA denies the allegations in Paragraph 22 of the First Amended Complaint.

23.     Alcatel USA denies the allegations in Paragraph 23 of the First Amended Complaint.

24.     Alcatel USA denies the allegations in Paragraph 24 of the First Amended Complaint.

## JURY DEMAND

25.     Alcatel USA does not contest that Plaintiff has requested a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DB01:1803396.1

063535.1001

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### NON-INFRINGEMENT

26.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-25 of its Answer to the First Amended Complaint as if fully set forth herein.

27.    Alcatel USA has not infringed and does not infringe (either directly, contributorily or by inducement) any valid and enforceable claim of the '306 patent or the '633 patent (collectively the "Telcordia patents-in-suit").

### SECOND AFFIRMATIVE DEFENSE
### INVALIDITY

28.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-27 of its Answer to the First Amended Complaint as if fully set forth herein.

29.    The Telcordia patents-in-suit are invalid for failing to comply with one or more of the conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112, and the rules, regulations and laws pertaining thereto.

### THIRD AFFIRMATIVE DEFENSE
### UNENFORCEABILITY

30.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-29 of its Answer to the First Amended Complaint as if fully set forth herein.

**A. The '306 patent**

31.    On information and belief, the '306 patent is unenforceable because the applicants, and/or individuals acting on behalf of the applicants, deliberately and knowingly

withheld, omitted, and/or misrepresented material information in connection with the prosecution of the application which matured into the '306 patent in violation of the duty of candor to the United States Patent and Trademark Office ("PTO"), as prescribed by 37 C.F.R. § 1.56. The reasons presently known to Alcatel USA that support its belief that the '306 patent is unenforceable are set forth in paragraphs 32-39 infra.

32.     The '306 patent is listed as issuing from U.S. Patent Application Ser. No. 118,977 filed November 10, 1987 (the "'977 application"). Hung-Hsiang Chao, Sang H. Lee, and Liang T. Wu are the applicants listed on the face of the '977 application. On information and belief, at the time that the application was filed, the applicants were each employed by Plaintiff.

33.     On or before November 22, 1985, Mark W. Beckner and Steven T. Minzer published an article entitled "A Tutorial on Asynchronous Time Division Multiplexing (ATDM): A Packet Access Capability For Broadband Interfaces to ISDNs" (the "Beckner-Minzer Article"). This article was published more than one year prior to the filing date of the '977 application and was material to the patentability of the '977 application. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

34.     On information and belief, Hung-Hsiang Chao and Mark W. Beckner were co-workers at Plaintiff's company. On information and belief, Hung-Hsiang Chao and Mark W. Beckner were co-inventors on U.S. Patent No. 4,819,226, filed on the same day as the '977 application and covering related technology. On information and belief, Hung-Hsiang Chao was aware of Mark W. Beckner's publications, especially those related to network communications. For example, in an article entitled "Design Architectures of a DTDM Packet Assembler and Packet Multiplexer" authored by H.J. Chao, published on or before November 11, 1987, H.J. Chao thanks M. W. Beckner for his comments and cites other publications co-authored by M.W.

Beckner. Notwithstanding the foregoing, neither the applicants nor any individuals acting on behalf of the applicants informed the PTO of this article.

35.     Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the Beckner-Minzer Article, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '977 application.

36.     On or before June 10, 1987, L. T. Wu (a co-inventor of the '306 patent), S.H. Lee (a co-inventor of the '306 patent), and T. T. Lee (not a co-inventor of the '306 patent) published an article entitled "Dynamic TDM – A Packet Approach to Broad Band Networking" (the "Wu Article"). This article was published prior to the filing date of the '977 application and was not entirely authored by the applicants of the '977 application. It was therefore material to the patentability of the '977 application and to the inventorship of the alleged inventions of the '977 application, but was not disclosed to the PTO. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

37.     In addition, on information and belief, the Wu Article discloses a mode of practicing the alleged inventions of the '306 patent that was not disclosed in the '977 application.

38.     Based on the foregoing, on information and belief, the applicants, and/or individuals acting on behalf of the applicants, were aware of this publication, but they deliberately and knowingly withheld this material reference during prosecution of the '977 application.

39.     On information and belief, one or more additional references that were material to the patentability of the '306 patent were known to persons of ordinary skill in the art, and upon information and belief, were known by the applicants and/or individuals acting on behalf of the

7

063535.1001

applicants, but the applicants and/or individuals acting on behalf of the applicants deliberately and knowingly withheld these additional material references from the PTO during prosecution of the '977 application.

### B. The '633 patent

40. On information and belief, the '633 patent is unenforceable because the applicants, and/or individuals acting on behalf of the applicants, deliberately and knowingly withheld, omitted, and/or misrepresented material information in connection with the prosecution of the application which matured into the '633 patent in violation of the duty of candor to the PTO, as prescribed by 37 C.F.R. § 1.56. The reasons presently known to Alcatel USA that support its belief that the '633 patent is unenforceable are set forth in paragraphs 41-50 infra.

41. The '633 patent is listed as issuing from U.S. Patent Application No. 08/555,196 filed November 8, 1995 (the "'196 application"). Paul E. Fleischer and Chi-Leung Lau are the applicants listed on the face of the '196 application. On information and belief, Chi-Leung Lau is also known as Richard Lau. On information and belief, at the time that the application was filed, the applicants were each employed by Plaintiff.

42. On or before October 11, 1991, Richard Lau (a co-inventor on the '633 patent) and Bruce Kittams (not a co-inventor on the '633 patent) sent a letter to M. Thierry Houdoin at France Telecom/CNET concerning the use of a residue timestamp for timing recovery (the "Lau letter"). The Lau letter was sent more than one year before the filing date of the '196 application and was not entirely authored by the applicants of the '196 application. It was therefore material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO. On information and belief, at the time that the Lau letter was sent, both of the authors were employed by Plaintiff.

8

063535.1001

43.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, knew of the Lau letter, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

44.    On or before October 14, 1991, M. Thierry Houdoin responded to the Lau letter proposing various detailed aspects of a residue timestamp for timing recovery (the "Houdoin letter").  The Houdoin letter was sent more than one year before the filing date of the '196 application, was addressed to the applicants of the '196 application and was not authored by any applicant named in '196 application.  It was therefore material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application, but was not disclosed to the PTO.

45.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, knew of the Houdoin letter, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

46.    On or before November 4, 1991, Richard Lau and Paul E. Fleischer published an article entitled "Synchronous Residue-TS: A Compromise for SFET/TS" (the "Lau article").  This article was published prior to the filing date of the '196 application, and references communications with France Telecom regarding the design of the residue timestamp.  It was therefore material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application, but was not disclosed to the PTO.  On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

9

47.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the Lau article, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

48.    On information and belief, on or before December 13, 1991, Bruce Kittams and J. Y. Cochennec introduced a proposal for "SRTS (Synchronous Residual Time Stamp)," a method for providing clock frequency recovery, at a CCITT Study Group meeting. The report of the meeting (the "CCITT report") indicates that the proposed SRTS method was the result of a cooperative effort that included at least Plaintiff and CNET. Upon information and belief, the CCITT report was published prior to the filing date of the '196 application. The CCITT report was material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO.

49.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the CCITT report, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

50.    On information and belief, one or more additional references that were material to the patentability of the '633 patent were known to persons of ordinary skill in the art, and upon information and belief, were known by the applicants and/or individuals acting on behalf of the applicants, but the applicants and/or individuals acting on behalf of the applicants deliberately and knowingly withheld these additional material references from the PTO during prosecution of the '196 application.

10

## FOURTH AFFIRMATIVE DEFENSE
### LACHES

51.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-50 of its Answer to the First Amended Complaint as if fully set forth herein.

52.    On or about February 6, 1991, Plaintiff offered Alcatel Network Systems, a predecessor in interest to Alcatel USA, a license under certain patents, including the '306 patent.

53.    Plaintiff filed its original Complaint and Demand for Jury Trial ("Complaint") in this action on July 16, 2004, over thirteen years after first contacting Alcatel Network Systems about a license under the '306 patent and fifteen years after the issuance of the '306 patent. Moreover, during the past thirteen years, Plaintiff gave Alcatel USA numerous reasons to believe that the '306 patent would not be asserted against it. Based upon the course of conduct of Plaintiff and the numerous interactions between the parties over the course of the past thirteen years, Plaintiff's delay in bringing suit is unreasonable, unjustified, and materially prejudicial to Alcatel USA.

54.    Plaintiff amended its Complaint in this action on June 14, 2005, over eleven years after the issuance of U.S. Patent No. 5,260,978 (the "'978 patent"), which Telcordia surrendered to obtain the '633 reissue patent. Based upon the course of conduct of Plaintiff and the numerous interactions between the parties over the past eleven years, Plaintiff's delay in bringing suit is unreasonable, unjustified, and materially prejudicial to Alcatel USA.

55.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the Telcordia patents-in-suit are barred, in whole or in part, by the doctrine of laches.

DB01:1803396.1

063535.1001

## FIFTH AFFIRMATIVE DEFENSE
## LICENSE, ACQUIESCENCE

56.     Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-55 of its Answer.

57.     On information and belief, Plaintiff granted to the Regional Bell Operating Companies ("RBOCs") and to AT&T a license that included rights to use and to have made products covered by the Telcordia patents-in-suit.  To the extent that any of Plaintiff's allegations of infringement are premised on the alleged use, sale, offer for sale, or importation of Alcatel USA's products that were manufactured for or provided to the RBOCs or to AT&T, such allegations are barred pursuant to license.

### A. The '306 patent

58.     On or about May 21, 1998, Plaintiff and Alcatel Network Systems, Inc. (a predecessor in interest to Alcatel USA) entered into a Generic Requirements Participation Agreement (the "GR Agreement") to develop proposed generic requirements related to Synchronous Optical Network (SONET) Transport Systems.  The terms of the GR Agreement grant Alcatel Network Systems and its affiliates a fully paid, royalty free, perpetual license to sell, license, or otherwise transfer products and services that utilize or incorporate the alleged inventions of the '306 patent.  Alcatel Network Systems provided Plaintiff with valuable consideration in exchange for the license granted by the GR Agreement.

59.     On information and belief, Plaintiff failed to disclose to Alcatel Network Systems the alleged applicability of the '306 patent to the products envisioned by the GR Agreement.

60.     By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the '306 patent are barred, in whole or in part, by the doctrines of express license, implied license and/or acquiescence.

12

063535.1001

## B. The '633 patent

61.     On or about June 17, 1999, Newbridge Networks Corporation, Inc. ("Newbridge") and Plaintiff entered into a Patent Licensing Agreement (the "Fleischer Patent License") regarding U.S. Patent No. 5,260,978 (the "'978 patent"). The terms of the Fleischer Patent License grant Newbridge and its affiliates a nonexclusive license to make, have made, use, lease, offer to sell, sell and import products that fall within the scope of one or more claims of the '978 patent and any reissues, reexaminations, or extensions thereof. The terms of the Fleischer Patent License also bar Telcordia from suing Newbridge or Newbridge's customers, mediate and immediate (including authorized resellers and distributors, and end users), for direct or indirect infringement of the '978 patent and any reissues, reexaminations, or extensions thereof, based on use or re-sale of products covered by the license. By its terms, the Fleischer Patent License expired on June 17, 2004, but required Plaintiff to negotiate in good faith a renewal of the license granted to Newbridge. Despite being requested to negotiate a renewal of the Fleischer Patent License, Plaintiff has failed and refused to do so in breach of its contractual obligation. Newbridge provided Plaintiff with valuable consideration in exchange for the license granted in the Fleischer Patent License.

62.     The '633 patent is a reissue of the '978 patent.

63.     Alcatel USA is an affiliate of Newbridge (now named Alcatel Canada Inc.), and Alcatel USA (through its subsidiaries) is also a customer, reseller and/or distributor of products manufactured and/or sold by Alcatel Canada Inc. By reason of the foregoing, Alcatel USA has been expressly licensed under the '633 patent, is still equitably and impliedly licensed under the '633 patent, and/or is licensed as an intended third-party beneficiary under the Fleischer Patent License.

13

64.     By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the '633 patent are barred, in whole or in part, by the doctrines of express license, implied license and/or acquiescence.

### SIXTH AFFIRMATIVE DEFENSE
### EQUITABLE ESTOPPEL

65.     Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-64 of its Answer.

66.     By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the Telcordia patents-in-suit are barred, in whole or in part, by the doctrine of equitable estoppel.

### SEVENTH AFFIRMATIVE DEFENSE
### UNCLEAN HANDS

67.     Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-66 of its Answer to the First Amended Complaint as if fully set forth herein.

68.     By reason, *inter alia*, of the foregoing, Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### EIGHTH AFFIRMATIVE DEFENSE
### INTERVENING RIGHTS

69.     Plaintiff's claims are barred, in whole or in part, because Alcatel USA is entitled to intervening rights with respect to the '633 patent.

### PRAYER FOR RELIEF
### FOR ANSWER

WHEREFORE, Alcatel USA requests that the Court enter judgment:

(a)    Dismissing the First Amended Complaint against Alcatel USA in its entirety with prejudice;

DB01:1803396.1

063535.1001

(b) Finding the claims of the Telcordia patents-in-suit not infringed under 35 U.S.C. § 271;

(c) Finding the claims of the Telcordia patents-in-suit invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112, and the rules, regulations and laws pertaining thereto;

(d) Finding the Telcordia patents-in-suit unenforceable;

(e) Finding that Alcatel USA is not liable in any way for the relief sought in the First Amended Complaint, and denying Plaintiff all such relief;

(f) Finding that, pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 11, and/or other applicable laws, Plaintiff's conduct in commencing and pursuing this action renders this an exceptional case and that Alcatel USA be awarded costs of this action and its attorneys' fees to the extent permitted by law; and

(g) Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Alcatel USA requests a trial by jury of all issues so triable.

DB01:1803396.1

063535.1001

## COUNTERCLAIMS

Alcatel USA, through its attorneys, asserts the following counterclaims against Plaintiff and alleges as follows:

## PARTIES

1.    Alcatel USA is a corporation organized and existing under the laws of Delaware, having a business address at 3400 W. Plano Parkway, Plano, Texas 75075.

2.    As averred by Plaintiff in its First Amended Complaint, Plaintiff is a corporation organized and existing under the laws of Delaware, having a place of business at One Telcordia Drive, Piscataway, New Jersey 08854.

## JURISDICTION AND VENUE

3.    This is an action for a declaratory judgment of non-infringement, unenforceability, and invalidity of United States Patent No. 4,893,306 (the "'306 patent") and United States Patent No. Re 36,633 (the "'633 patent") (collectively the "Telcordia patents-in-suit"); for breach of contract; for breach of the implied covenant of good faith and fair dealing; and for patent infringement.

4.    Plaintiff alleges in its First Amended Complaint in this action that it is the owner of the Telcordia patents-in-suit, and that Alcatel USA infringes those patents. Alcatel USA denies that it infringes any valid and enforceable claim of the Telcordia patents-in-suit.

5.    As a consequence of the foregoing, there is an actual and justiciable controversy between Alcatel USA and Plaintiff with respect to which Alcatel USA requests a declaration by this Court.

6.    This Court has subject matter jurisdiction over this controversy based on 28 U.S.C. §§ 1331 and 1338(a), 28 U.S.C. §§ 2201(a) and 2202, and 28 U.S.C. § 1367.

16

063535.1001

7.    This Court has personal jurisdiction over Plaintiff.

8.    Venue is proper under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## FIRST COUNTERCLAIM – DECLARATORY JUDGMENT
## PATENT NON-INFRINGEMENT

9.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-8 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

10.    Alcatel USA does not import, make, use, sell or offer for sale any communication network product that infringes, induces infringement of, or contributes to the infringement of, any valid and enforceable claim of the Telcordia patents-in-suit, either literally or under the doctrine of equivalents, nor has it ever done so.

## SECOND COUNTERCLAIM – DECLARATORY JUDGMENT
## PATENT INVALIDITY

11.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-10 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

12.    The Telcordia patents-in-suit are invalid for failing to comply with one or more of the conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112, and the rules, regulations and laws pertaining thereto.

## THIRD COUNTERCLAIM – DECLARATORY JUDGMENT
## PATENT UNENFORCEABILITY

13.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-12 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

DB01:1803396.1

063535.1001

## A. The '306 patent

14.    On information and belief, the '306 patent is unenforceable because the applicants, and/or individuals acting on behalf of the applicants, deliberately and knowingly withheld, omitted, and/or misrepresented material information in connection with the prosecution of the application which matured into the '306 patent in violation of the duty of candor to the United States Patent and Trademark Office ("PTO"), as prescribed by 37 C.F.R. § 1.56. The reasons presently known to Alcatel USA that support its belief that the '306 patent is unenforceable are set forth in paragraphs 15-22 infra.

15.    The '306 patent is listed as issuing from U.S. Patent Application Ser. No. 118,977 filed November 10, 1987 (the "'977 application"). Hung-Hsiang Chao, Sang H. Lee, and Liang T. Wu are the applicants listed on the face of the '977 application. On information and belief, at the time that the application was filed, the applicants were each employed by Plaintiff.

16.    On or before November 22, 1985, Mark W. Beckner and Steven T. Minzer published an article entitled "A Tutorial on Asynchronous Time Division Multiplexing (ATDM): A Packet Access Capability For Broadband Interfaces to ISDNs" (the "Beckner-Minzer Article"). This article was published more than one year prior to the filing date of the '977 application and was material to the patentability of the '977 application. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

17.    On information and belief, Hung-Hsiang Chao and Mark W. Beckner were co-workers at Plaintiff's company. On information and belief, Hung-Hsiang Chao and Mark W. Beckner were co-inventors on U.S. Patent No. 4,819,226, filed on the same day as the '977 application and covering related technology. On information and belief, Hung-Hsiang Chao was aware of Mark W. Beckner's publications, especially those related to network communications.

For example, in an article entitled "Design Architectures of a DTDM Packet Assembler and Packet Multiplexer" authored by H.J. Chao, published on or before November 11, 1987, H.J. Chao thanks M. W. Beckner for his comments and cites other publications co-authored by M.W. Beckner. Notwithstanding the foregoing, neither the applicants nor any individuals acting on behalf of the applicants informed the PTO of this article.

18.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the Beckner-Minzer Article, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '977 application.

19.    On or before June 10, 1987, L. T. Wu (a co-inventor of the '306 patent), S.H. Lee (a co-inventor of the '306 patent), and T. T. Lee (not a co-inventor of the '306 patent) published an article entitled "Dynamic TDM – A Packet Approach to Broad Band Networking" (the "Wu Article"). This article was published prior to the filing date of the '977 application and was not entirely authored by the applicants of the '977 application. It was therefore material to the patentability of the '977 application and to the inventorship of the alleged inventions of the '977 application, but was not disclosed to the PTO. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

20.    In addition, on information and belief, the Wu Article discloses a mode of practicing the alleged inventions of the'306 patent that was not disclosed in the '977 application.

21.    Based on the foregoing, on information and belief, the applicants, and/or individuals acting on behalf of the applicants, were aware of this publication, but they deliberately and knowingly withheld this material reference during prosecution of the '977 application.

063535.1001

22.     On information and belief, one or more additional references that were material to the patentability of the '306 patent were known to persons of ordinary skill in the art, and upon information and belief, were known by the applicants and/or individuals acting on behalf of the applicants, but the applicants and/or individuals acting on behalf of the applicants deliberately and knowingly withheld these additional material references from the PTO during prosecution of the '977 application.

**B. The '633 patent**

23.     On information and belief, the '633 patent is unenforceable because the applicants, and/or individuals acting on behalf of the applicants, deliberately and knowingly withheld, omitted, and/or misrepresented material information in connection with the prosecution of the application which matured into the '633 patent in violation of the duty of candor to the PTO, as prescribed by 37 C.F.R. § 1.56. The reasons presently known to Alcatel USA that support its belief that the '633 patent is unenforceable are set forth in paragraphs 24-33 infra.

24.     The '633 patent is listed as issuing from U.S. Patent Application No. 08/555,196 filed November 8, 1995 (the "'196 application"). Paul E. Fleischer and Chi-Leung Lau are the applicants listed on the face of the '196 application. On information and belief, Chi-Leung Lau is also known as Richard Lau. On information and belief, at the time that the application was filed, the applicants were each employed by Plaintiff.

25.     On or before October 11, 1991, Richard Lau (a co-inventor on the '633 patent) and Bruce Kittams (not a co-inventor on the '633 patent) sent a letter to M. Thierry Houdoin at France Telecom/CNET concerning the use of a residue timestamp for timing recovery (the "Lau letter"). The Lau letter was sent more than one year before the filing date of the '196 application and was not entirely authored by the applicants of the '196 application. It was therefore material

to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO. On information and belief, at the time that the Lau letter was sent, both of the authors were employed by Plaintiff.

26.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, knew of the Lau letter, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

27.    On or before October 14, 1991, M. Thierry Houdoin responded to the Lau letter proposing various detailed aspects of a residue timestamp for timing recovery (the "Houdoin letter"). The Houdoin letter was sent more than one year before the filing date of the '196 application, was addressed to the applicants of the '196 application and was not authored by any applicant named in '196 application. It was therefore material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO.

28.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, knew of the Houdoin letter, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

29.    On or before November 4, 1991, Richard Lau and Paul E. Fleischer published an article entitled "Synchronous Residue-TS: A Compromise for SFET/TS" (the "Lau article"). This article was published prior to the filing date of the '196 application, and references communications with France Telecom regarding the design of the residue timestamp. It was therefore material to the patentability of the '196 application and to the inventorship of the

21

alleged inventions of the '196 application, but was not disclosed to the PTO. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

30.     Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the Lau article, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

31.     On information and belief, on or before December 13, 1991, Bruce Kittams and J. Y. Cochennec introduced a proposal for "SRTS (Synchronous Residual Time Stamp)," a method for providing clock frequency recovery, at a CCITT Study Group meeting. The report of the meeting (the "CCITT report") indicates that the proposed SRTS method was the result of a cooperative effort that included at least Plaintiff and CNET. Upon information and belief, the CCITT report was published prior to the filing date of the '196 application. The CCITT report was material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO.

32.     Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the CCITT report, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

33.     On information and belief, one or more additional references that were material to the patentability of the '633 patent were known to persons of ordinary skill in the art, and upon information and belief, were known by the applicants and/or individuals acting on behalf of the applicants, but the applicants and/or individuals acting on behalf of the applicants deliberately

22

and knowingly withheld these additional material references from the PTO during prosecution of the '196 application.

## FOURTH COUNTERCLAIM – DECLARATORY JUDGMENT
## LACHES

34.     Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-33 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

35.     On or about February 6, 1991, Plaintiff offered Alcatel Network Systems, a predecessor in interest to Alcatel USA, a license under certain patents, including the '306 patent.

36.     Plaintiff filed its original Complaint and Demand for Jury Trial ("Complaint") in this action on July 16, 2004, over thirteen years after first contacting Alcatel Network Systems about a license under the '306 patent and fifteen years after the issuance of the '306 patent. Moreover, during the past thirteen years, Plaintiff gave Alcatel USA numerous reasons to believe that the '306 patent would not be asserted against it. Based upon the course of conduct of Plaintiff and the numerous interactions between the parties over the course of the past thirteen years, Plaintiff's delay in bringing suit is unreasonable, unjustified, and materially prejudicial to Alcatel USA.

37.     Plaintiff amended its Complaint in this action on June 14, 2005, over eleven years after the issuance of U.S. Patent No. 5,260,978 (the "'978 patent"), which Telcordia surrendered to obtain the '633 reissue patent. Based upon the course of conduct of Plaintiff and the numerous interactions between the parties over the past eleven years, Plaintiff's delay in bringing suit is unreasonable, unjustified, and materially prejudicial to Alcatel USA.

38.     By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the Telcordia patents-in-suit are barred, in whole or in part, by the doctrine of laches.

063535.1001

## FIFTH COUNTERCLAIM – DECLARATORY JUDGMENT
### LICENSE, ACQUIESCENCE

39.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-38 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

40.    On information and belief, Plaintiff granted to the Regional Bell Operating Companies ("RBOCs") and to AT&T a license that included rights to use and to have made products covered by the Telcordia patents-in-suit.  To the extent that any of Plaintiff's allegations of infringement are premised on the alleged use, sale, offer for sale, or importation of Alcatel USA's products that were manufactured for or provided to the RBOCs or to AT&T, such allegations are barred pursuant to license.

**A.  '306 Patent**

41.    On or about May 21, 1998, Plaintiff and Alcatel Network Systems, Inc. (a predecessor in interest to Alcatel USA) entered into a Generic Requirements Participation Agreement (the "GR Agreement") to develop proposed generic requirements related to Synchronous Optical Network (SONET) Transport Systems.  The terms of the GR Agreement grant Alcatel Network Systems and its affiliates a fully paid, royalty free, perpetual license to sell, license, or otherwise transfer products and services that utilize or incorporate the alleged inventions of the '306 patent.  Alcatel Network Systems provided Plaintiff with valuable consideration in exchange for the license granted by the GR Agreement.

42.    On information and belief, Plaintiff failed to disclose to Alcatel Network Systems the alleged applicability of the '306 patent to the products envisioned by the GR Agreement.

24

43.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the '306 patent are barred, in whole or in part, by the doctrines of express license, implied license and/or acquiescence.

### B. '633 Patent

44.    On or about June 17, 1999, Newbridge Networks Corporation, Inc. ("Newbridge") and Plaintiff entered into a Patent Licensing Agreement (the "Fleischer Patent License") regarding U.S. Patent No. 5,260,978 (the "'978 patent"). The terms of the Fleischer Patent License grant Newbridge and its affiliates a nonexclusive license to make, have made, use, lease, offer to sell, sell and import products that fall within the scope of one or more claims of the '978 patent and any reissues, reexaminations, or extensions thereof. The terms of the Fleischer Patent License also bar Telcordia from suing Newbridge or Newbridge's customers, mediate and immediate (including authorized resellers and distributors, and end users), for direct or indirect infringement of the '978 patent and any reissues, reexaminations, or extensions thereof, based on the re-sale of products covered by the license. By its terms, the Fleischer Patent License expired on June 17, 2004, but required Plaintiff to negotiate in good faith a renewal of the license granted to Newbridge. Despite being requested to negotiate a renewal of the Fleischer Patent License, Plaintiff has failed and refused to do so in breach of its contractual obligation. Newbridge provided Plaintiff with valuable consideration in exchange for the license granted in the Fleischer Patent License.

45.    The '633 patent is a reissue of the '978 patent.

46.    Alcatel USA is an affiliate of Newbridge (now named Alcatel Canada Inc.), and Alcatel USA (through its subsidiaries) is also a customer, reseller and/or distributor of products manufactured and/or sold by Alcatel Canada Inc. By reason of the foregoing, Alcatel USA has

been expressly licensed under the '633 patent, is still equitably and impliedly licensed under the '633 patent, and/or is licensed as an intended third-party beneficiary of the Fleischer Patent License.

47.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the '633 patent are barred, in whole or in part, by the doctrines of express license, implied license and/or acquiescence.

**SIXTH COUNTERCLAIM – DECLARATORY JUDGMENT**
**EQUITABLE ESTOPPEL**

48.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-47 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

49.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the Telcordia patents-in-suit are barred, in whole or in part, by the doctrine of equitable estoppel.

**SEVENTH COUNTERCLAIM – DECLARATORY JUDGMENT**
**UNCLEAN HANDS**

50.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-49 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

51.    By reason, *inter alia*, of the foregoing, Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**EIGHTH COUNTERCLAIM – DECLARATORY JUDGMENT**
**INTERVENING RIGHTS**

52.    Plaintiff's claims are barred, in whole or in part, because Alcatel USA is entitled to intervening rights with respect to the '633 patent.

26

### NINTH COUNTERCLAIM
### BREACH OF CONTRACT AND/OR
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

53.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-52 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

#### A. Breach of Contract

54.    Plaintiff willfully and materially breached the GR Agreement by filing its Complaint and/or its First Amended Complaint in this action accusing Alcatel USA of infringing the '306 patent.

55.    Alcatel Network Systems performed all of its material obligations under the GR Agreement.

56.    Alcatel USA has been damaged and will continue to be damaged as a result of Plaintiff's breach.

57.    Plaintiff will continue to be in breach of the GR Agreement unless and until Count I of Plaintiff's First Amended Complaint is dismissed from this action.

#### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

58.    Plaintiff breached the implied covenant of good faith and fair dealing by interfering with and undermining Alcatel USA's ability and right to sell, license, or otherwise transfer products and services under the GR Agreement by, *inter alia*, failing to disclose the alleged applicability of the '306 patent to the products envisioned by the GR Agreement, and by filing its Complaint and/or its First Amended Complaint in this action accusing Alcatel USA of infringing the '306 patent.

063535.1001

59.     Alcatel USA has been damaged and will continue to be damaged as a result of Plaintiff's breach.

60.     Plaintiff will continue to be in breach of the GR Agreement unless and until Count I of Plaintiff's First Amended Complaint is dismissed from this action.

**TENTH COUNTERCLAIM**
**BREACH OF CONTRACT AND/OR**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

61.     Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-60 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

### A. Breach of Contract

62.     Plaintiff willfully and materially breached the Fleischer Patent License by, *inter alia*, filing its First Amended Complaint accusing Alcatel USA of infringing the '633 patent and failing to negotiate in good faith a renewal of said License.

63.     Newbridge performed all of its material obligations under the Fleischer Patent License.

64.     Alcatel USA has been damaged and will continue to be damaged as a result of Plaintiff's breach.

65.     Plaintiff will continue to be in breach of the Fleischer Patent License unless and until Count II of Plaintiff's First Amended Complaint is dismissed from this action.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

66.     Plaintiff breached the implied covenant of good faith and fair dealing by interfering with and undermining the ability and right of Alcatel USA to make, have made, use, lease, offer to sell, sell and/or import products within the scope of one or more claims of the '633

28

patent by, *inter alia*, failing and refusing to negotiate in good faith a renewal of the Fleischer

Patent License and filing its First Amended Complaint accusing Alcatel USA of infringing the

'633 patent.

67.    Alcatel USA has been damaged and will continue to be damaged as a result of

Plaintiff's breach.

68.    Plaintiff will continue to be in breach of the Fleischer Patent License unless and

until Plaintiff negotiates in good faith a renewal of the Fleischer Patent License and until Count

II of Plaintiff's First Amended Complaint is dismissed from this action.

**ELEVENTH COUNTERCLAIM**
**INFRINGEMENT OF U.S. PAT. NO. 6,247,052**

69.    Alcatel USA incorporates by reference and realleges each and every allegation

contained in paragraphs 1-68 of these Counterclaims and paragraphs 26-69 of its Affirmative

Defenses as if fully set forth herein.

70.    Alcatel USA is the owner of all right, title, and interest in and to United States

Patent No. 6,247,052 (the "'052 patent"), entitled "Graphic User Interface System for a

Telecommunications Switch Management System," which was issued by the United States

Patent and Trademark Office on June 12, 2001.  Attached as Exhibit A is a copy of the '052

patent.

71.    On information and belief, Plaintiff has made, used, sold, and/or offered to sell,

and is continuing to make, use, sell, and/or offer to sell, communications network products,

including, but not limited to, the Telcordia$^{TM}$ Integrated Testing & Analysis System ("TITAS"),

the Telcordia$^{TM}$ Element Communicator ("TEC"), and/or components therof and/or products

containing, incorporating or using the same, in this District and elsewhere throughout the United

States, all without license from Alcatel USA.

29

72.    On information and belief, the communication network products and/or components thereof that Plaintiff has made, used, sold, and/or offered to sell, and that Plaintiff currently makes, uses, sells, and/or offers to sell, infringe, literally and/or under the doctrine of equivalents, one or more claims of the '052 patent under 35 U.S.C. § 271(a), (b), (c), (f), and/or (g).

73.    Upon information and belief, Plaintiff has infringed one or more claims of the '052 patent by inducing others to infringe the '052 patent and/or contributing to the infringement of the '052 patent by third parties.

74.    As a direct and proximate consequence of the acts and practices of Plaintiff in infringing one or more claims of the '052 patent, Alcatel USA has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights.

75.    As a direct and proximate consequence of the acts and practices of Plaintiff in infringing one or more claims of the '052 patent, Alcatel USA has suffered, is suffering, and will continue to suffer injury and damages, for which it is entitled to relief under 35 U.S.C. § 284, in an amount to be determined at trial.

76.    By reason of the acts and practices of Plaintiff, Plaintiff has also caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to plaintiff Alcatel USA for which there is no adequate remedy at law, and for which plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

77.    Upon information and belief, Plaintiff's infringement of the '052 patent has been, and/or hereafter will be, willful and deliberate.

**PRAYER FOR RELIEF**
**FOR COUNTERCLAIM**

WHEREFORE, Alcatel USA requests that the Court enter judgment:

(a)  Dismissing the First Amended Complaint in its entirety with prejudice;

(b)  Declaring the Telcordia patents-in-suit not infringed under 35 U.S.C. § 271;

(c)  Declaring the Telcordia patents-in-suit invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112, and/or the rules, regulations and laws pertaining thereto;

(d)  Declaring the Telcordia patents-in-suit unenforceable;

(e)  Declaring that Plaintiff's claims are barred in whole or in part by the doctrine of laches;

(f)  Declaring that Plaintiff's claims are barred by the doctrines of license, implied license and/or acquiescence;

(g)  Declaring that Plaintiff's claims are barred by the doctrine of equitable estoppel;

(h)  Declaring that Plaintiff's claims are barred by the doctrine of unclean hands;

(i)  Declaring that Plaintiff's claims with respect to the '633 patent are barred by the doctrine of intervening rights;

(j)  Declaring that Alcatel USA is not liable in any way for the relief sought in the First Amended Complaint, and denying Plaintiff all such relief;

(k)  Finding that Plaintiff has willfully and materially breached the GR Agreement;

(l)  Finding that Plaintiff has willfully and materially breached the Fleischer Patent License;

(m)  Finding that Plaintiff has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of the '052 patent;

DB01:1803396.1

063535.1001

(n)   Permanently enjoining Plaintiff and those acting in active concert or participation with it from engaging in any further acts of infringement of the '052 patent;

(o)   Awarding Alcatel USA monetary damages in an amount to be determined at trial;

(p)   Finding that, pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 11, and/or other applicable laws, Plaintiff's conduct in commencing and pursuing this action renders this an exceptional case and that Alcatel USA be awarded costs of this action and its attorneys' fees to the extent permitted by law; and

(q)   Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Alcatel USA requests a trial by jury of all issues so triable.

Dated:  August 10, 2005                    Respectfully submitted:

Josy W. Ingersoll (I.D. No. 1088)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street; 17th Floor
Wilmington, DE 19801
Tel. (302) 571-6672
jingersoll@ycst.com
*Attorneys for Defendant / Counterclaim Plaintiff*
*Alcatel USA, Inc.*

DB01:1803396.1                                                                                          063535.1001

OF COUNSEL:

Stuart J. Sinder
Clement J. Naples
KENYON & KENYON
One Broadway
New York, NY 10004
Tel. (212) 425-7200

063535.1001

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire hereby certify that on August 10, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

**BY HAND DELIVERY**

> Steven J. Balick, Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> Wilmington, DE 19801

I further certify that on August 10, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

> Richard L. Rainey, Esquire
> Finnegan, Henderson, Farabow
>  Garrett & Dunner, L.L.P.
> 901 New York Avenue, NW
> Washington, DC 20001

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> Josy W. Ingersoll (No. 1088)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> jingersoll@ycst.com
> Attorneys for Alcatel USA, Inc.

DB01:1803910.1                                                                063535.1001