# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,     )
                                 )
        Plaintiff,             )
                                 )
                                 )   Civil Action No. 04-874-GMS
        v.                 )
                                 )
ALCATEL USA, INC.,             )
                                 )
        Defendant.          )
                                 )
                                 )

## TELCORDIA'S MOTION TO DISMISS,
## OR IN THE ALTERNATIVE, TO SEVER AND STAY
## ALCATEL USA, INC.'S PATENT INFRINGEMENT COUNTERCLAIM

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Plaintiff Telcordia Technologies, Inc.*

*Of Counsel:*

Donald R. Dunner
Richard J. Smith
Don O. Burley
Richard L. Rainey
Houtan K. Esfahani
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave, N.W.
Washington, D.C. 20001
(202) 408-4000

York M. Faulkner
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia 20190
(571) 203-2700

Dated: September 29, 2005

161896.1

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

       A.     PROCEDURAL HISTORY ............................................................................. 2

       B.     THE TECHNOLOGY OF TELCORDIA'S PATENTS ................................. 6

       C.     ALCATEL'S WEB-BASED MANAGEMENT PATENT .............................. 7

II.    ARGUMENT .............................................................................................................. 9

       A.     DISMISSAL .................................................................................................... 9

       B.     SEVERANCE AND STAY ........................................................................... 11

              1.     Alcatel's counterclaim should be severed at a minimum
                     because it will multiply the proceedings and could result in
                     juror confusion. .................................................................................. 12

              2.     Alcatel's counterclaim should be severed at a minimum
                     because it will unfairly prejudice Telcordia and the other
                     parties. ............................................................................................... 15

III.   CONCLUSION .......................................................................................................... 17

## TABLE OF AUTHORITES

**Cases**

*Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*,
  1994 U.S. Dist. LEXIS 17569, at 14 (N.D. Cal. 1994) ............................................................... 12

*Ciena Corp. v. Corvis Corp.*,
  210 F.R.D. 519 (D. Del. 2002) ............................................................................. 14

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
  896 F. Supp. 505 (D. Md. 1995) ................................................. 11, 12, 14, 16

*Intel Corp. v. Broadcom Corp.*,
  173 F. Supp. 2d 201 (D. Del. 2001) ........................................................ 11, 14

*Malcom v. National Gypsum Co.*,
  995 F.2d 346 (2d Cir. 1993) ............................................................................. 14

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000) ............................................................................. 10

*Tschantz v. McCann*,
  160 F.R.D. 568 (N.D. Ind. 1995) ...................................................................... 10

**Rules**

Federal Rule of Civil Procedure 13(b) .............................................................. 10

Federal Rule of Civil Procedure 15(a) .............................................................. 10

Federal Rule of Civil Procedure 21 .............................................................. 11, 12

Federal Rule of Civil Procedure 42(b) .............................................................. 11

## I.    INTRODUCTION

As the Court will recall, at the case management conference on April 14, 2005, the defendants, in particular Alcatel, strenuously urged the Court not to allow Telcordia to add any more patents into the cases because it was, in their words, simply too late.  According to the defendants, the parties had a long history of negotiations; the cases already had been pending for 9 months; work done in discovery on the patents already in suit might have to be repeated.  In short, the addition of new patents even at that early date, so the defendants argued, would severely prejudice them.  The Court was sympathetic to the defendants' arguments, but, rather than prohibit outright any amendment of the pleadings, it gave all parties, including Telcordia, a short time (two months) to amend, setting June 14, 2005, as the cut-off date to amend the pleadings.  At the conference, Telcordia asked the Court for assurances that the cut-off date applied to all parties, which the Court confirmed.  Telcordia met that deadline and added one patent to its cases against Cisco and Alcatel and two patents in its case against Lucent.  None of the defendants filed any amended pleadings before the due date.

For the first time, just days before its answer to the amended complaint was due (and more than a month after the amendment cut-off date), Alcatel demanded that Telcordia make available technical information on unrelated software.  Alcatel claimed it needed such information to pursue possible infringement claims based on unspecified Alcatel patents.  Then, in its answer filed on August 10, 2005, Alcatel asserted a counterclaim for infringement of an Alcatel Internet-browser patent never before mentioned to Telcordia.

The Court should not countenance Alcatel's flaunting of the established amendment cut-off date that Alcatel requested by allowing Alcatel to use its answer to Telcordia's amended complaint as a back door device to add entirely new and unrelated issues into the case at this late date.  Whether or not the defendants' arguments about prejudice were correct as of the date of

the Court's scheduling conference, at this point in time—some 4 months later and on the eve of the *Markman* process—it would greatly prejudice Telcordia to add an unrelated patent into the case. Telcordia has already completed its document collection in response to the defendants' discovery requests. A new patent will necessitate a whole new effort to collect documents. New witnesses will have to be interviewed. New and unrelated positions will have to be analyzed. All this with the *Markman* process just around the corner.

Dismissal, or at a minimum severance and stay, is appropriate as Alcatel's Internet-browser patent is unrelated to Telcordia's patents. Separating Alcatel's unrelated action could benefit the parties and the Court in the following ways: Delays resulting from the addition of unrelated claims into the proceedings could be avoided; Jury comprehension of each patent claim could be enhanced; Prejudice Telcordia would suffer in defending against Alcatel's surprise claim at this advanced stage in the proceedings could be reduced; and Judicial economy in coordinated discovery concerning the legal and factual issues in the Telcordia v. Alcatel, Cisco, and Lucent cases could be maintained.

## A. PROCEDURAL HISTORY

Telcordia sued Alcatel for infringing Telcordia's U.S. Patent No. 4,893,306 ("the '306 patent") on July 16, 2004. (Ex. 1, D.I. 1.) On the same day, Telcordia also filed suit against Lucent for infringing the same '306 patent and against Cisco for infringing the '306 patent as well as Telcordia's synchronous residual time stamp (or SRTS) patent, U.S. Patent No. Re 36,633. (Ex. 2-3.) Alcatel, Lucent, and Cisco each answered the three Telcordia complaints on

December 2, 2004.[1]  (Ex. 4-6.)  None of these companies, including Alcatel, asserted patent infringement claims against Telcordia.

During the April 14, 2005, Scheduling Conference, Telcordia indicated its intention to add other patent claims against Alcatel, Lucent, and Cisco.  In response, the defendants, and in particular Alcatel, vigorously opposed allowing Telcordia time in the schedule to add other patent claims.  Specifically, Alcatel complained about the timing of the amendment relative to the filing of Telcordia's initial claims ("This case has been pending for nine months and our feeling is there comes a time when the plaintiff ought to decide what patents it wants to assert. . . . [I]f they haven't asserted a patent against one of the defendants, we think it should be basically too late.").  (Ex. 7, Sched. Conf. Tr. at 31-32.)  Alcatel also claimed that adding patents was "really prejudicial" and "extremely prejudicial" because Alcatel would have to collect documents multiple times (*id.* at 32, 44):

> One of the reasons for that has to do with fairness and burden in discovery.  We've gotten extensive discovery requests from them.  The parties have exchanged some initial discovery requests after we filed the joint status report.
>
> At least from an Alcatel standpoint, we have a variety of facilities around the United States and there are prior art issues that are overseas and what not.  We're going to have to send people, search for documents, interview potential witnesses and four or five months from now or seven months from now, I don't want to have to do that again with a whole new patent.  I think that is really prejudicial.
>
> *         *         *
>
> It's going to be **extremely prejudicial** to Alcatel I think in particular but I think all the defendants to have to go through the process of responding to that a second or a third time as patents get added.  I think that should be taken into consideration very heavily.

---

[1] Rather than serving the complaint immediately, Telcordia waited until November 12, 2004 to serve the complaint, hopeful that it could resolve its disputes with Alcatel and the other defendants.  Unfortunately, no settlements were reached.

Alcatel's solution was straightforward, the addition of new patents should occur before discovery begins (*id.* at 32):

> And I think based on the timetable that we've seen here, we think they should decide -- they should have decided already but we think they should decide now, before we start the discovery process, whether they're going to sue us on anything else.

The Court agreed with Alcatel and the other defendants that Telcordia should not have an extended time to add new patents. Significantly, Alcatel was silent throughout the April 14, 2005, scheduling conference as to its own intention to assert its separate patent infringement claims against Telcordia.

Thus, the Court accepted the date of June 14, 2005—a date the defendants proposed—to amend the pleadings. The Court made clear that the date of June 14, 2005 applies to all parties (Ex. 7, Sched. Conf. Tr. at 47):

> MR. RAINEY: Your Honor, just for clarification, is that 60 days? What is the cutoff for amending the complaint?
> THE COURT: Yes.
> MR. RAINEY: That is going to be applicable to both sides in the case?
> THE COURT: Everything that we're going to set here today.

Additionally, the Court established a schedule for claim construction proceedings, setting a date of November 17, 2005, for the parties to exchange lists of disputed claim terms, and a March 31, 2006 deadline for completing fact discovery. (Ex. 8, Scheduling Order.)

On June 14, 2005, Telcordia filed a stipulation to amend its complaint against Alcatel to add a patent infringement claim based on the same '633 patent asserted against Cisco. (Ex. 9.) At that time, Alcatel was well aware of the '633 patent. For example, Telcordia had licensed the '633 patent to a company that Alcatel acquired and, after the acquisition, Telcordia and Alcatel discussed the applicability of the license to Alcatel. (Ex. 10-13.) Also, in May 2005, Telcordia specifically informed Alcatel that it would amend its complaint to add the '633 patent.

Alcatel, on the other hand, continued to remain silent. Alcatel made no effort to amend its Answer to add its patent infringement claims against Telcordia within the deadline that it requested and the Court established.

In fact, the first inclination Alcatel provided that it wished to add a patent counterclaim against Telcordia did not come until July 26, 2005—more than one month after the deadline to amend the pleadings and more than one year after Telcordia had filed its original complaint. Alcatel sent a letter (Ex. 14) asking for information regarding nine of Telcordia's software products. Alcatel, however, did not mention which patent or patents it intended to assert against Telcordia's software products. Alcatel then limited the scope of its request on July 29 (Ex. 15), but still did not identify the patent that it contemplated it might assert. Attempting to address the issue of whether an amendment was timely, Alcatel contended that Federal Rule of Civil Procedure 13(b) would allow it to assert a patent counterclaim. (*Id.* at 2.) Then, on August 10, 2005, Alcatel added its patent infringement counterclaim, for the first time identifying Alcatel's U.S. Patent No. 6,247,052 patent to Telcordia. (Ex. 16.)

During the time leading up to Alcatel's counterclaim, the parties engaged in discovery concerning Telcordia's patents. To date, Telcordia and the defendants have produced nearly one and a half million pages of documents. (Ex. 17, Wilson Decl. ¶ 2.) Alcatel's contribution to that number is negligible. Where Telcordia has produced over three hundred thousand pages of documents, Cisco nearly two hundred thousand, and Lucent nearly a million (*id.* at ¶ 3), Alcatel has only produced about 9,000 pages of documents. (*Id.* at ¶ 4.) And, despite having added an additional patent, Alcatel's production lacks documents to support its contention that Telcordia has infringed its patent. (*Id.* at ¶ 5.) The parties have also responded to over fifty interrogatories.

(*Id.* at ¶ 6.) Alcatel has not even identified people with knowledge about its patent, or other information required under Federal Rule of Civil Procedure 26(a)(1). (*Id.* at ¶ 7.)

Recently, Cisco has attempted to coordinate discovery, asking to have blanket access to documents that Telcordia has produced to Alcatel. (Ex. 18.) That proposal is unworkable as Telcordia will have to produce sensitive information to respond to Alcatel's unrelated patent claim, sensitive information that should not be shared with Cisco.

## B.    THE TECHNOLOGY OF TELCORDIA'S PATENTS

Telcordia's patents are directed to systems that allow data transmission, e.g., from one computer to another. The '306 patent discloses circuitry that places data into packets and transmits the packets by inserting them into "frames," which are sent over a transmission channel. (Ex. 19.) The patent calls its technique for transmitting data "Dynamic Time Division Multiplexing (DTDM)" (Ex. 19, '306 patent, col. 1, lines 25-35):

> This invention relates to the transmission of data in telecommunications networks. More particularly, the present invention relates to a data transmission technique referred to herein as Dynamic Time Division Multiplexing (DTDM), and a set of multiplexers and demultiplexers required to apply DTDM in an actual telecommunications network. DTDM is capable of effectively handling both circuit and packet traffic and thus provides a migration strategy between the present circuit switched telephone network and the future broadband packet switched network.

Telcordia's '633 SRTS patent transmits timing information in a packet-based telecommunications network to allow a receiver to synchronize its clock to that used at the source of the data being transmitted. (Ex. 20.) Specifically, the '633 patent discloses circuitry for generating a "Synchronous Residual Time Stamp" and adding it to a transmitted data stream.

Neither the '306 nor the '633 patents deals with graphical user interface software, such as a web browser.

6

C.    ALCATEL'S WEB-BASED MANAGEMENT PATENT

Alcatel's U.S. Patent No. 6,247,052 patent, issued June 12, 2001, is unrelated to Telcordia's data transmission patents.  (Ex. 21.)  The '052 patent is entitled "Graphic User Interface System for a Telecommunications Switch Management System."  Rather than dealing with systems for transmitting and synchronizing packetized data, the '052 patent discloses a web-based software system that remotely monitors the status of telecommunications equipment (Ex. 21, Abstract):

> A graphic user interface launcher for providing graphic displays for enabling one or more users to access a telecommunications switching system for any desired purpose, such as to monitor, control or reconfigure the telecommunications switching system. Users may access the telecommunications switching system from any remote location using a standard remote computer having a browser.

Figure 11 shows an initial window of the web-based software system (note the label "Netscape" in the Figure) in accordance with the teachings of the '052 patent (Ex. 21, Figure 11):

7



The face of the '052 patent also demonstrates its subject matter is different than Telcordia's patents. None of the patents ("prior art") identified on the face of the '052 patent was cited on the face of either of Telcordia's patents. (*Compare* Ex. 21 *with* Exs. 19-20.) Moreover, the United States Patent and Trademark Office "classifies" each patent application

and directs the application to the appropriate group within the Office for examination. The face of the patents shows that Alcatel's patent was examined in a completely different area (Class 709) than Telcordia's patents (Classes 370 and 375). (*Id.*)

As can be expected considering the differences in technology between the '052 web-based software patent and Telcordia's patents for transmitting and synchronizing packetized data, the products accused of infringing the respective patents are not the same. Telcordia has accused Alcatel's switching and routing equipment of infringement (Ex. 22); Alcatel has accused Telcordia's software products (Ex. 23, Giordano Decl. ¶ 2-3), which will entail consideration of completely different analyses of technical, sales, economics, and reasonable royalty issues. Moreover, Telcordia's software engineers, not the engineers who invented the inventions described in Telcordia's patents, developed the products Alcatel accuses of infringement. (Ex. 23, Giordano Decl. ¶ 4.)

In sum, the technical and economic evidence and expert testimony about the products at trial would not have any areas of overlap or similarity.

## II.    ARGUMENT

### A.    DISMISSAL

The Court's Scheduling Order allowed pleadings to be amended up until June 14, 2005. That deadline was not a trivial event in the schedule. It was set at the insistence of the defendants, including Alcatel. Moreover, the Court emphasized that the June 14, 2005 deadline applied equally to the defendants. Alcatel, presenting its counterclaim on August 10, 2005, did not avail itself of that option[2] and, accordingly, its claim should be dismissed.

---

[2] In fact, Alcatel's July 26, 2005 letter to Telcordia stated that it was still investigating its '052 patent, and Alcatel has never said when it *began* its investigation.

Scheduling Orders often alter default timelines contained in the Federal Rules of Civil Procedure. For example, although Federal Rule of Civil Procedure Rule 15(a) can allow a motion to amend a pleading to be made without a showing of good cause, a Scheduling Order can extinguish that right. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.")

Here, the Scheduling Order set the time for all parties to amend their pleadings, and Alcatel sat on the sidelines and allowed discovery to proceed without mentioning its patent. Alcatel has not sought to establish that it had good cause for its delay. Indeed, Alcatel has not said that it was diligent, nor could it. Alcatel's '052 patent issued more than four years ago. *See id.* ("we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party."); *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995) ("[T]o demonstrate 'good cause' a party must show that despite their diligence the time table could not have reasonably been met.") In sum, Alcatel has provided no reasonable explanation for its delay and cannot show the good cause necessary to justify adding its counterclaim at this time.

At most, Alcatel suggested that it found a loophole in the Court's Scheduling Order. Citing Federal Rule of Civil Procedure 13(b), Alcatel contended that any permissive counterclaim was allowed as long as it was made within the time established to respond to Telcordia's amended complaint under the Federal Rules of Civil Procedure. (*See* Ex. 15 at 2.)

Alcatel's position is incorrect because it ignores this Court's guidance, and its own arguments, during the scheduling conference. Following Alcatel's vigorous opposition to allowing additional Telcordia patents into the cases, Telcordia asked whether the deadline to

amend the pleadings applied to all parties, and the Court answered in the affirmative. Any issue about whether Alcatel could assert its patent as a permissive counterclaim in response to Telcordia's amended pleading was not raised—but that was only because Alcatel chose to remain silent about its '052 patent. Telcordia submits that the Scheduling Order and conference were clear—no new patents could be added by any party after June 14, 2005.

And it must be remembered that Alcatel's counterclaim is entirely permissive—which means (1) it could have been brought during the period allowed by the Scheduling Order and (2) it is in no way responsive to Telcordia's amendment made within that period. When viewed in the light of a permissive claim, Alcatel's position manifests itself as a clear attempt to unilaterally extend the deadline for amending pleadings. For these reasons, Alcatel's patent infringement counterclaim should be dismissed.[3]

## B.    SEVERANCE AND STAY

At a minimum, Alcatel's counterclaim should be severed and stayed either under Federal Rule of Civil Procedure 21 or Federal Rule of Civil Procedure 42(b).[4] "A claim may be severed if it will serve the ends of justice and further the prompt and efficient disposition of litigation." *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506 (D. Md. 1995).

---

[3] At the same time Telcordia is filing this motion, Telcordia is, cautious to avoid issues of default and waiver, also answering Alcatel's counterclaim and responding with counterclaims directed to Alcatel's new patent. Telcordia intends to withdraw its counterclaims should dismissal of Alcatel's counterclaim be ordered.

[4] Although both Rules 21 and 42(b) provide authority to sever claims, the difference between the two rules is that severing under Rule 21 would allow Alcatel's claim to proceed as a separate action (as occurred in *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506 (D. Md. 1995)) but severing under Rule 42(b) would retain the claim in this action, which could be resolved pending resolution of Telcordia's patent claims (as occurred in *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 205 (D. Del. 2001)). Due to the unrelated nature of Alcatel's claim, Telcordia submits that it would be more proper to entirely sever the claim under Rule 21.

     **1.**     **Alcatel's counterclaim should be severed at a minimum because it will multiply the proceedings and could result in juror confusion.**

Alcatel is attempting to inject a patent into this dispute that bears no relation to Telcordia's patents.[5] Alcatel's software patent is directed to a web-based system, not to the mechanics of how networking equipment transfers data. *See supra* Section I.C.

In *CVI*, a court found that severance of a defendant's patent infringement counterclaim was appropriate under Rule 21 to lessen the potential for jury confusion because "the jury would need to consider separate eyeglass frames, separate patent claims and specifications, separate file histories, and separate affirmative defenses." *Id.* at 506-507. The court found severance was appropriate even where the plaintiff and defendant's patents involved the same technology. *Id.* at 506. Indeed, a patent case involving a single patent is difficult enough for a jury because patent cases are notoriously complex. *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 1994 U.S. Dist. LEXIS 17569, at 14 (N.D. Cal. 1994) ("Consolidating these two cases would require the jury to hear, digest, and keep separate testimony on twice as many patents . . . [such that] the likelihood of jury confusion outweighs any efficiency that might be achieved through consolidation.")

Injecting Alcatel's unrelated patent into the dispute will complicate every stage of the proceedings. In fact, it has already complicated discovery, as Alcatel has been stalling discovery and has not provided Telcordia with materials relating to its claim against Telcordia (or even Telcordia's claims against Alcatel). (*See supra* pages 5-6.)

---

[5] Telcordia's cases against Lucent and Cisco involve an additional patent, U.S. Patent No. 4,835,763. That patent is related to the '306 and '633 patents asserted against Alcatel and unrelated to Alcatel's '052 patent as it is also a data transmission patent and not a web-based software patent.

Starting in November, *Markman* proceedings will begin. Interpretation of Alcatel's patent will entail analyzing different claims, a different file history, and unrelated prior art. Further, interpretation of Alcatel's patent may require study of extrinsic evidence, which will likely be provided from different sources and different expert witnesses. (*See supra* pages 7-9.)

After the claims are interpreted, a jury will have to resolve disputes concerning features of the accused products. Unlike the situation in *CVI*, the accused products—the software products accused of infringing Alcatel's patent and the networking equipment accused of infringing Telcordia's patents—are different. Moreover, the Telcordia software engineers who developed Telcordia's accused products are not the same engineers that thought of the inventions described in Telcordia's patents-in-suit, and the same also appears to be true with regard to the Alcatel engineers who designed the products Telcordia accuses of infringement and Alcatel's named inventors. Further, technical expert testimony may be required to study the accused products, which will likely be provided from different sources and different expert witnesses. Also, economic experts will opine on these different areas of technology regarding royalty rates and effects of varying competing technology. (*See supra* page 9.)

Also, the jury will have to resolve the issues of validity and enforceability of Alcatel's and Telcordia's patents. Here, Alcatel is asserting defenses of invalidity based on prior art and unenforceability based on conduct before the PTO. Telcordia also will be asserting a prior art defense. But, as suggested by the non-overlap of prior art on the faces of the Alcatel and Telcordia patents, those defenses will be unrelated. (*See supra* pages 8-9.) Once again, different sets of experts are likely to be called to opine on disputes regarding the different technology.

Other issues, such as equitable defenses and willful infringement, will have to be weighed by the jury. As such issues are often individual and very fact specific, presentation of those defenses will also entail different facts, theories, and witnesses.

In sum, Alcatel's patent should be severed as it has no relationship to Telcordia's patents based on claims, specifications, file histories, accused products, witnesses, prior art, and affirmative defenses. *CVI*, 896 F. Supp. at 506-507. Alcatel's claim will only serve to increase the possibility of juror confusion. Like in *CVI*, courts in this district have recognized the advantages of severing claims in complex patent infringement cases. *See Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (establishing liability and damages phases of trial; calling bifurcation "an important discretionary tool that district courts can use in patent cases to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them"); *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 205 (D. Del. 2001) (noting that the court delayed trial on three out of five of plaintiff's patent claims "[i]n order to simplify the issues before the jury and to shorten the length of the jury trial"). The danger of asking a jury to decide all issues in the same trial is "the jury throwing up its hands in the face of a torrent of evidence." *See Malcom v. National Gypsum Co.*, 995 F.2d 346, 352 (2d Cir. 1993) (district court's judgment was reversed because a party was prejudiced by trying multiple claims in a single case).

> **2.    Alcatel's counterclaim should be severed at a minimum because it will unfairly prejudice Telcordia and the other parties.**

As discussed above, Alcatel's unexplained delay in asserting its patent violated the Scheduling Order established for this case. At a minimum, Alcatel's late claim should be severed because it disrupts the Court's Scheduling Order.

Telcordia filed its claim involving the '306 patent against Alcatel, after years of discussions concerning both Telcordia patents-in-suit, in July 2004. Alcatel, however, waited silently for years before Telcordia's complaint was filed and then for more than a year after the complaint was filed before mentioning its '052 web-based software patent.

In the interim, discovery commenced in April 2005. Documents have been collected and produced. Interrogatories have been answered. Indeed, based on the comments made during the Scheduling Conference, Alcatel would have to admit that the addition of claims after the initial rounds of discovery is "extremely prejudicial." (*See supra* page 3 (citing Ex. 7, Sched. Conf. Tr. at 44).)

Indeed, the prejudice resulting from Alcatel's delay is clear. Where Alcatel was able to leisurely study the file history of Telcordia's patent and make allegations based on it, Telcordia was left ordering the file history for Alcatel's '052 patent from the PTO when Alcatel's allegations surfaced in early August 2005.

Now, with *Markman* proceedings starting in November 2005, instead of having years to develop claim construction positions regarding Telcordia's patents, Telcordia must study the file history of Alcatel's patent, develop its claim interpretations, and muster support for those positions in a matter of weeks. Moreover, it would not be unexpected that Alcatel's outward silence on its patent has allowed it to secretly develop its positions and evidence regarding its patents a long time ago.

Aggravating the prejudice to Telcordia, Alcatel has stalled discovery. Alcatel has not produced any information concerning its new patent, and has not indicated any plans to do so. (*See supra* pages 5-6.) With commencement of *Markman* proceedings weeks away, Telcordia's

chore of developing claim construction positions may prove impossible without immediate and full discovery from Alcatel.

Even beyond the *Markman* proceedings, Alcatel's delay is meaningfully prejudicial. This Court ordered that discovery close on March 30, 2006. Alcatel's late claim nearly reduces by half the discovery period for its patent compared to the discovery period for Telcordia's patents. Only a mere six months remain in discovery concerning both Telcordia patents and the Alcatel patent. But now, where Alcatel will enjoy the benefit of analyzing discovery from Telcordia to develop motions for summary judgment and the like, Telcordia will be shouldering the additional burden of obtaining discovery from Alcatel in the first instance.

Finally, this Court closely coordinated the *Telcordia v. Alcatel, Lucent, and Cisco* pretrial schedules. Injecting a patent that bears no relationship to Telcordia's patents into that mix would be inefficient because the parties, Lucent and Cisco in particular, would be burdened by having to sift through materials filed that are only relevant to Alcatel's web-based software patent. *See CVI*, 896 F. Supp. at 507 (noting the effect of the counterclaim on other parties). Moreover, Cisco specifically requested that all materials produced by Telcordia in the cases be provided to it. (*See supra* page 6.) Alcatel's late claim would be a further complication to that process, as Cisco has no right to view information concerning Telcordia's software products.

**III.    CONCLUSION**

For the foregoing reasons, Alcatel's patent infringement counterclaim should be dismissed or, in the alternative, severed and stayed.

ASHBY & GEDDES

*/s/ John G. Day*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Plaintiff Telcordia
Technologies, Inc.*

*Of Counsel:*

Donald R. Dunner
Richard J. Smith
Don O. Burley
Richard L. Rainey
Houtan K. Esfahani
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave, N.W.
Washington, D.C. 20001
(202) 408-4000

York M. Faulkner
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia  20190
(571) 203-2700

Dated: September 29, 2005
161896.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2005, the attached **TELCORDIA'S**

**MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO SEVER AND STAY**

**ALCATEL USA, INC.'S PATENT INFRINGEMENT COUNTERCLAIM** was served upon

the below-named counsel of record at the address and in the manner indicated:

Josy W. Ingersoll, Esquire                                                     HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street
Wilmington, DE  19801

Stuart J. Sinder, Esquire                                                      VIA FEDERAL EXPRESS
Kenyon & Kenyon
One Broadway
New York, NY  10004


/s/ *John G. Day*
_____
John G. Day