# EXHIBIT 8

| | | |
|---|---|---|
| | | Gaffigan.) (mmm) (Entered: 04/15/2005) |
| 04/14/2005 | | Set/Reset Scheduling Order Deadlines: Case to the Magistrate Judge for the purpose of exploring ADR. Pretrial Conference set for 3/15/2007 at 10:00 AM in Chambers before Honorable Gregory M. Sleet. Markman Hearing set for 3/22/2006 at 10:00 AM in Courtroom 4A before Honorable Gregory M. Sleet. Proposed Pretrial Order due by 2/16/2007. Jury Trial set for 4/16/2007 at 09:00 AM in Courtroom 4A before Honorable Gregory M. Sleet. (mmm) (Entered: 04/15/2005) |
| 04/14/2005 | 31 | STENO NOTES of Scheduling Conference held on 4/14/05 before Judge Gregory M. Sleet. Court Reporter: Brian Gaffigan. (Notes on file in Clerk's Office) (mmm, ) (Entered: 04/15/2005) |
| 04/19/2005 | 32 | TRANSCRIPT of Rule 16.2.b Conference held on 4/14/05 before Judge Gregory M. Sleet. Court Reporter: Kevin Maurer. (Transcript on file in Clerk's Office) (mmm) (Entered: 04/19/2005) |
| 04/22/2005 | 33 | Letter to Honorable Gregory M. Sleet from Jack B. Blumenfeld regarding Scheduling Order. (Blumenfeld, Jack) (Entered: 04/22/2005) |
| 05/04/2005 | | SO ORDERED re [20] Letter, Setting Scheduling Order Deadlines Case referred to the Magistrate Judge for the purpose of exploring ADR. Initial Disclosures due by 5/4/2005. Pretrial Conference set for 3/15/2007 at 10:00 AM in Chambers before Honorable Gregory M. Sleet. Daubert/Status Teleconference set for 9/6/2006 at 02:00 PM in Chambers before Honorable Gregory M. Sleet. Amended Pleadings due by 6/14/2005. Fact Discovery due by 3/31/2006; Expert Discovery due by 7/28/06. Joinder of Parties due by 6/14/2005. Telephone Conference re: Summary Judgment set for 9/18/2006 at 10:00 AM in Chambers before Honorable Gregory M. Sleet. Motions in Limine due by 2/16/2007. Markman Hearing set for 3/22/2006 10:00 AM in Courtroom 4A before Honorable Gregory M. Sleet. Proposed Pretrial Order due by 2/16/2007. 30-day Jury Trial (related cases included) set for 4/16/2007 at 09:00 AM in Courtroom 4A before Honorable Gregory M. Sleet. Signed by Judge Gregory M. Sleet on 5/4/05. (asw, ) (Entered: 05/04/2005) |
| 05/04/2005 | | CASE REFERRED to Mediation. (cab, ) (Entered: 05/04/2005) |
| 05/04/2005 | 34 | Order Setting Teleconference: Telephone Conference set for 6/16/2005 09:00 AM before Honorable Mary Pat Thynge. Signed by Judge Mary Pat Thynge on 5/4/2005. (cab, ) (Entered: 05/04/2005) |
| 05/04/2005 | 35 | NOTICE OF SERVICE of Initial Disclosures Pursuant to Fed. R. Civ. P. 26(A)(1) by Alcatel S.A., Alcatel USA Inc., Alcatel USA Inc..(Ingersoll, Josy) (Entered: 05/04/2005) |
| 05/05/2005 | 36 | NOTICE OF SERVICE of Telcordia's Initial Disclosures to Alcatel S.A. & Alcatel USA, Inc. by Telcordia Technologies Inc..(Day, John) (Entered: 05/05/2005) |
| 05/10/2005 | 37 | NOTICE OF SUBSTITUTION OF COUNSEL re Alcatel S.A., Alcatel USA Inc., Alcatel USA Inc.: Entry of appearance of attorney Josy W. |

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 575 7291
302 425 3012 Fax
jblumenfeld@mnat.com

April 22, 2005

BY E-FILING

The Honorable Gregory M . Sleet
United States District Court
844 King Street
Wilmington, DE 19801

   Re: Telcordia v. Lucent; C.A. No. 04-874 (GMS)
     Telcordia v. Alcatel; C.A. No. 04-875 (GMS)
     Telcordia v. Cisco; C.A. No. 04-876 (GMS)

Dear Judge Sleet:

    We are filing herewith a Scheduling Order including the dates discussed at the April 14 conference, which has been agreed to by counsel for all of the parties. If it meets with the Court's approval, we request that it be entered.

       Respectfully,

       /s/ Jack B. Blumenfeld
       Jack B. Blumenfeld

JBB/bls

cc: Peter T. Dalleo, Clerk (By Hand)
  Steven J. Balick, Esquire (By Hand)
  Josy W. Ingersoll, Esquire (By Hand)
  John W. Shaw, Esquire (By Hand)
  Stuart J. Sinder, Esquire (By Fax)
  Steven C. Cherny, Esquire (By Fax)
  Edward R. Reines, Esquire (By Fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| Plaintiff/Counterclaim Defendant, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-874-GMS |
| ALCATEL S.A., | ) ) | |
| Defendant, and | ) ) | |
| ALCATEL USA, INC., | ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) ) ) | |
| _____ | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | Civil Action No. 04-875-GMS |
| LUCENT TECHNOLOGIES INC., | ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) ) ) | |
| _____ | ) | |
| TELCORDIA TECHNOLOGIES, INC., | ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | Civil Action No. 04-876-GMS |
| CISCO SYSTEMS, INC., | ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) ) ) | |
| _____ | ) | |

## SCHEDULING ORDER

This _____ day of _____, 2005, the Court having conducted

an initial Rule 16 scheduling and planning conference pursuant to Local Rule 16.2(b) on April

14, 2005, in Civil Action Nos. 04-874-GMS, 04-875-GMS, and 04-876-GMS, and the parties in

each case respectively having determined after discussion that the matter cannot be resolved at

this juncture by settlement, voluntary mediation or binding arbitration;

IT IS ORDERED that in each case:

1. **Rule 26(a) Initial Disclosures.** The parties shall make their initial written

disclosures pursuant to Federal Rule of Civil Procedure 26(a) on or before May 4, 2005.

2. **Joinder of Other Parties and Amendment of Pleadings.** All motions to

join other parties and amend the pleadings shall be filed on or before June 14, 2005.

3. **Reliance Upon Advice of Counsel.** Defendants shall inform Telcordia

whether they intend to rely upon advice of counsel as a defense to willful infringement no later

than 14 days after the Court enters its claim construction order. If any Defendant elects to rely

on advice of counsel as a defense to willful infringement, that Defendant shall produce any such

opinions on which that Defendant intends to rely to Telcordia by no later than 14 days after the

Court enters its claim construction order. If any Defendant elects to rely on advice of counsel as

a defense to willful infringement, Telcordia may take discovery relating solely to that advice of

counsel after such election. All such discovery shall be initiated so that it will be completed on

or before 60 days after the Defendant produces the opinions on which it intends to rely.

4. *Markman* **Claim Construction Hearing.** A *Markman* claim construction

hearing shall be held on March 22, 2006 at 10:00 a.m. The parties shall exchange lists of

disputed claim terms on or before November 17, 2005, and proposed constructions of the

disputed claim terms on or before December 8, 2005. The parties shall meet and confer

2

regarding narrowing and reducing the number of claim construction issues on or before December 22, 2005. The parties shall submit a final joint claim chart which shall include citations to intrinsic evidence on or before January 18, 2006. The parties shall exchange opening claim construction briefs on January 27, 2006, and answering briefs on February 17, 2006. The parties shall submit two sets of the final joint claim chart and claim construction briefs to chambers, in binders, after the answering briefs are submitted.

     5.   **Discovery.** All fact discovery in these cases shall be initiated so that it will be completed on or before March 31, 2006, except as otherwise provided in paragraph 3. Expert discovery shall be initiated so that it will be completed on or before July 28, 2006. Opening expert reports of the party bearing the burden of proof shall be served on or before May 12, 2006; answering expert reports shall be served on or before June 9, 2006; and reply expert reports, if necessary, shall be served on or before June 23, 2006.

     (a)   **Discovery Matters.** Should counsel find they are unable to resolve a discovery matter, the party seeking the relief shall contact chambers at (302) 573-6470 to schedule a telephone conference. Not less than 48 hours prior to the conference, by hand delivery or facsimile at (302) 573-6472, the party seeking relief shall file with the Court a letter agenda not to exceed two pages outlining the issues in dispute. Should the Court find further briefing necessary upon conclusion of the telephone conference, the Court shall order the party seeking relief to file with the Court a **TWO PAGE LETTER**, exclusive of exhibits, describing the issues in contention. The responding party shall file, within five days from the date of service of the opening letter, an answering letter of no more than **TWO PAGES**. The party seeking relief may then file a reply letter of no more than **TWO PAGES** within three days from the date of service of the answering letter.

3

6.    **Confidential Information and Papers Filed under Seal**.    Should counsel find it necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, they should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court within 20 days from the date of entry of this Order.  When filing papers under seal, counsel should deliver to the Clerk an original and two copies of the papers.

**If, after making a diligent effort, the parties are unable to agree on the contents of a joint proposed protective order, then they shall follow the dispute resolution process outlined in paragraph 5(a).**

7.    **Settlement Conference**.    Pursuant to 28 U.S.C. § 636, this matter is referred to the United States Magistrate for the purpose of exploring the possibility of settlement. If the parties agree that the possibility of settlement may be enhanced by such referral, the parties shall contact Magistrate Judge Thynge to schedule a settlement conference with counsel and clients.

8.    **Summary Judgment Motions**.    Prior to filing any summary judgment motion, a party must submit a letter brief to the Court seeking permission to file the motion.  The opening letter brief shall be no longer than five pages and shall be filed with the Court no later than August 11, 2006.  Answering letter briefs shall be no longer than five pages and filed with the Court no later than 14 days thereafter.  Reply letter briefs shall be no longer than three pages and filed with the Court no later than 10 days thereafter.  The Court shall hold a teleconference to hear argument and determine whether the filing of any motion will be permitted on September 18, 2006 at 10:00 a.m.  **Unless the Court directs otherwise, no letter requests to file a motion for summary judgment may be filed at a time before the dates set forth in this paragraph.**

4

9.    **Case Dispositive Motions.**  Should the Court permit the filing of any summary judgment motion, an opening brief and affidavits, if any, in support of each motion, shall be served and filed within 15 days after the Court permits such motion.  Answering briefs and supporting affidavits, if any, shall be served and filed within 15 days after service of opening briefs, and reply briefs shall be filed within 15 days after service of the answering briefs.  Parties must submit an original and two (2) copies.

10.    **Applications by Motion.**  Except as provided in this Order or for matters relating to scheduling, any application to the Court shall be by written motion filed with the Clerk.  Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to Chambers.  Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

11.    **Oral Argument.**  If the Court believes that oral argument is necessary, the Court will schedule a hearing pursuant to Local Rule 7.1.4.

12.    **Status/*Daubert* Conference.**  On or before August 11, 2006, the parties shall submit a joint agenda identifying any *Daubert* issues that the parties intend to raise.  The Court will hold a telephone conference on September 6, 2006 at 2:00 p.m. to discuss *Daubert* issues identified in the joint agenda.

13.    **Pretrial Conference.**  On March 15, 2007, the Court will hold a pretrial conference in Chambers with counsel beginning at 10:00 a.m.  Unless otherwise ordered by the Court, the parties should assume that filing the pretrial order satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3).  Thirty days before the joint proposed pretrial orders are due, counsel for Telcordia shall forward to counsel for each Defendant a draft of the proposed pretrial order containing the information Telcordia proposes to include.  Fifteen

days before the joint proposed pretrial orders are due, counsel for such Defendant shall, in turn, provide to counsel for Telcordia any comments on Telcordia's draft as well as the information Defendants propose to include. Motions *in limine*: No party shall file more than 10 motions *in limine*. Opening briefs are to be filed on or before February 1, 2007, answering briefs are to be filed on or before February 15, 2007, and reply briefs are to be filed on or before February 22, 2007. Opening and answering briefs shall not exceed five pages and reply briefs shall not exceed three pages. The parties shall file with the Court the joint proposed final pretrial orders with the information required by the form of Final Pretrial Order which accompanies this Scheduling Order on or before close of business on February 16, 2007.

14.    **Trial**. Trials are scheduled in these cases for the period of April 16, 2007 through May 25, 2007 with the order and structure to be determined.

15.    **Scheduling**. The parties shall direct any request or questions regarding the scheduling and management of this matter to Chambers at (302) 573-6470.


_____
Honorable Gregory M. Sleet
United States District Court Judge


6

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 04-874-GMS |
| ALCATEL USA, INC., | ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |

**STIPULATED AMENDMENT OF COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)**

Plaintiff Telcordia Technologies, Inc. and defendant Alcatel USA, Inc. hereby stipulate

and agree, subject to the approval of the Court, that:

(1) Pursuant to Fed. R. Civ. P. 15(a), plaintiff may file its First Amended Complaint in

the form attached hereto at Tab A. A blacklined version of the proposed pleading is attached at

Tab B.

(2) Defendant shall answer, move, or otherwise respond to the First Amended Complaint

by no later than August 3, 2005.

ASHBY & GEDDES                             YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ John G. Day*                             */s/ Josy W. Ingersoll*

_____                    _____
Steven J. Balick (I.D. #2114)                  Josy W. Ingersoll (I.D. #1088)
John G. Day (I.D. #2403)                       The Brandywine Building
222 Delaware Avenue, 17th Floor                1000 West St., 17th Floor
P.O. Box 1150                                  Wilmington, DE 19801
Wilmington, DE 19899                           302-571-6600
302-654-1888

                                               *Attorneys for Defendant*

*Attorneys for Plaintiff*


SO ORDERED this ___ day of _____, 2005.


                        _____
                               United States District Judge

# TAB A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TELCORDIA TECHNOLOGIES, INC.,          )
                                       )
                   Plaintiff,          )
                                       )
          v.                           )   Civil Action No. 04-874-GMS
                                       )
                                       )
ALCATEL USA, INC.,                     )
                                       )
                   Defendant.          )

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Telcordia Technologies, Inc. ("TELCORDIA") hereby sues Alcatel USA, Inc.

("ALCATEL") for infringing U.S. Patent Nos. 4,893,306 ("the '306 patent") and Re. 36,633

("the '633 patent"), and alleges as follows:

### THE PLAINTIFF

1.      Plaintiff TELCORDIA is a corporation organized and existing under the laws of

Delaware, having a place of business at One Telcordia Drive, Piscataway, New Jersey 08854.

2.      TELCORDIA is a provider of communications software, engineering, and

consulting services throughout the United States, including in the District of Delaware.

### THE DEFENDANT

3.      Upon information and belief, defendant ALCATEL is a corporation organized

and existing under the laws of Delaware, having a business address at 3400 W. Plano Parkway,

Plano, Texas 75075.

4.      Upon information and belief, ALCATEL is a manufacturer of communication

network products that ALCATEL ships, distributes, sells, and/or offers for sale throughout the

United States, including in the District of Delaware.

**JURISDICTION AND VENUE**

5.    The claims asserted in this Complaint arise under the Patent Laws of the United States, 35 U.S.C. §§ 1-376.

6.    Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.

7.    This Court has personal jurisdiction over ALCATEL.

8.    Venue is proper under 28 U.S.C. §§ 1391 and 1400.

**COUNT I: INFRINGEMENT OF THE '306 PATENT**

9.    TELCORDIA realleges and incorporates by reference each of paragraphs 1-9 above.

10.    The '306 patent, entitled "Method and Apparatus for Multiplexing Circuit and Packet Traffic," was lawfully issued by the United States Patent and Trademark Office ("PTO") on January 9, 1990 to the inventors, Hung-Hsiang J. Chao, Sang H. Lee, and Liang T. Wu. The '306 patent issued from U.S. Patent Application Serial No. 07/118,977, filed November 10, 1987. A copy of the '306 patent is attached as Exhibit A.

11.    On its issuance, the '306 patent was assigned to Bell Communications Research, Inc. ("Bellcore"), which became TELCORDIA in 1999. TELCORDIA and Bellcore have at all times since the '306 patent's issuance held the entire right, title, and interest in the patent.

12.    Upon information and belief, ALCATEL has infringed one or more claims of the '306 patent by making, using, offering for sale, selling, and/or importing into the United States communication network products embodying the patented invention.

13.    Upon information and belief, ALCATEL has infringed one or more claims of the '306 patent by inducing others to infringe the patent and/or contributing to the patent's infringement by others.

2

14.    As a consequence of ALCATEL's infringement of the '306 patent, TELCORDIA has been damaged in an amount not yet determined.

15.    Upon information and belief, ALCATEL's infringement of the '306 patent will continue in the future, and TELCORDIA will continue to suffer damages as a consequence, unless ALCATEL's infringing acts are enjoined by this Court.

16.    Upon information and belief, ALCATEL's infringement of the '306 patent has been, and continues to be, willful.

## COUNT II: INFRINGEMENT OF THE '633 PATENT

17.    TELCORDIA realleges and incorporates by reference each of paragraphs 1-16 above.

18.    The '633 patent, entitled "Synchronous Residual Time Stamp for Timing Recovery in a Broadband Network," was lawfully issued by the PTO on March 28, 2000 to the inventors, Paul E. Fleischer and Chi-Leung Lau.  The '633 patent issued from U.S. Patent Application Serial No. 08/555,196, filed November 8, 1995.  A copy of the '633 patent is attached as Exhibit B.

19.    On its issuance, the '633 patent was assigned to Bellcore, which became TELCORDIA in 1999.  TELCORDIA and Bellcore have at all times since the '633 patent's issuance held the entire right, title, and interest in the patent.

20.    Upon information and belief, ALCATEL has infringed one or more claims of the '633 patent by making, using, offering for sale, selling, and/or importing into the United States communication network products embodying the patented invention.

3

21.    Upon information and belief, ALCATEL has infringed one or more claims of the '633 patent by inducing others to infringe the patent and/or contributing to the patent's infringement by others.

22.    As a consequence of ALCATEL's infringement of the '633 patent, TELCORDIA has been damaged in an amount not yet determined.

23.    Upon information and belief, ALCATEL's infringement of the '633 patent will continue in the future, and TELCORDIA will continue to suffer damages as a consequence, unless ALCATEL's infringing acts are enjoined by this Court.

24.    Upon information and belief, ALCATEL's infringement of the '633 patent has been, and continues to be, willful.

### JURY DEMAND

25.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, TELCORDIA requests a trial by jury for all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, TELCORDIA respectfully requests that the Court enter judgment against ALCATEL:

A.    determining that ALCATEL has infringed one or more claims of the '306 and '633 patents;

B.    permanently enjoining ALCATEL, its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with ALCATEL who receive actual notice of the judgment, from further infringing any claim of the '306 and '633 patents;

C.    ordering ALCATEL to account for and pay to TELCORDIA all damages suffered by TELCORDIA as a consequence of the infringement of the '306 and '633 patents by ALCATEL;

4

D.    awarding TELCORDIA prejudgment and post-judgment interest on the damages suffered by it as a consequence of the infringement of the '306 and '633 patents by ALCATEL;

E.    trebling TELCORDIA's damages under 35 U.S.C. § 284 on the ground that the infringement of the '306 and '633 patents by ALCATEL was deliberate and willful;

F.    finding that this is an exceptional case under 35 U.S.C. § 285 and awarding TELCORDIA its reasonable attorney fees; and

G.    granting TELCORDIA such other and further relief as the Court may deem just and proper.

ASHBY & GEDDES

*/s/ John G. Day*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
220 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Plaintiff Telcordia Technologies, Inc*

*Of Counsel:*

Donald R. Dunner
Richard H. Smith
Don O. Burley
Richard L. Rainey
Houtan K. Esfahani
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

5

York M. Faulkner
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, Virginia 20190-5675
(571) 203-2700

Dated: June 14, 2005
158484.1

# EXHIBIT 10



Telcordia
Technologies

*Performance from Experience*

Vernon A. Anthony
Executive Director

Intellectual Capital Products
Telcordia Technologies, Inc.
331 Newman Springs Road NVC-3X387
Red Bank, New Jersey 07701-5699
Voice: 732 758-5263
Fax: 732 758-5418
Email: vanthony@telcordia.com

An SAIC Company

July 25, 2000

John R. Berres
Director, Licensing and Contracts
Intellectual Property Department
Alcatel
1909 K Street NW, Suite 800
Washington, DC 20006

Dear Mr. Berres:

Thank you for addressing this patent licensing matter on behalf of Alcatel. We realize that Alcatel is an important business customer of Telcordia and we wish to strengthen this relationship.

In your letter of June 7, you requested licensing terms and additional information relating to Telcordia's patent licensing proposal. Generally, Telcordia offers to license specific Telcordia US patents and foreign counterparts under fair and reasonable terms. We believe that it is premature to propose terms and financial considerations for a license at this time. I recommend that we first meet to discuss the specific Telcordia patents and determine their impact on Alcatel's product lines.

The following are Telcordia's responses to the five points that you raised in your letter of June 7,

1. We are prepared to meet with you to demonstrate why we believe the cited patents cover Alcatel products that address the ATM, LAN, Optical Networking and SONET/SDH markets. My original letter was an offer to license some of our patented technology that is addressable to these markets. If you would like to discuss this in more detail, we would be willing to provide you with claim charts but only under an appropriate non-disclosure agreement.

2. 3, 4. We have not determined whether any of the inventions covered by the 15 patents are disclosed in any standard. However, Telcordia has historically been active in the standards community and it has always been our policy that we would license relevant patents to any standard under reasonable and non-discriminatory terms.

5. Our license proposal was intended to cover both US and the foreign counterparts.

On a related subject, I want to extend my best wishes to Alcatel on its acquisition of Newbridge Networks Corporation on May 25, 2000. Newbridge has an existing patent license agreement with Telcordia under our U.S. Patent 5,260,978 effective June 17, 1999. Is Newbridge Networks still an existing Canadian corporation? If not, does Alcatel wish for Telcordia to assign the rights and obligations under this Agreement to Alcatel? Does Alcatel wish for Telcordia to expand the patent license grant to cover products made by Alcatel, in addition to the products made by Newbridge?

I would like to propose a meeting with you sometime in August to discuss our patents and the Newbridge Patent License Agreement. Please call me at 732-758-5263 or email me at vanthony@telcordia.com and let me know what date is convenient for you. I look forward to speaking with you soon.

Sincerely,

Vernon Anthony

# EXHIBIT 11



**Telcordia Technologies**

*Performance from Experience*

Vernon A. Anthony
Executive Director

Intellectual Capital Products
Telcordia Technologies, Inc.
331 Newman Springs Road NVC-3X387
Red Bank, New Jersey 07701-5699
Voice: 732 758-5263
Fax: 732 758-5418
Email: vanthony@telcordia.com

An SAIC Company

August 24, 2000

John R. Berres
Director, Licensing and Contracts
Intellectual Property Department
Alcatel
1909 K Street NW, Suite 600
Washington, DC 20006

Dear Mr. Berres:

Thank you for your letter of August 22, 2000 regarding Alcatel's interest in a license under certain Telcordia patents. I will consider your request that a license with Telcordia include all relevant patents in our portfolio.

Our request for a non-disclosure agreement relates to proprietary information that both Alcatel and Telcordia may disclose to each other during our discussions, particularly, our analysis of Alcatel's products in view of Telcordia's patent claims. It is our policy not to disclose or discuss such analysis absent an appropriate non-disclosure and non-use agreement. In addition, the non-disclosure agreement limits the disclosure of any confidential Alcatel product information. Attached is a copy of the non-disclosure agreement for your review. I will provide you with a copy of our analysis for your review but only under an appropriate non-disclosure agreement.

Regarding sales by Alcatel to Telcordia licensees, Telcordia confirms that 13 earlier filed patents of the 15 patents (see attached list) are licensed to AT&T and all 15 are licensed to the Regional Bell Operating Companies. AT&T and the Regional Bell Operating Companies have certain rights which may exempt certain sales of Alcatel products to such companies provided that the term and conditions of the licenses have been met.

With regard to standards, it is Telcordia's belief that a product or process must be licensed when the product or process falls within the scope and, therefore, if not licensed, would infringe one or more claims of a Telcordia patent. Telcordia does not represent that any certain "standards" require licenses. Occasionally, one way of conforming to a standard may be through the use of patented Telcordia technology. It is, however, the product or process that should be analyzed in view of the patent claims, not the standard.

Thank you for the notice that Newbridge Networks remains a separate legal entity. Please forward a copy of the documentation showing the name change to Alcatel Networks, Inc and we will update our records. With respect to the existing Newbridge agreement under US Patent No. 5,260,978, please be advised that Telcordia was recently awarded US Patent No. Re 36,633, a reissue of the '978 patent, for Synchronous Residual Time Stamp for Timing Recovery In A Broadband Network. A copy of the Re 36,633 reissue patent is attached for your convenience. Please note the claims added during the reissue proceeding are in italics.

I propose that we discuss the non-disclosure agreement at a conference call during the week of September 5. I look forward to working with you and the management of Alcatel Networks on the existing Newbridge Agreement and the open patent licensing issues.

Sincerely,

Attachments (3)



# EXHIBIT 12


**Telcordia Technologies**

*Performance from Experience*

Vernon A. Anthony
Executive Director

Intellectual Capital Products
Telcordia Technologies, Inc.
331 Newman Springs Road NVC-3X387
Red Bank, New Jersey 07701-5699
Voice: 732 758-5263
Fax: 732 758-5418
Email: vanthony@telcordia.com

An SAIC Company

September 18, 2000

John R. Berres
Director, Licensing and Contracts
Intellectual Property Department
Alcatel
1909 K Street NW, Suite 800
Washington, DC 20006

Dear John:

It was a pleasure talking with you about Telcordia's proposal for a patent license agreement with Alcatel.

With respect to our request for a nondisclosure agreement, Telcordia believes that the application of FRE 408 is inappropriate for the proposed licensing discussions. We are willing to provide Alcatel with claim charts demonstrating Alcatel's use of Telcordia technology in its products but only under a proper nondisclosure agreement. Such an agreement will allow both parties to hold open and frank discussions on the information that Alcatel has requested as well as sensitive information that Alcatel may share with Telcordia such as its position regarding Alcatel's products and the Telcordia patents, and business and financial information that is applicable to a license negotiation. Telcordia has found that such agreements facilitate discussions with prospective licensees who are interested in having good faith negotiations with Telcordia.

Concerning Newbridge, please send the requested documentation confirming your representation that Newbridge Networks has been renamed Alcatel Networks, Inc. If Alcatel intends to rely on the license granted to Newbridge Networks, we would also expect the royalty report due in September to include any licensed products sold by Alcatel including those products sold by Alcatel Networks, Inc.

At your request and to help to move our discussions forward, I have attached a proposed term sheet that describes the patent license offer that Telcordia contemplates making to Alcatel. This summary is provided for discussion purposes only. I suggest that we meet within the next two weeks in Washington to discuss the proposal. I will call you to arrange a convenient meeting date. I look forward to meeting with you.

Sincerely,

Attachment (1)



# EXHIBIT 13



Vernon A. Anthony
Executive Director

Intellectual Capital Products
Telcordia Technologies, Inc.
331 Newman Springs Road NVC-3X387
Red Bank, New Jersey 07701-5699
Voice: 732 758-5263
Fax: 732 758-5418
Email: vanthony@telcordia.com

An SAIC Company

November 6, 2000

John R. Berres
Director, Licensing and Contracts
Intellectual Property Department
Alcatel
1909 K Street NW, Suite 800
Washington, DC 20006

Dear John,

At our meeting of October 18, we agreed to provide you with additional information regarding Telcordia's patents. Attached are the following:

1. Copy of the Telcordia Patent Asset presentation with the updated patent family information for each of the Telcordia patent that we cited at the 10/18 meeting.
2. A list of additional selected Telcordia patents in the following technology areas:
   - ATM
   - Advanced Intelligent Networking (AIN)
   - Network Switching and Services
   - Optical Devices
   - Optical Switch and Optical Amplifier
   - Semiconductor Devices and Processing
   - SONET/SDH
   - Wireless
   - xDSL

Please review the above information with the relevant business groups within Alcatel. We believe the previously cited patents and the new list of selected Telcordia demonstrates the extent of our patent portfolio and its licensing value to Alcatel.

With regard to your question on pending litigation involving Telcordia patents, our predecessor, Bell Communication Research, Inc. ("Bellcore") filed suit against Defendant Fore, Systems, Inc. (now a division of Marconi Plc.) alleging infringement of United States Patent Nos. 4,893,306, 4,835,768, 4,740,954 and 4,706,080. On August 1, 2000, the parties stipulated to the dismissal of Bellcore's claims under the '080 and '954 Patents leaving the '306 and '768 Patents in suit. Additionally, United States Patent Nos. 4,833,671 and 5,130,984 are the subject of a second suit filed in the same venue.



With respect to the Newbridge Agreement relating to US Patent RE 36,633 (a reissue of US Patent No. 5,260,978), you indicated that the Alcatel Enterprise Networking Division was reviewing its obligation under the Agreement. Has Alcatel a reach a determination on the royalty due to Telcordia under section 3.2 of the Agreement for sales of Licensed Equipment, such as the OmniSwitch and OmniCore products? Please advise.

I would like focus on the structure and the consideration for the patent license agreement at our next meeting. Please let me know if a meeting in DC on December 5th is convenient for you. I will call you to confirm.

Regards,

# EXHIBIT 14



**KENYON & KENYON**

Intellectual Property Law

Stuart J. Sinder
Direct 212.908.6151
ssinder@kenyon.com

One Broadway
New York, NY 10004-1007
212.425.7200
Fax 212.425.5288

July 26, 2005

<u>**Via Email (don.burley@finnegan.com)**</u>

Don O. Burley, Esq.
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

Re: *Telcordia Tech., Inc. v. Alcatel S.A. et al.*, C.A. No. 04-874-GMS
   <u>Our Reference No. 10471.10</u>

Dear Don:

Alcatel is considering asserting counterclaim(s) against Telcordia for infringement of one or more Alcatel patents.

To avoid unnecessary expense, Alcatel would prefer not to erroneously accuse a Telcordia product that actually operates differently than Alcatel currently has good reason to believe. We trust that Telcordia would share this desire as well. For this purpose, we would therefore appreciate your providing us (on an outside-counsel's-eyes-only basis) with sufficient technical information concerning the following Telcordia products/services in order to allow Alcatel to confirm its current understanding regarding their functionality and operation:

- Telcordia™ Integrated Testing & Analysis System ("TITAS");
- Telcordia™ Element Communicator ("TEC");
- Telcordia™ Intelligent Service Control Point ("ISCP");
- Telcordia™ Intelligent Network (including AIN) systems;
- Telcordia™ Service Director;
- Telcordia™ Advanced Service Management System;
- Telcordia™ Parlay systems;
- Telcordia™ Adaptive Communication Environment ("ACE") (including CORBA applications); and
- Telcordia™ Service Composer R2.5.

Don O. Burley, Esq.
July 26, 2005
Page 2



We presume that technical descriptions of these products in the form of manuals and functional specifications (e.g., information more detailed than that provided by Telcordia's website) are readily available at Telcordia.

Since the current due date for Alcatel's response to Telcordia's Amended Complaint is August 3, 2005, we would appreciate receiving this information within the next few days. Please advise me promptly whether Telcordia is willing to comply with this request.

Sincerely,

Stuart J. Sinder

NY01 1023905 v3

# EXHIBIT 15



Stuart J. Sinder
Direct 212.908.6151
ssinder@kenyon.com

One Broadway
New York, NY 10004-1007
212.425.7200
Fax 212.425.5288

July 29, 2005

**Via Email (don.burley@finnegan.com)**

Don O. Burley, Esq.
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413

Re:    *Telcordia Tech., Inc. v. Alcatel S.A. et al.*, C.A. No. 04-874-GMS
     Our Reference No. 10471.10

Dear Don:

     This is in response to your e-mail of yesterday.

     Alcatel is disappointed that Telcordia is unwilling to cooperate with Alcatel's request for product documentation. Should Alcatel sue for patent infringement, whether in the present litigation or a separate lawsuit, Telcordia would be required to produce the requested information and more. Alcatel simply requested *representative* documents sufficient to confirm the functional operation of the identified products. These are not broad requests but quite narrow. Your analogy to Telcordia's document requests (and Alcatel's objections thereto) in the present case is misplaced. Unlike Telcordia, Alcatel has done its due diligence and identified the *specific* products of interest. Despite Alcatel's repeated requests, Telcordia has largely failed to do the same despite having months if not years to put its case together. Moreover, Telcordia's document requests seek *all* documents related to Alcatel's products (design, manufacture, marketing, sale, revenue, etc.), whereas Alcatel is requesting only representative manuals or other functional specifications for each product.

     Alcatel requests that Telcordia reconsider its uncooperative approach. While Alcatel *presently* has sufficient justification to believe that one or more of Alcatel's patents are infringed by the products identified in my letter of July 26, 2005, history has shown that products sometimes do not always operate as indicated in higher level documents. Thus, to avoid the possibility of unnecessary time and expense of both parties, Alcatel believed the more prudent course of action was to request and receive more detailed technical information about the Telcordia products of interest on an informal basis.

     Your e-mail indicates that Telcordia would oppose the addition of any Alcatel patents to the present case. There is no legitimate basis for such opposition, and Telcordia identifies none.

Don O. Burley, Esq.
July 29, 2005
Page 2



Although we would agree that the assertion of any Alcatel patents is not compulsory, it is clearly permissive under Rule 13(b) and they can be asserted as of right in response to Telcordia's Amended Complaint. Certainly, Telcordia must have anticipated that if it brought a patent lawsuit (here, two patents), a counterclaim for patent infringement against Telcordia would not be an unlikely response. Furthermore, resolving the patent differences between the parties in a single forum will likely reduce the time and expense to both sides.

In order to reduce what you believe to be a burdensome request, we thought it would be helpful if we identified the particular product functionality about which we are most interested. Alcatel would like a description of the following functionality of the Telcordia systems/services listed in my July 26 letter:

- (i) a graphical user interface system in which a browser may be used to monitor telecommunications switching systems;

- (ii) Service Switching Points ("SSPs") and Service Control Points (facilities) ("SCPs") in the context of an object oriented computing environment (including Java and CORBA implementations), in which a server acts to determine a server that is available and able to execute the control of the service of a service call; and

- (iii) SSPs and SCPs in the context of an object oriented computing environment, in which execution of a service is controlled by a service session object, as with the Java Control Point Call ("JcpCall") feature of the identified Telcordia services/systems.

In view of the limited scope of the requested information, we urge Telcordia to reconsider its position and comply with our request. Considering that Alcatel voluntarily agreed to allow Telcordia to amend its complaint, Alcatel would expect a similar courtesy from Telcordia in providing the information. We would appreciate and await your prompt response.

Sincerely,

Stuart J. Sinder

P.S. I will separately respond to your June 17 letter next week.

# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,

        *Plaintiff,*

     vs.

ALCATEL USA, INC.

        *Defendant,*
        *Counterclaim-Plaintiff.*

Case No. 04-CV-874 GMS

**JURY TRIAL DEMANDED**

## ALCATEL USA'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

For its Answer to Plaintiff Telcordia Technologies, Inc.'s ("Plaintiff") First Amended Complaint and Demand for Jury Trial ("First Amended Complaint"), Defendant Alcatel USA, Inc. ("Alcatel USA"), upon knowledge as to its own acts and upon information and belief as to the acts of others, by and through its undersigned attorneys, responds to each of the numbered paragraphs thereof as follows:

### THE PLAINTIFF

1.    Alcatel USA lacks knowledge or information sufficient to form a belief as to the truth and correctness of the allegations in Paragraph 1 of the First Amended Complaint and therefore denies the allegations.

2.    Alcatel USA lacks knowledge or information sufficient to form a belief as to the truth and correctness of the allegations in Paragraph 2 of the First Amended Complaint and therefore denies the allegations.

## THE DEFENDANTS

3.     Alcatel USA admits the allegations in Paragraph 3 of the First Amended Complaint.

4.     Alcatel USA states that its wholly owned subsidiaries sell and offer for sale networking products throughout the United States.  Alcatel USA denies the remaining allegations in paragraph 4.

## JURISDICTION AND VENUE

5.     Alcatel USA admits that the First Amended Complaint contains averments of patent infringement that arise under Title 35 United States Code.

6.     Alcatel USA admits that 28 U.S.C. §§ 1331 and 1338(a) grant this Court subject matter jurisdiction over civil actions arising under the patent laws of the United States.

7.     For purposes of this litigation only, Alcatel USA does not contest that this Court has personal jurisdiction over Alcatel USA.

8.     For purposes of this litigation only, Alcatel USA does not contest that venue is proper under 28 U.S.C. §§ 1391(b), (c) and 1400(b).

## COUNT I: INFRINGEMENT OF THE '306 PATENT

9.     Paragraph 9 of the First Amended Complaint realleges and incorporates by reference paragraphs 1-9 of the First Amended Complaint.  Thus, Alcatel USA answers paragraph 9 in the same manner it answered paragraphs 1-9.

10.     Alcatel USA admits that, on its face, United States Patent No. 4,893,306 (the "'306 patent") is entitled "Method and Apparatus for Multiplexing Circuit and Packet Traffic"; was filed on November 10, 1987; issued from United States Patent Application No. 118,977 on January 9, 1990; and named Hung-Hsiang J. Chao, Sang H. Lee, and Liang T. Wu as inventors.

2

Alcatel USA admits that what appears to be a copy of the '306 patent was attached to the First Amended Complaint as Exhibit A. Alcatel USA denies the remaining allegations in Paragraph 10 of the First Amended Complaint.

11.    Alcatel USA admits that, on its face, the '306 patent lists Bell Communications Research, Inc. as assignee. Alcatel USA lacks knowledge or information sufficient to form a belief as to the truth and correctness of the remaining allegations in Paragraph 11 of the First Amended Complaint and therefore denies the allegations.

12.    Alcatel USA denies the allegations in Paragraph 12 of the First Amended Complaint.

13.    Alcatel USA denies the allegations in Paragraph 13 of the First Amended Complaint.

14.    Alcatel USA denies the allegations in Paragraph 14 of the First Amended Complaint.

15.    Alcatel USA denies the allegations in Paragraph 15 of the First Amended Complaint.

16.    Alcatel USA denies the allegations in Paragraph 16 of the First Amended Complaint.

## COUNT II: INFRINGEMENT OF THE '633 PATENT

17.    Paragraph 17 of the First Amended Complaint realleges and incorporates by reference paragraphs 1-16 of the First Amended Complaint. Thus, Alcatel USA answers paragraph 17 in the same manner it answered paragraphs 1-16.

18.    Alcatel USA admits that, on its face, United States Patent No. Re 36,633 (the "'633 patent") is entitled "Synchronous Residual Time Stamp for Timing Recovery in a

3

Broadband Network"; issued on March 28, 2000 from United States Patent Application No. 08/555,196, which was filed on November 8, 1995; and named Paul E. Fleischer and Chi-Leung Lau as inventors. Alcatel USA admits that what appears to be a copy of the '633 patent was attached to the First Amended Complaint as Exhibit B. Alcatel USA denies the remaining allegations in Paragraph 18 of the First Amended Complaint.

19.    Alcatel USA admits that, on its face, the '633 patent lists Telcordia Technologies, Inc. as assignee. Alcatel USA lacks knowledge or information sufficient to form a belief as to the truth and correctness of the remaining allegations in Paragraph 19 of the First Amended Complaint and therefore denies the allegations.

20.    Alcatel USA denies the allegations in Paragraph 20 of the First Amended Complaint.

21.    Alcatel USA denies the allegations in Paragraph 21 of the First Amended Complaint.

22.    Alcatel USA denies the allegations in Paragraph 22 of the First Amended Complaint.

23.    Alcatel USA denies the allegations in Paragraph 23 of the First Amended Complaint.

24.    Alcatel USA denies the allegations in Paragraph 24 of the First Amended Complaint.

## **JURY DEMAND**

25.    Alcatel USA does not contest that Plaintiff has requested a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

4

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### NON-INFRINGEMENT

26.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-25 of its Answer to the First Amended Complaint as if fully set forth herein.

27.    Alcatel USA has not infringed and does not infringe (either directly, contributorily or by inducement) any valid and enforceable claim of the '306 patent or the '633 patent (collectively the "Telcordia patents-in-suit").

### SECOND AFFIRMATIVE DEFENSE
### INVALIDITY

28.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-27 of its Answer to the First Amended Complaint as if fully set forth herein.

29.    The Telcordia patents-in-suit are invalid for failing to comply with one or more of the conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112, and the rules, regulations and laws pertaining thereto.

### THIRD AFFIRMATIVE DEFENSE
### UNENFORCEABILITY

30.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-29 of its Answer to the First Amended Complaint as if fully set forth herein.

### A. The '306 patent

31.    On information and belief, the '306 patent is unenforceable because the applicants, and/or individuals acting on behalf of the applicants, deliberately and knowingly

5

063535.1001

withheld, omitted, and/or misrepresented material information in connection with the prosecution of the application which matured into the '306 patent in violation of the duty of candor to the United States Patent and Trademark Office ("PTO"), as prescribed by 37 C.F.R. § 1.56. The reasons presently known to Alcatel USA that support its belief that the '306 patent is unenforceable are set forth in paragraphs 32-39 infra.

32.     The '306 patent is listed as issuing from U.S. Patent Application Ser. No. 118,977 filed November 10, 1987 (the "'977 application"). Hung-Hsiang Chao, Sang H. Lee, and Liang T. Wu are the applicants listed on the face of the '977 application. On information and belief, at the time that the application was filed, the applicants were each employed by Plaintiff.

33.     On or before November 22, 1985, Mark W. Beckner and Steven T. Minzer published an article entitled "A Tutorial on Asynchronous Time Division Multiplexing (ATDM): A Packet Access Capability For Broadband Interfaces to ISDNs" (the "Beckner-Minzer Article"). This article was published more than one year prior to the filing date of the '977 application and was material to the patentability of the '977 application. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

34.     On information and belief, Hung-Hsiang Chao and Mark W. Beckner were co-workers at Plaintiff's company. On information and belief, Hung-Hsiang Chao and Mark W. Beckner were co-inventors on U.S. Patent No. 4,819,226, filed on the same day as the '977 application and covering related technology. On information and belief, Hung-Hsiang Chao was aware of Mark W. Beckner's publications, especially those related to network communications. For example, in an article entitled "Design Architectures of a DTDM Packet Assembler and Packet Multiplexer" authored by H.J. Chao, published on or before November 11, 1987, H.J. Chao thanks M. W. Beckner for his comments and cites other publications co-authored by M.W.

6

Beckner. Notwithstanding the foregoing, neither the applicants nor any individuals acting on behalf of the applicants informed the PTO of this article.

35.     Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the Beckner-Minzer Article, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '977 application.

36.     On or before June 10, 1987, L. T. Wu (a co-inventor of the '306 patent), S.H. Lee (a co-inventor of the '306 patent), and T. T. Lee (not a co-inventor of the '306 patent) published an article entitled "Dynamic TDM – A Packet Approach to Broad Band Networking" (the "Wu Article"). This article was published prior to the filing date of the '977 application and was not entirely authored by the applicants of the '977 application. It was therefore material to the patentability of the '977 application and to the inventorship of the alleged inventions of the '977 application, but was not disclosed to the PTO. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

37.     In addition, on information and belief, the Wu Article discloses a mode of practicing the alleged inventions of the'306 patent that was not disclosed in the '977 application.

38.     Based on the foregoing, on information and belief, the applicants, and/or individuals acting on behalf of the applicants, were aware of this publication, but they deliberately and knowingly withheld this material reference during prosecution of the '977 application.

39.     On information and belief, one or more additional references that were material to the patentability of the '306 patent were known to persons of ordinary skill in the art, and upon information and belief, were known by the applicants and/or individuals acting on behalf of the

7

applicants, but the applicants and/or individuals acting on behalf of the applicants deliberately and knowingly withheld these additional material references from the PTO during prosecution of the '977 application.

### B. The '633 patent

40.    On information and belief, the '633 patent is unenforceable because the applicants, and/or individuals acting on behalf of the applicants, deliberately and knowingly withheld, omitted, and/or misrepresented material information in connection with the prosecution of the application which matured into the '633 patent in violation of the duty of candor to the PTO, as prescribed by 37 C.F.R. § 1.56. The reasons presently known to Alcatel USA that support its belief that the '633 patent is unenforceable are set forth in paragraphs 41-50 <u>infra</u>.

41.    The '633 patent is listed as issuing from U.S. Patent Application No. 08/555,196 filed November 8, 1995 (the "'196 application"). Paul E. Fleischer and Chi-Leung Lau are the applicants listed on the face of the '196 application. On information and belief, Chi-Leung Lau is also known as Richard Lau. On information and belief, at the time that the application was filed, the applicants were each employed by Plaintiff.

42.    On or before October 11, 1991, Richard Lau (a co-inventor on the '633 patent) and Bruce Kittams (not a co-inventor on the '633 patent) sent a letter to M. Thierry Houdoin at France Telecom/CNET concerning the use of a residue timestamp for timing recovery (the "Lau letter"). The Lau letter was sent more than one year before the filing date of the '196 application and was not entirely authored by the applicants of the '196 application. It was therefore material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO. On information and belief, at the time that the Lau letter was sent, both of the authors were employed by Plaintiff.

8

43.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, knew of the Lau letter, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

44.    On or before October 14, 1991, M. Thierry Houdoin responded to the Lau letter proposing various detailed aspects of a residue timestamp for timing recovery (the "Houdoin letter"). The Houdoin letter was sent more than one year before the filing date of the '196 application, was addressed to the applicants of the '196 application and was not authored by any applicant named in '196 application. It was therefore material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application, but was not disclosed to the PTO.

45.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, knew of the Houdoin letter, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

46.    On or before November 4, 1991, Richard Lau and Paul E. Fleischer published an article entitled "Synchronous Residue-TS: A Compromise for SFET/TS" (the "Lau article"). This article was published prior to the filing date of the '196 application, and references communications with France Telecom regarding the design of the residue timestamp. It was therefore material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application, but was not disclosed to the PTO. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

9

47.     Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the Lau article, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

48.     On information and belief, on or before December 13, 1991, Bruce Kittams and J. Y. Cochennec introduced a proposal for "SRTS (Synchronous Residual Time Stamp)," a method for providing clock frequency recovery, at a CCITT Study Group meeting.  The report of the meeting (the "CCITT report") indicates that the proposed SRTS method was the result of a cooperative effort that included at least Plaintiff and CNET.  Upon information and belief, the CCITT report was published prior to the filing date of the '196 application.  The CCITT report was material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO.

49.     Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the CCITT report, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

50.     On information and belief, one or more additional references that were material to the patentability of the '633 patent were known to persons of ordinary skill in the art, and upon information and belief, were known by the applicants and/or individuals acting on behalf of the applicants, but the applicants and/or individuals acting on behalf of the applicants deliberately and knowingly withheld these additional material references from the PTO during prosecution of the '196 application.

10

## FOURTH AFFIRMATIVE DEFENSE
## LACHES

51.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-50 of its Answer to the First Amended Complaint as if fully set forth herein.

52.    On or about February 6, 1991, Plaintiff offered Alcatel Network Systems, a predecessor in interest to Alcatel USA, a license under certain patents, including the '306 patent.

53.    Plaintiff filed its original Complaint and Demand for Jury Trial ("Complaint") in this action on July 16, 2004, over thirteen years after first contacting Alcatel Network Systems about a license under the '306 patent and fifteen years after the issuance of the '306 patent. Moreover, during the past thirteen years, Plaintiff gave Alcatel USA numerous reasons to believe that the '306 patent would not be asserted against it. Based upon the course of conduct of Plaintiff and the numerous interactions between the parties over the course of the past thirteen years, Plaintiff's delay in bringing suit is unreasonable, unjustified, and materially prejudicial to Alcatel USA.

54.    Plaintiff amended its Complaint in this action on June 14, 2005, over eleven years after the issuance of U.S. Patent No. 5,260,978 (the "'978 patent"), which Telcordia surrendered to obtain the '633 reissue patent. Based upon the course of conduct of Plaintiff and the numerous interactions between the parties over the past eleven years, Plaintiff's delay in bringing suit is unreasonable, unjustified, and materially prejudicial to Alcatel USA.

55.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the Telcordia patents-in-suit are barred, in whole or in part, by the doctrine of laches.

11

## FIFTH AFFIRMATIVE DEFENSE
## LICENSE, ACQUIESCENCE

56.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-55 of its Answer.

57.    On information and belief, Plaintiff granted to the Regional Bell Operating Companies ("RBOCs") and to AT&T a license that included rights to use and to have made products covered by the Telcordia patents-in-suit. To the extent that any of Plaintiff's allegations of infringement are premised on the alleged use, sale, offer for sale, or importation of Alcatel USA's products that were manufactured for or provided to the RBOCs or to AT&T, such allegations are barred pursuant to license.

### A. The '306 patent

58.    On or about May 21, 1998, Plaintiff and Alcatel Network Systems, Inc. (a predecessor in interest to Alcatel USA) entered into a Generic Requirements Participation Agreement (the "GR Agreement") to develop proposed generic requirements related to Synchronous Optical Network (SONET) Transport Systems. The terms of the GR Agreement grant Alcatel Network Systems and its affiliates a fully paid, royalty free, perpetual license to sell, license, or otherwise transfer products and services that utilize or incorporate the alleged inventions of the '306 patent. Alcatel Network Systems provided Plaintiff with valuable consideration in exchange for the license granted by the GR Agreement.

59.    On information and belief, Plaintiff failed to disclose to Alcatel Network Systems the alleged applicability of the '306 patent to the products envisioned by the GR Agreement.

60.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the '306 patent are barred, in whole or in part, by the doctrines of express license, implied license and/or acquiescence.

12

063535.1001

## B. The '633 patent

61.    On or about June 17, 1999, Newbridge Networks Corporation, Inc. ("Newbridge") and Plaintiff entered into a Patent Licensing Agreement (the "Fleischer Patent License") regarding U.S. Patent No. 5,260,978 (the "'978 patent"). The terms of the Fleischer Patent License grant Newbridge and its affiliates a nonexclusive license to make, have made, use, lease, offer to sell, sell and import products that fall within the scope of one or more claims of the '978 patent and any reissues, reexaminations, or extensions thereof. The terms of the Fleischer Patent License also bar Telcordia from suing Newbridge or Newbridge's customers, mediate and immediate (including authorized resellers and distributors, and end users), for direct or indirect infringement of the '978 patent and any reissues, reexaminations, or extensions thereof, based on use or re-sale of products covered by the license. By its terms, the Fleischer Patent License expired on June 17, 2004, but required Plaintiff to negotiate in good faith a renewal of the license granted to Newbridge. Despite being requested to negotiate a renewal of the Fleischer Patent License, Plaintiff has failed and refused to do so in breach of its contractual obligation. Newbridge provided Plaintiff with valuable consideration in exchange for the license granted in the Fleischer Patent License.

62.    The '633 patent is a reissue of the '978 patent.

63.    Alcatel USA is an affiliate of Newbridge (now named Alcatel Canada Inc.), and Alcatel USA (through its subsidiaries) is also a customer, reseller and/or distributor of products manufactured and/or sold by Alcatel Canada Inc. By reason of the foregoing, Alcatel USA has been expressly licensed under the '633 patent, is still equitably and impliedly licensed under the '633 patent, and/or is licensed as an intended third-party beneficiary under the Fleischer Patent License.

13

64.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the '633 patent are barred, in whole or in part, by the doctrines of express license, implied license and/or acquiescence.

### SIXTH AFFIRMATIVE DEFENSE
### EQUITABLE ESTOPPEL

65.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-64 of its Answer.

66.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the Telcordia patents-in-suit are barred, in whole or in part, by the doctrine of equitable estoppel.

### SEVENTH AFFIRMATIVE DEFENSE
### UNCLEAN HANDS

67.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-66 of its Answer to the First Amended Complaint as if fully set forth herein.

68.    By reason, *inter alia*, of the foregoing, Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### EIGHTH AFFIRMATIVE DEFENSE
### INTERVENING RIGHTS

69.    Plaintiff's claims are barred, in whole or in part, because Alcatel USA is entitled to intervening rights with respect to the '633 patent.

### PRAYER FOR RELIEF
### FOR ANSWER

WHEREFORE, Alcatel USA requests that the Court enter judgment:

(a)    Dismissing the First Amended Complaint against Alcatel USA in its entirety with prejudice;

(b)  Finding the claims of the Telcordia patents-in-suit not infringed under 35 U.S.C. § 271;

(c)  Finding the claims of the Telcordia patents-in-suit invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112, and the rules, regulations and laws pertaining thereto;

(d)  Finding the Telcordia patents-in-suit unenforceable;

(e)  Finding that Alcatel USA is not liable in any way for the relief sought in the First Amended Complaint, and denying Plaintiff all such relief;

(f)  Finding that, pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 11, and/or other applicable laws, Plaintiff's conduct in commencing and pursuing this action renders this an exceptional case and that Alcatel USA be awarded costs of this action and its attorneys' fees to the extent permitted by law; and

(g)  Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Alcatel USA requests a trial by jury of all issues so triable.

## COUNTERCLAIMS

Alcatel USA, through its attorneys, asserts the following counterclaims against Plaintiff and alleges as follows:

## PARTIES

1.    Alcatel USA is a corporation organized and existing under the laws of Delaware, having a business address at 3400 W. Plano Parkway, Plano, Texas 75075.

2.    As averred by Plaintiff in its First Amended Complaint, Plaintiff is a corporation organized and existing under the laws of Delaware, having a place of business at One Telcordia Drive, Piscataway, New Jersey 08854.

## JURISDICTION AND VENUE

3.    This is an action for a declaratory judgment of non-infringement, unenforceability, and invalidity of United States Patent No. 4,893,306 (the "'306 patent") and United States Patent No. Re 36,633 (the "'633 patent") (collectively the "Telcordia patents-in-suit"); for breach of contract; for breach of the implied covenant of good faith and fair dealing; and for patent infringement.

4.    Plaintiff alleges in its First Amended Complaint in this action that it is the owner of the Telcordia patents-in-suit, and that Alcatel USA infringes those patents.  Alcatel USA denies that it infringes any valid and enforceable claim of the Telcordia patents-in-suit.

5.    As a consequence of the foregoing, there is an actual and justiciable controversy between Alcatel USA and Plaintiff with respect to which Alcatel USA requests a declaration by this Court.

6.    This Court has subject matter jurisdiction over this controversy based on 28 U.S.C. §§ 1331 and 1338(a), 28 U.S.C. §§ 2201(a) and 2202, and 28 U.S.C. § 1367.

16

063535.1001

7.    This Court has personal jurisdiction over Plaintiff.

8.    Venue is proper under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## FIRST COUNTERCLAIM – DECLARATORY JUDGMENT
### PATENT NON-INFRINGEMENT

9.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-8 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

10.    Alcatel USA does not import, make, use, sell or offer for sale any communication network product that infringes, induces infringement of, or contributes to the infringement of, any valid and enforceable claim of the Telcordia patents-in-suit, either literally or under the doctrine of equivalents, nor has it ever done so.

## SECOND COUNTERCLAIM – DECLARATORY JUDGMENT
### PATENT INVALIDITY

11.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-10 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

12.    The Telcordia patents-in-suit are invalid for failing to comply with one or more of the conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112, and the rules, regulations and laws pertaining thereto.

## THIRD COUNTERCLAIM – DECLARATORY JUDGMENT
### PATENT UNENFORCEABILITY

13.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-12 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

17

## A. The '306 patent

14.    On information and belief, the '306 patent is unenforceable because the applicants, and/or individuals acting on behalf of the applicants, deliberately and knowingly withheld, omitted, and/or misrepresented material information in connection with the prosecution of the application which matured into the '306 patent in violation of the duty of candor to the United States Patent and Trademark Office ("PTO"), as prescribed by 37 C.F.R. § 1.56. The reasons presently known to Alcatel USA that support its belief that the '306 patent is unenforceable are set forth in paragraphs 15-22 infra.

15.    The '306 patent is listed as issuing from U.S. Patent Application Ser. No. 118,977 filed November 10, 1987 (the "'977 application"). Hung-Hsiang Chao, Sang H. Lee, and Liang T. Wu are the applicants listed on the face of the '977 application. On information and belief, at the time that the application was filed, the applicants were each employed by Plaintiff.

16.    On or before November 22, 1985, Mark W. Beckner and Steven T. Minzer published an article entitled "A Tutorial on Asynchronous Time Division Multiplexing (ATDM): A Packet Access Capability For Broadband Interfaces to ISDNs" (the "Beckner-Minzer Article"). This article was published more than one year prior to the filing date of the '977 application and was material to the patentability of the '977 application. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

17.    On information and belief, Hung-Hsiang Chao and Mark W. Beckner were co-workers at Plaintiff's company. On information and belief, Hung-Hsiang Chao and Mark W. Beckner were co-inventors on U.S. Patent No. 4,819,226, filed on the same day as the '977 application and covering related technology. On information and belief, Hung-Hsiang Chao was aware of Mark W. Beckner's publications, especially those related to network communications.

18

For example, in an article entitled "Design Architectures of a DTDM Packet Assembler and Packet Multiplexer" authored by H.J. Chao, published on or before November 11, 1987, H.J. Chao thanks M. W. Beckner for his comments and cites other publications co-authored by M.W. Beckner. Notwithstanding the foregoing, neither the applicants nor any individuals acting on behalf of the applicants informed the PTO of this article.

18.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the Beckner-Minzer Article, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '977 application.

19.    On or before June 10, 1987, L. T. Wu (a co-inventor of the '306 patent), S.H. Lee (a co-inventor of the '306 patent), and T. T. Lee (not a co-inventor of the '306 patent) published an article entitled "Dynamic TDM – A Packet Approach to Broad Band Networking" (the "Wu Article"). This article was published prior to the filing date of the '977 application and was not entirely authored by the applicants of the '977 application. It was therefore material to the patentability of the '977 application and to the inventorship of the alleged inventions of the '977 application, but was not disclosed to the PTO. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

20.    In addition, on information and belief, the Wu Article discloses a mode of practicing the alleged inventions of the '306 patent that was not disclosed in the '977 application.

21.    Based on the foregoing, on information and belief, the applicants, and/or individuals acting on behalf of the applicants, were aware of this publication, but they deliberately and knowingly withheld this material reference during prosecution of the '977 application.

22.     On information and belief, one or more additional references that were material to the patentability of the '306 patent were known to persons of ordinary skill in the art, and upon information and belief, were known by the applicants and/or individuals acting on behalf of the applicants, but the applicants and/or individuals acting on behalf of the applicants deliberately and knowingly withheld these additional material references from the PTO during prosecution of the '977 application.

**B.  The '633 patent**

23.     On information and belief, the '633 patent is unenforceable because the applicants, and/or individuals acting on behalf of the applicants, deliberately and knowingly withheld, omitted, and/or misrepresented material information in connection with the prosecution of the application which matured into the '633 patent in violation of the duty of candor to the PTO, as prescribed by 37 C.F.R. § 1.56.  The reasons presently known to Alcatel USA that support its belief that the '633 patent is unenforceable are set forth in paragraphs 24-33 infra.

24.     The '633 patent is listed as issuing from U.S. Patent Application No. 08/555,196 filed November 8, 1995 (the "'196 application").  Paul E. Fleischer and Chi-Leung Lau are the applicants listed on the face of the '196 application.  On information and belief, Chi-Leung Lau is also known as Richard Lau.  On information and belief, at the time that the application was filed, the applicants were each employed by Plaintiff.

25.     On or before October 11, 1991, Richard Lau (a co-inventor on the '633 patent) and Bruce Kittams (not a co-inventor on the '633 patent) sent a letter to M. Thierry Houdoin at France Telecom/CNET concerning the use of a residue timestamp for timing recovery (the "Lau letter").  The Lau letter was sent more than one year before the filing date of the '196 application and was not entirely authored by the applicants of the '196 application.  It was therefore material

to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO. On information and belief, at the time that the Lau letter was sent, both of the authors were employed by Plaintiff.

26.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, knew of the Lau letter, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

27.    On or before October 14, 1991, M. Thierry Houdoin responded to the Lau letter proposing various detailed aspects of a residue timestamp for timing recovery (the "Houdoin letter"). The Houdoin letter was sent more than one year before the filing date of the '196 application, was addressed to the applicants of the '196 application and was not authored by any applicant named in '196 application. It was therefore material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO.

28.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, knew of the Houdoin letter, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

29.    On or before November 4, 1991, Richard Lau and Paul E. Fleischer published an article entitled "Synchronous Residue-TS: A Compromise for SFET/TS" (the "Lau article"). This article was published prior to the filing date of the '196 application, and references communications with France Telecom regarding the design of the residue timestamp. It was therefore material to the patentability of the '196 application and to the inventorship of the

21

063535.1001

alleged inventions of the '196 application, but was not disclosed to the PTO. On information and belief, at the time that the article was published, the authors were each employed by Plaintiff.

30.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the Lau article, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

31.    On information and belief, on or before December 13, 1991, Bruce Kittams and J. Y. Cochennec introduced a proposal for "SRTS (Synchronous Residual Time Stamp)," a method for providing clock frequency recovery, at a CCITT Study Group meeting. The report of the meeting (the "CCITT report") indicates that the proposed SRTS method was the result of a cooperative effort that included at least Plaintiff and CNET. Upon information and belief, the CCITT report was published prior to the filing date of the '196 application. The CCITT report was material to the patentability of the '196 application and to the inventorship of the alleged inventions of the '196 application but was not disclosed to the PTO.

32.    Based on the foregoing, on information and belief, one or more of the applicants, and/or individuals acting on behalf of the applicants, were well aware of the CCITT report, but they deliberately and knowingly withheld this material reference from the PTO during prosecution of the '196 application.

33.    On information and belief, one or more additional references that were material to the patentability of the '633 patent were known to persons of ordinary skill in the art, and upon information and belief, were known by the applicants and/or individuals acting on behalf of the applicants, but the applicants and/or individuals acting on behalf of the applicants deliberately

and knowingly withheld these additional material references from the PTO during prosecution of the '196 application.

## FOURTH COUNTERCLAIM – DECLARATORY JUDGMENT
### LACHES

34.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-33 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

35.    On or about February 6, 1991, Plaintiff offered Alcatel Network Systems, a predecessor in interest to Alcatel USA, a license under certain patents, including the '306 patent.

36.    Plaintiff filed its original Complaint and Demand for Jury Trial ("Complaint") in this action on July 16, 2004, over thirteen years after first contacting Alcatel Network Systems about a license under the '306 patent and fifteen years after the issuance of the '306 patent. Moreover, during the past thirteen years, Plaintiff gave Alcatel USA numerous reasons to believe that the '306 patent would not be asserted against it.  Based upon the course of conduct of Plaintiff and the numerous interactions between the parties over the course of the past thirteen years, Plaintiff's delay in bringing suit is unreasonable, unjustified, and materially prejudicial to Alcatel USA.

37.    Plaintiff amended its Complaint in this action on June 14, 2005, over eleven years after the issuance of U.S. Patent No. 5,260,978 (the "'978 patent"), which Telcordia surrendered to obtain the '633 reissue patent.  Based upon the course of conduct of Plaintiff and the numerous interactions between the parties over the past eleven years, Plaintiff's delay in bringing suit is unreasonable, unjustified, and materially prejudicial to Alcatel USA.

38.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the Telcordia patents-in-suit are barred, in whole or in part, by the doctrine of laches.

23

## FIFTH COUNTERCLAIM – DECLARATORY JUDGMENT
## LICENSE, ACQUIESCENCE

39.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-38 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

40.    On information and belief, Plaintiff granted to the Regional Bell Operating Companies ("RBOCs") and to AT&T a license that included rights to use and to have made products covered by the Telcordia patents-in-suit.  To the extent that any of Plaintiff's allegations of infringement are premised on the alleged use, sale, offer for sale, or importation of Alcatel USA's products that were manufactured for or provided to the RBOCs or to AT&T, such allegations are barred pursuant to license.

### A.  '306 Patent

41.    On or about May 21, 1998, Plaintiff and Alcatel Network Systems, Inc. (a predecessor in interest to Alcatel USA) entered into a Generic Requirements Participation Agreement (the "GR Agreement") to develop proposed generic requirements related to Synchronous Optical Network (SONET) Transport Systems.  The terms of the GR Agreement grant Alcatel Network Systems and its affiliates a fully paid, royalty free, perpetual license to sell, license, or otherwise transfer products and services that utilize or incorporate the alleged inventions of the '306 patent.  Alcatel Network Systems provided Plaintiff with valuable consideration in exchange for the license granted by the GR Agreement.

42.    On information and belief, Plaintiff failed to disclose to Alcatel Network Systems the alleged applicability of the '306 patent to the products envisioned by the GR Agreement.

24

43.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the '306 patent are barred, in whole or in part, by the doctrines of express license, implied license and/or acquiescence.

## B. '633 Patent

44.    On or about June 17, 1999, Newbridge Networks Corporation, Inc. ("Newbridge") and Plaintiff entered into a Patent Licensing Agreement (the "Fleischer Patent License") regarding U.S. Patent No. 5,260,978 (the "'978 patent"). The terms of the Fleischer Patent License grant Newbridge and its affiliates a nonexclusive license to make, have made, use, lease, offer to sell, sell and import products that fall within the scope of one or more claims of the '978 patent and any reissues, reexaminations, or extensions thereof. The terms of the Fleischer Patent License also bar Telcordia from suing Newbridge or Newbridge's customers, mediate and immediate (including authorized resellers and distributors, and end users), for direct or indirect infringement of the '978 patent and any reissues, reexaminations, or extensions thereof, based on the re-sale of products covered by the license. By its terms, the Fleischer Patent License expired on June 17, 2004, but required Plaintiff to negotiate in good faith a renewal of the license granted to Newbridge. Despite being requested to negotiate a renewal of the Fleischer Patent License, Plaintiff has failed and refused to do so in breach of its contractual obligation. Newbridge provided Plaintiff with valuable consideration in exchange for the license granted in the Fleischer Patent License.

45.    The '633 patent is a reissue of the '978 patent.

46.    Alcatel USA is an affiliate of Newbridge (now named Alcatel Canada Inc.), and Alcatel USA (through its subsidiaries) is also a customer, reseller and/or distributor of products manufactured and/or sold by Alcatel Canada Inc. By reason of the foregoing, Alcatel USA has

25

been expressly licensed under the '633 patent, is still equitably and impliedly licensed under the '633 patent, and/or is licensed as an intended third-party beneficiary of the Fleischer Patent License.

47.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the '633 patent are barred, in whole or in part, by the doctrines of express license, implied license and/or acquiescence.

## SIXTH COUNTERCLAIM – DECLARATORY JUDGMENT
## EQUITABLE ESTOPPEL

48.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-47 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

49.    By reason, *inter alia*, of the foregoing, Plaintiff's claims for infringement of the Telcordia patents-in-suit are barred, in whole or in part, by the doctrine of equitable estoppel.

## SEVENTH COUNTERCLAIM – DECLARATORY JUDGMENT
## UNCLEAN HANDS

50.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-49 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

51.    By reason, *inter alia*, of the foregoing, Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## EIGHTH COUNTERCLAIM – DECLARATORY JUDGMENT
## INTERVENING RIGHTS

52.    Plaintiff's claims are barred, in whole or in part, because Alcatel USA is entitled to intervening rights with respect to the '633 patent.

DB01:1803396.1

063535.1001

## NINTH COUNTERCLAIM
### BREACH OF CONTRACT AND/OR
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

53.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-52 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

### A. Breach of Contract

54.    Plaintiff willfully and materially breached the GR Agreement by filing its Complaint and/or its First Amended Complaint in this action accusing Alcatel USA of infringing the '306 patent.

55.    Alcatel Network Systems performed all of its material obligations under the GR Agreement.

56.    Alcatel USA has been damaged and will continue to be damaged as a result of Plaintiff's breach.

57.    Plaintiff will continue to be in breach of the GR Agreement unless and until Count I of Plaintiff's First Amended Complaint is dismissed from this action.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

58.    Plaintiff breached the implied covenant of good faith and fair dealing by interfering with and undermining Alcatel USA's ability and right to sell, license, or otherwise transfer products and services under the GR Agreement by, *inter alia*, failing to disclose the alleged applicability of the '306 patent to the products envisioned by the GR Agreement, and by filing its Complaint and/or its First Amended Complaint in this action accusing Alcatel USA of infringing the '306 patent.

27

59.     Alcatel USA has been damaged and will continue to be damaged as a result of Plaintiff's breach.

60.     Plaintiff will continue to be in breach of the GR Agreement unless and until Count I of Plaintiff's First Amended Complaint is dismissed from this action.

### TENTH COUNTERCLAIM
### BREACH OF CONTRACT AND/OR
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

61.     Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-60 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

#### A.  Breach of Contract

62.     Plaintiff willfully and materially breached the Fleischer Patent License by, *inter alia*, filing its First Amended Complaint accusing Alcatel USA of infringing the '633 patent and failing to negotiate in good faith a renewal of said License.

63.     Newbridge performed all of its material obligations under the Fleischer Patent License.

64.     Alcatel USA has been damaged and will continue to be damaged as a result of Plaintiff's breach.

65.     Plaintiff will continue to be in breach of the Fleischer Patent License unless and until Count II of Plaintiff's First Amended Complaint is dismissed from this action.

#### B.  Breach of the Implied Covenant of Good Faith and Fair Dealing

66.     Plaintiff breached the implied covenant of good faith and fair dealing by interfering with and undermining the ability and right of Alcatel USA to make, have made, use, lease, offer to sell, sell and/or import products within the scope of one or more claims of the '633

28

patent by, *inter alia*, failing and refusing to negotiate in good faith a renewal of the Fleischer Patent License and filing its First Amended Complaint accusing Alcatel USA of infringing the '633 patent.

67.    Alcatel USA has been damaged and will continue to be damaged as a result of Plaintiff's breach.

68.    Plaintiff will continue to be in breach of the Fleischer Patent License unless and until Plaintiff negotiates in good faith a renewal of the Fleischer Patent License and until Count II of Plaintiff's First Amended Complaint is dismissed from this action.

## ELEVENTH COUNTERCLAIM
## INFRINGEMENT OF U.S. PAT. NO. 6,247,052

69.    Alcatel USA incorporates by reference and realleges each and every allegation contained in paragraphs 1-68 of these Counterclaims and paragraphs 26-69 of its Affirmative Defenses as if fully set forth herein.

70.    Alcatel USA is the owner of all right, title, and interest in and to United States Patent No. 6,247,052 (the "'052 patent"), entitled "Graphic User Interface System for a Telecommunications Switch Management System," which was issued by the United States Patent and Trademark Office on June 12, 2001.  Attached as Exhibit A is a copy of the '052 patent.

71.    On information and belief, Plaintiff has made, used, sold, and/or offered to sell, and is continuing to make, use, sell, and/or offer to sell, communications network products, including, but not limited to, the Telcordia[TM] Integrated Testing & Analysis System ("TITAS"), the Telcordia[TM] Element Communicator ("TEC"), and/or components therof and/or products containing, incorporating or using the same, in this District and elsewhere throughout the United States, all without license from Alcatel USA.

29

063535.1001

72.    On information and belief, the communication network products and/or components thereof that Plaintiff has made, used, sold, and/or offered to sell, and that Plaintiff currently makes, uses, sells, and/or offers to sell, infringe, literally and/or under the doctrine of equivalents, one or more claims of the '052 patent under 35 U.S.C. § 271(a), (b), (c), (f), and/or (g).

73.    Upon information and belief, Plaintiff has infringed one or more claims of the '052 patent by inducing others to infringe the '052 patent and/or contributing to the infringement of the '052 patent by third parties.

74.    As a direct and proximate consequence of the acts and practices of Plaintiff in infringing one or more claims of the '052 patent, Alcatel USA has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights.

75.    As a direct and proximate consequence of the acts and practices of Plaintiff in infringing one or more claims of the '052 patent, Alcatel USA has suffered, is suffering, and will continue to suffer injury and damages, for which it is entitled to relief under 35 U.S.C. § 284, in an amount to be determined at trial.

76.    By reason of the acts and practices of Plaintiff, Plaintiff has also caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to plaintiff Alcatel USA for which there is no adequate remedy at law, and for which plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

77.    Upon information and belief, Plaintiff's infringement of the '052 patent has been, and/or hereafter will be, willful and deliberate.

30

## PRAYER FOR RELIEF
## FOR COUNTERCLAIM

WHEREFORE, Alcatel USA requests that the Court enter judgment:

(a)  Dismissing the First Amended Complaint in its entirety with prejudice;

(b)  Declaring the Telcordia patents-in-suit not infringed under 35 U.S.C. § 271;

(c)  Declaring the Telcordia patents-in-suit invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112, and/or the rules, regulations and laws pertaining thereto;

(d)  Declaring the Telcordia patents-in-suit unenforceable;

(e)  Declaring that Plaintiff's claims are barred in whole or in part by the doctrine of laches;

(f)  Declaring that Plaintiff's claims are barred by the doctrines of license, implied license and/or acquiescence;

(g)  Declaring that Plaintiff's claims are barred by the doctrine of equitable estoppel;

(h)  Declaring that Plaintiff's claims are barred by the doctrine of unclean hands;

(i)  Declaring that Plaintiff's claims with respect to the '633 patent are barred by the doctrine of intervening rights;

(j)  Declaring that Alcatel USA is not liable in any way for the relief sought in the First Amended Complaint, and denying Plaintiff all such relief;

(k)  Finding that Plaintiff has willfully and materially breached the GR Agreement;

(l)  Finding that Plaintiff has willfully and materially breached the Fleischer Patent License;

(m)  Finding that Plaintiff has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of the '052 patent;

31

(n)   Permanently enjoining Plaintiff and those acting in active concert or participation with it from engaging in any further acts of infringement of the '052 patent;

(o)   Awarding Alcatel USA monetary damages in an amount to be determined at trial;

(p)   Finding that, pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 11, and/or other applicable laws, Plaintiff's conduct in commencing and pursuing this action renders this an exceptional case and that Alcatel USA be awarded costs of this action and its attorneys' fees to the extent permitted by law; and

(q)   Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Alcatel USA requests a trial by jury of all issues so triable.

Dated:  August 10, 2005          Respectfully submitted:

Josy W. Ingersoll (I.D. No. 1088)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street; 17th Floor
Wilmington, DE 19801
Tel. (302) 571-6672
jingersoll@ycst.com
*Attorneys for Defendant / Counterclaim Plaintiff
Alcatel USA, Inc.*

32

OF COUNSEL:

Stuart J. Sinder
Clement J. Naples
KENYON & KENYON
One Broadway
New York, NY 10004
Tel. (212) 425-7200

063535.1001

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire hereby certify that on August 10, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

**BY HAND DELIVERY**

        Steven J. Balick, Esquire
        Ashby & Geddes
        222 Delaware Avenue
        Wilmington, DE  19801

I further certify that on August 10, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

        Richard L. Rainey, Esquire
        Finnegan, Henderson, Farabow
          Garrett & Dunner, L.L.P.
        901 New York Avenue, NW
        Washington, DC  20001

           YOUNG CONAWAY STARGATT & TAYLOR, LLP

           Josy W. Ingersoll (No. 1088)
           The Brandywine Building
           1000 West Street, 17th Floor
           Wilmington, Delaware  19801
           (302) 571-6600
           jingersoll@ycst.com
           Attorneys for Alcatel USA, Inc.

# EXHIBIT 17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,      )
                                       )
               Plaintiff,        )     Civil Action No. 04-874-GMS
                                       )
              v.              )
                                       )
ALCATEL USA, INC.,                )
                                       )
             Defendant.     )
                                       )

## DECLARATION OF JAMES T. WILSON

1.     I am an attorney at Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., which represents plaintiff Telcordia Technologies, Inc. in this action and in *Telcordia Technologies, Inc. v. Lucent Technologies, Inc.*, Civil Action No. 04-875-GMS (filed July 16, 2004) and *Telcordia Technologies, Inc. v. Cisco Systems Inc.*, Civil Action No. 04-876-GMS (filed July 16, 2004).

2.     To date, Telcordia, Lucent, Cisco, and Alcatel have produced nearly one and a half million pages of documents.

3.     Telcordia has produced over three hundred thousand pages of documents, Cisco nearly two hundred thousand, Lucent nearly a million.

4.     Alcatel has produced about 9,000 pages of documents.

5.     Alcatel's production lacks documents to support its contention that Telcordia has infringed the patent Alcatel has asserted against Telcordia, U.S. Patent No. 6,247,052.

6.      Telcordia, Cisco, Lucent, and Alcatel have responded to over fifty interrogatories.

7.      Alcatel has not yet identified people with knowledge about the asserted '052 patent or other information required under Federal Rule of Civil Procedure 26(a)(1).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of September 2005.

_____