# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELCORDIA TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-874 GMS |
| | ) |
| ALCATEL USA, INC., | ) |
| | ) |
| Defendant. | ) |

## TELCORDIA'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER AND STAY ALCATEL USA, INC.'S PATENT INFRINGEMENT COUNTERCLAIM

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc.*

*Of Counsel:*

Donald R. Dunner
Don O. Burley
Richard H. Smith
James T. Wilson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4400

Dated: November 1, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I. INTRODUCTION AND SUMMARY .......................................................................... 1

II. ARGUMENT .................................................................................................................. 3

    A. This Court Established June 14, 2005 As the Date by Which All Parties Had to Add New Patents to the Present Case ............................................. 3

    B. Telcordia Never Intended to Agree—and Did Not Agree—That Alcatel Could Assert a Patent Infringement Counterclaim After the Court's June 14, 2005 Cutoff Date ......................................................................... 6

    C. Allowing the '052 Patent to Be Asserted in the Present Case Would Prejudice Telcordia ..................................................................................... 9

        1. Telcordia Would Suffer Prejudice Under the Circumstances of This Case, Especially Given That the *Markman* Process Is Beginning Shortly ................................................................................... 9

        2. Telcordia's '306 and '633 Patents Involve Different Technology Than the '052 Patent ............................................................. 12

    D. Either Dismissal or Severance at This Time Is Necessary ................................. 14

III. CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*E.I. DuPont de Nemours & Co. v. Millennium Chem., Inc.*,
  No. C.A. 97-237-SLR, 1999 WL 615164 (D. Del. Aug. 2, 1999) ............................................. 5

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.*,
  143 F.R.D. 553 (D. Del. 1992) ................................................................................................ 5

**Statutes**

Fed. R. Civ. P. 13(b) ................................................................................................... *passim*

Fed. R. Civ. P. 16(b)(6) ............................................................................................................ 5

Fed. R. Civ. P. 21 ................................................................................................................... 14

Fed. R. Civ. P. 26(a)(1) .......................................................................................................... 11

Fed. R. Civ. P. 42(b) .............................................................................................................. 14

**Other Authorities**

6 Charles A. Wright & Arthur R. Miller,
  Federal Practice & Procedure § 1420 (2d ed. 1990) ............................................................. 5

I.      **INTRODUCTION AND SUMMARY**

When Telcordia indicated that it planned to add additional patents to the present case during the April 14, 2005 scheduling conference, Alcatel successfully urged this Court to establish a June 14, 2005 deadline for amending the pleadings. Telcordia kept to the Court's date and filed Telcordia's First Amended Complaint and Demand for Jury Trial ("Amended Complaint") (D.I. 42) on June 14, 2005, in which it added the '633 patent to its case against Alcatel. Alcatel, however, did not inform anyone of its intention to add a patent infringement claim against Telcordia until it wrote Telcordia a letter on July 26, 2005, and it did not specifically inform Telcordia of its '052 patent until August 10, 2005, when it filed Alcatel USA's Answer and Counterclaims to Plaintiff's First Amended Complaint and Demand for Jury Trial ("Answer and Counterclaims") (D.I. 49) alleging infringement of the '052 patent.

In now asserting that its infringement allegation was added to the present case in a timely manner, Alcatel makes two basic arguments. First, Alcatel argues that Telcordia *agreed* that Alcatel could add the '052 patent after the Court's June 14 cutoff date. However, Telcordia's understanding of its agreement with Alcatel is very different from Alcatel's. Aside from the fact that Telcordia would not have had the authority to allow Alcatel to add a new patent to the case after the Court's cutoff date, Telcordia never did that. On the contrary, Telcordia agreed only that it would not object to Alcatel's filing of a counterclaim—such as a breach of contract claim—that was responsive to the patent Telcordia was adding in its Amended Complaint.

Second, Alcatel argues that—irrespective of whether Telcordia agreed—it (Alcatel) had the right to assert a counterclaim for patent infringement in response to Telcordia's Amended Complaint under Rule 13(b) of the Federal Rules of Civil Procedure. In making this argument, however, Alcatel fails to recognize that in this case, the Court expressly ordered (at Alcatel's insistence, ironically) that all new patents had to be added to the case by the June 14, 2005 cutoff

1

date, and that Alcatel was subject to that deadline just as much as Telcordia was. It is of course a common occurrence that a court will manage its docket by imposing deadlines, via a scheduling order, that limit the time within which a party has the right to do something otherwise permitted by the Federal Rules, and those deadlines must be honored. In essence, however, it is Alcatel's position that despite having persuaded the Court to set an early deadline for the addition of new patents, despite Telcordia having been bound by that deadline, and despite the Court having said that the deadline applied to all parties, there nonetheless remained a procedural means by which Alcatel could sidestep the Court's deadline in this case. Alcatel's position cannot be right.

Moreover, Alcatel's assertions regarding prejudice are contrary to the facts and what would clearly happen if the '052 patent were made part of this case. Alcatel's arguments notwithstanding, Telcordia's '306 and '633 patents concern the same telecommunications technology (the mechanics involved in the transmission of packetized data), and Alcatel has been aware of both patents for many years. On the other hand, Telcordia was not even aware of Alcatel's '052 patent until it was added to the present case in August, and it is a software patent that involves an entirely different technology. Accordingly, making the '052 patent part of the present case would unfairly distract Telcordia from preparing its case on the '306 and '633 patents. Moreover, any attempt to try the '052 patent in the same trial as the '306 and '633 patents would complicate an already complicated case and cause irremediable jury confusion.

In short, Telcordia recognizes that Alcatel has the right in the abstract to assert a claim of infringement against Telcordia based on the '052 patent (subject, of course, to any defenses available to Telcordia). But that should be done through a separate, stand-alone action, not a counterclaim in the present action.

## II.     ARGUMENT

### A.    This Court Established June 14, 2005 As the Date by Which All Parties Had to Add New Patents to the Present Case

In its opening brief, Telcordia explained that Alcatel's patent infringement counterclaim was untimely in view of the Court's Scheduling Order.  *See* Telcordia's Motion to Dismiss, or in the Alternative, to Sever and Stay Alcatel USA, Inc.'s Patent Infringement Counterclaim (D.I. 54) ("Telcordia Opening Br.") at 9-11.[1]  Alcatel, however, contends that the Scheduling Order cannot have precluded it from raising its infringement claim as a counterclaim in response to Telcordia's Amended Complaint.  Specifically, Alcatel argues that all the Scheduling Order provided was that "[a]ll motions to . . . amend the pleadings shall be filed on or before June 14, 2005."  Thus, Alcatel argues that because it asserted its claim of infringement of the '052 patent not through a motion to amend the pleadings, but as a permissive counterclaim under Rule 13(b) of the Federal Rules of Civil Procedure, the Scheduling Order simply does not apply here.  *See* Alcatel Opp. at 12-14.

Alcatel's argument is contrary to the entire discussion at the April 14, 2005 scheduling conference, as well as to Telcordia's understanding of the purpose (and effect) of the Court's May 4, 2005 Scheduling Order.  The parties spoke at great length at the scheduling conference about the assertion of new patents by Telcordia.  *See* Ex. 7 to Telcordia's Opening Br. at 31-48.  Moreover, it was Alcatel's position during the conference that the timetable for adding new patents should be extremely short.  *See*, *e.g.*, *id.* at 45 (Responding to the Court's question regarding the time frame Alcatel would propose, Alcatel's counsel stated, "[G]ive them ten days to two weeks to decide what they want to add.  Let them move to add those patents.").  Indeed,

---

[1] Alcatel asserts that the Scheduling Order was "never entered," even though it is unclear whether Alcatel is making any argument based on that.  *See* Alcatel Opp. at 2 n.1.  In any event, though, the docket sheet for the case indicates that the Scheduling Order was entered on May 4, 2005.

3

the discussion during the scheduling conference regarding the time frame in which Telcordia could seek to add new patents to the case culminated in the Court's rejection of Telcordia's request that it have four months to make that decision, with the Court saying, "I'm going to give you 60 days." *Id.* at 47.

Further, Telcordia expressly sought to ensure that the Court's imposition of the June 14, 2005 cutoff date to add patents applied not just to it, but also to the defendants:

> Mr. Rainey:   That is going to be applicable to both sides in the case?
>
> The Court:    Everything that we're going to set here today.
>
> Mr. Rainey:   Thank you, Your Honor. That's fine.

*Id.* Indeed, the Court proceeded to confirm the applicability of the cutoff date to both Telcordia and the defendants as well as the fact that the cutoff date was June 14:

> The Court:    . . . Everything goes both ways here. . . .
>
> Mr. Rainey:   Absolutely, Your Honor.
>
> The Court:    Okay. June 14th is the cutoff, okay, '05.

*Id.* at 48. *See also* Telcordia Opening Br. at 3-4, 10-11.

To interpret this discussion, as Alcatel does, to mean that if Telcordia asserted a new patent by the cutoff date, the *defendants* would then be free at a later time to assert a new and unrelated patent in response (whether under Rule 13(b) or on any other basis) is completely at odds with the discussion and the Scheduling Order. On the contrary, since the Court made it clear that the cutoff date it established applied to both Telcordia and the defendants, the most sensible interpretation of the Court's Scheduling Order is that if any party wanted to assert a new patent, it had to do so by the cutoff date.[2]

---

[2] In fact, Telcordia recognizes the principle that a party may—under the normal application of the Federal Rules—plead a counterclaim for patent infringement in response to an

4

Indeed, since the discussion at the scheduling conference always contemplated that Telcordia would seek to add one or more new patents by whatever date the Court set, accepting Alcatel's assertion that it had the right to assert a new patent as a permissive counterclaim under Rule 13(b) would mean that the entire discussion at the conference about the cutoff date applying to both sides was meaningless. That hardly seems likely—or fair.

There can also be no question that, irrespective of Rule 13(b), it was within the Court's power to set a date by which any new patents would have to be asserted in the case. Courts are vested with broad powers to control their dockets, and specifically may include in a scheduling order "any other matters appropriate in the circumstances of the case." Fed. R. Civ. P. 16(b)(6). Indeed, it is unquestionable that courts always have the discretion to dismiss a permissive counterclaim (such as Alcatel's infringement claim). *See*, *e.g.*, *Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 559 (D. Del. 1992) (declining to address permissive counterclaim of patent infringement where it "would unduly complicate the intrinsically complex factual and legal issues at bar"); 6 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1420 (2d ed. 1990) ("[T]he court has discretion to refuse to entertain any counterclaim [under Rule 13(b)], when allowing it would unduly complicate the litigation.").[3]

---

amended complaint. *See* Alcatel Opp. at 14 (citing cases). But that has nothing to do with the issue here, which is whether the Court's Scheduling Order changed the normal application of the Rules in this case and established a cutoff date by which all parties had to seek to add any new patents to the case. None of Alcatel's cases deals with this issue in any way. For example, in *E.I. DuPont de Nemours & Co. v. Millennium Chem., Inc.*, No. C.A. 97-237-SLR, 1999 WL 615164 (D. Del. Aug. 2, 1999), the issue was whether the defendant's *compulsory* counterclaims were untimely under the Federal Rules when they were filed in response to the plaintiff's amended complaint rather than the original complaint. The court properly held that they were not. *Id.* at *4.

[3] Of course, Telcordia is not saying that the Court's cutoff date is absolute. On the contrary, after the cutoff date, a party may seek to amend its pleadings (to add a new patent or for some other reason) by establishing "good cause." *See* Telcordia Opening Br. at 10. Alcatel, however, has not attempted to establish good cause to add the '052 patent to this case, nor could it.

In sum, Telcordia submits that the Court required that all new patents be asserted (by either Telcordia or a defendant) by the Court's June 14, 2005 cutoff date. Accordingly, Alcatel's infringement counterclaim should be dismissed as untimely.

### B. Telcordia Never Intended to Agree—and Did Not Agree—That Alcatel Could Assert a Patent Infringement Counterclaim After the Court's June 14, 2005 Cutoff Date

Alcatel also asserts that even if the Court's Scheduling Order required it to assert any new patent by June 14, 2005, Telcordia agreed (on June 13, 2005) to allow Alcatel to bring its patent infringement claim after the Court's cutoff date in exchange for Alcatel's agreement to allow Telcordia to assert its '633 patent. *See* Alcatel's Memorandum in Opposition to Telcordia's Motion to Dismiss, or in the Alternative, to Sever and Stay Alcatel USA, Inc.'s Patent Infringement Counterclaim (D.I. 55) ("Alcatel Opp.") at 1, 10-12) (referring to "Telcordia's **specific** written agreement," with the emphasis being Alcatel's). An examination of the facts, however, does not support Alcatel's position.

At the time Telcordia was seeking Alcatel's consent to allow it to move to amend its original complaint to add the '633 patent—which it intended to do by the Court's June 14, 2005 cutoff date—it was aware that Alcatel intended to assert that Telcordia's infringement claim amounted to a breach of a license (which expired in June 2004) between Telcordia and a company later acquired by Alcatel (or Alcatel's Canadian affiliate) named Newbridge Networks, Inc. Accordingly, Telcordia was amenable to Alcatel's request that, as a condition to Alcatel agreeing that Telcordia could add the '633 patent to the case, Telcordia agree not to oppose Alcatel's assertion of counterclaims against Telcordia on the ground they were asserted after the cutoff date.

However, the relevant emails show that Telcordia's agreement concerned only counterclaims that directly related to (or responded to) the patent Telcordia was adding in its

6

Amended Complaint. Following a phone conversation, Alcatel's counsel sent an email to Telcordia's counsel asking (in relevant part) that Telcordia agree not to object to "Alcatel's assertion of counterclaim(s) against Telcordia *in response to* Telcordia's amended complaint on the grounds that such counterclaims [were] asserted after the deadline set for motions to amend the pleadings" (*see* Ex. M to Alcatel Opp. (emphasis added)), to which Telcordia's counsel responded as follows:

> Fourth, Telcordia agrees that it will not oppose Alcatel's assertion of counterclaims against Telcordia (such as a counterclaim for breach of contract) on the ground that counterclaims had to be asserted by the deadline set for motions to amend the pleadings (i.e., tomorrow, June 14, 2005). Of course, if we have some other basis for opposing Alcatel's assertion of a particular counterclaim, we are free to do that.

Ex. A to Alcatel Opp.

Telcordia submits that these emails indicate that Telcordia was focusing only on—and its agreement was restricted to—counterclaims that would be responsive to the new patent Telcordia intended to assert in its Amended Complaint—such as the breach of contract claim that Alcatel had discussed with Telcordia. A counterclaim unrelated to the new patent Telcordia was asserting, such as the counterclaim Alcatel later asserted for infringement of its '052 patent, was simply not within the scope of Telcordia's agreement. Indeed, as of this time (June 2005), Alcatel had provided no indication whatsoever that it was contemplating the possibility of asserting a patent of its own against Telcordia, and the emails between counsel include not even a hint of this possibility.

On the contrary, the record shows that this matter was closed, since the issue of when new patents needed to be asserted by *any* party had been specifically discussed during this Court's April 14, 2005 scheduling conference, and the Court had been unequivocal in stating that its cutoff date of June 14, 2005 applied not just to Telcordia but also to the defendants.

7

Accordingly, there is no basis for concluding that there was any intention on Telcordia's part to alter this cutoff date unilaterally—even if Telcordia had that power.[4]

Moreover, this conclusion is consistent with the parties' subsequent actions. For example, when Alcatel first mentioned the '052 patent in a letter dated July 26, 2005 (Ex. C to Alcatel Opp.), Telcordia sent a responsive email stating the following:

> Candidly, I don't understand why you're trying to tie a possible claim by Alcatel against Telcordia for patent infringement to the due date for Alcatel's response to Telcordia's amended complaint. Any infringement claim that Alcatel might have based on the Telcordia systems you've identified in your letter would be unrelated to the subject matter of Telcordia's present case against Alcatel, and certainly not be a compulsory counterclaim. Indeed, Telcordia would strongly oppose any attempt to make the claim a part of the current case.

July 28, 2005 Email from D. Burley to S. Sinder (copy attached as Ex. A).

Further, when Alcatel responded the next day in a letter that defended its ability to assert a patent of its own against Telcordia, no mention was made of any agreement between the parties. On the contrary, Alcatel relied solely on Rule 13(b) of the Federal Rules of Civil Procedure and its position that it was entitled to assert its infringement claim as a permissive counterclaim. *See* Ex. D to Alcatel Opp. The first time that Alcatel alleged that such an agreement existed was in its opposition to Telcordia's present motion.

Finally, while Alcatel asserts that it is "telling" that "Telcordia did not bother to argue that Alcatel's other new Counterclaim, for breach of contract, should be dismissed, even though Telcordia's same flawed arguments would arguably apply to it" (Alcatel Opp. at 3 n.2), this assertion shows that Alcatel has missed the point entirely. Alcatel actually included in its Answer and Counterclaims two new counterclaims that were specific to the '633 patent—its

---

[4] Incidentally, Alcatel never filed a request with the Court to adjust the Scheduling Order to allow it to add an additional patent based on the agreement.

Eighth Counterclaim, in which Alcatel alleges that it is entitled to intervening rights in the '633 patent, and its Tenth Counterclaim, in which Alcatel alleges that Telcordia's assertion of the '633 patent against it amounted to a breach of contract and/or a breach of the implied covenant of good faith and fair dealing (this counterclaim is based on the license to Newbridge Networks, which Alcatel calls the "Fleischer Patent License"). *See* Alcatel Answer and Counterclaims (Ex. 16 to Telcordia Opening Br.) at 26 (¶ 52), 28-29 (¶¶ 61-68). Both of these counterclaims, however, relate to Telcordia's assertion of the '633 patent against Alcatel. Indeed, the facts concerning both counterclaims are also pled by Alcatel as affirmative defenses. *See id.* at 13-14 (¶¶ 61-64) (Alcatel's Fifth Affirmative defense, based on "the doctrines of express license, implied license and/or acquiescence"), 14 (¶ 69) (Alcatel's Eighth Affirmative defense, based on "intervening rights"). Accordingly, these two counterclaims stand on a completely different footing than Alcatel's patent infringement counterclaim, and Telcordia had no basis to (and did not) challenge the timeliness of either counterclaim.

In sum, Telcordia never agreed that Alcatel could inject a new patent into this case after the Court's June 14, 2005 cutoff date.

    **C.**    **Allowing the '052 Patent to Be Asserted in the Present Case Would Prejudice Telcordia**

The prejudice Telcordia would suffer if the '052 patent were allowed to be made part of the present case cannot properly be equated to the burden Alcatel bears from defending against Telcordia's '306 and '633 patents.

    **1.**    **Telcordia Would Suffer Prejudice Under the Circumstances of This Case, Especially Given That the *Markman* Process Is Beginning Shortly**

As explained in Telcordia's opening brief, at that time, Telcordia had undertaken substantial efforts to collect and produce documents in this case, while Alcatel had done almost

9

nothing. *See* Telcordia Opening Br. at 5-6. To respond to Alcatel's new claim, however, Telcordia would again have to spend time to interview relevant personnel and collect and produce documents, time that should be spent analyzing defendants' productions, obtaining further production from the defendants, and preparing its case. Moreover, it is undisputed that Alcatel was aware of Telcordia's '633 patent for years, whereas Telcordia was first made aware of Alcatel's '052 patent when it received Alcatel's Answer and Counterclaims on August 10, 2005. *See* Telcordia Opening Br. at 15. Thus, requiring Telcordia to engage in new discovery relating to the '052 patent would prejudice Telcordia not just because of the costs involved, but because it would disrupt Telcordia's work on the issues that need to be addressed at this stage of the case.

Alcatel's assertion that Telcordia urged a different schedule for the case—and asked for a later date of November 2005 to amend the pleadings (*see* Alcatel Opp. at 3, 16)—is irrelevant. The only appropriate means of determining prejudice is according to the schedule actually adopted by the Court, not according to a different schedule the Court rejected.

Similarly, the manner in which Alcatel attempts to minimize the importance of the fact that it has known of the '306 and '633 patents for years, while Telcordia first learned of the '052 patent in August, is surprising to say the least. Alcatel's position appears to be that, while it may have known of Telcordia's patents, it did nothing until after Telcordia formally moved to amend its complaint. *See* Alcatel Opp. at 19. Putting aside the accuracy of the claim (for example, if Alcatel truly failed to study patents it had notice of, notice given years ago, then it would have no basis to deny Telcordia's willfulness allegations), Alcatel's failure to act diligently does not affect the prejudice that Telcordia would suffer through the addition of the '052 patent to the

case.  If Telcordia had been informed of the '052 patent months ago, it could have studied Alcatel's patent months ago.  But Alcatel's unexplained delay denied Telcordia that opportunity.

Further, Alcatel contends that Telcordia has not suffered prejudice from Alcatel's deficient production of documents and information relating to the '052 patent because "Telcordia has not yet even requested such documents."  Alcatel Opp. at 20.  But that argument demonstrates the prejudice Telcordia suffers.  Rule 26(a)(1) of the Federal Rules of Civil Procedure requires Alcatel to provide documents and information relevant to its '052 patent, and it is undisputed that Alcatel has not yet done that.  *See* Telcordia Opening Br. at 5-6.  In addition, Telcordia had not previously requested other documents or information concerning Alcatel's patent because Alcatel's patents were not previously at issue.  In contrast, when Telcordia amended its complaint to add the '633 patent, it agreed that Alcatel's previous discovery requests would cover the newly added '633 patent, so that Alcatel would not face the burden of issuing additional requests.  *See* Ex. A to Alcatel Opp. at 1-2.  Accordingly, the prejudice suffered by Telcordia from Alcatel's discovery delays is real.

Finally, Alcatel argues that Telcordia would not suffer prejudice from the *Markman* process relating to the '052 patent even though the *Markman* process begins in November.  *See* Alcatel Opp. at 20.  That is wrong, however, since the lack of time to study Alcatel's patent and conduct thorough discovery means that Telcordia's *Markman* efforts would be unfairly pressured.  Even accepting Alcatel's argument that allowing it to add the '052 patent in the case in August rather than June gave it only an "eight week" advantage (which, again, is grossly inaccurate as the true date should be measured from when Alcatel had notice of the '633 patent), the prejudice to Telcordia would be significant.

11

On the other hand, the prejudice to Alcatel from dismissing or severing the '052 patent from the present case would be slight if not non-existent. Although Alcatel asserts that it would require "substantially more resources to litigate a new and separate case" (Alcatel Opp. at 21), it provides no facts to support that assertion, and it seems unlikely. Indeed, given the differences in evidence explained in Telcordia's opening brief (*see* Telcordia Opening Br. at 12-14), Alcatel would likely gain little or no benefit as the result of consolidation. Further, Alcatel is solely responsible for any "delay" (Alcatel Opp. at 21) it may suffer in pursuing its '052 patent infringement claim, since it is Alcatel that chose to remain silent regarding its '052 patent when it filed its original Answer in December 2004, again during the scheduling conference in April 2005, and once again during discussions relating to Telcordia's Amended Complaint in June 2005, until it finally filed its Answer and Counterclaims in August 2005.

    **2.**    **Telcordia's '306 and '633 Patents Involve Different Technology Than the '052 Patent**

Telcordia's opening brief explained that the technology of the '052 patent was graphical user interface software that remotely monitors telecommunications equipment. *See* Telcordia Opening Br. at 7. Alcatel appears to agree with that assessment, but thinks it important that Telcordia's accused software can monitor the Alcatel products Telcordia accuses of infringement. *See* Alcatel Opp. at 8-9, 22-23. That, however, has nothing to do with whether Alcatel's patent involves the same (or even similar) technologies as Telcordia's patents.

Alcatel's patent is directed to software that allows someone at a remote workstation to monitor the operation of network elements. But it has nothing whatsoever to do with the form in which data is exchanged (e.g., in data packets) or the circuits involved in the data's transmission and synchronization (which is the subject matter of Telcordia's patents). Indeed, Alcatel never contests the fact (nor could it) that the technologies that are relevant to understanding its patent

12

(and the operation of Telcordia's accused software) are totally different from the technologies that are relevant to understanding Telcordia's patents (and the operation Alcatel's accused telecommunications equipment). *See* Telcordia Opening Br. at 8-9.

Alcatel's discussion of the technologies involved in Telcordia's case, such as ATM and SONET (*see* Alcatel Opp. at 9)—and its assertion that "Alcatel's '052 patent is probably more closely related to Telcordia's '306 patent than is Telcordia's '633 patent" (*id.*)—is both confusing and wrong. The only real relationship that the '052 patent has to ATM or SONET is that the software that the '052 patent discloses can be used to monitor ATM or SONET equipment. But Telcordia's accused software is capable of monitoring almost any equipment (including Alcatel's) in any conceivable network. *See* Ex. H to Alcatel Opp. (stating that the software supports "over 500 different versions of network elements from numerous vendors worldwide"). The software has nothing to do with the manner in which Telcordia's equipment (or any other monitored equipment) transmits data. Thus, the technologies involved in Telcordia's two patents, on the one hand, and Alcatel's patent, on the other, remain fundamentally different.

Indeed, Alcatel's characterization of the technologies of the '306 and '633 patents as involving "completely unrelated inventions" (*see* Alcatel Opp. at 7) is disingenuous. The '306 patent relates to the transmission of packetized data such as ATM cells, and the '633 patent relates to the generation and transmission of ATM cells containing particular timing information (in fact, the '633 patent is essential to practicing a particular aspect of ATM technology known as SRTS). Both patents cover specific circuitry used to compose and transmit ATM cells. The '052 patent, on the other hand, has nothing to do with the circuitry that composes or transmits ATM cells (or any other form of packetized data).

13

Accordingly, while the technology relating to Telcordia's '306 and '633 patents is admittedly difficult, the related nature of the two patents will ameliorate the difficulties that might otherwise result from having both patents in a single trial. Trying Alcatel's infringement case involving the '052 patent in the same trial as Telcordia's patents, however, would present a completely different situation and make the case an order of magnitude more difficult for the jury to understand. *See* Telcordia Opening Br. at 12-14.

### D. Either Dismissal or Severance at This Time Is Necessary

If this Court agrees that Alcatel's counterclaim for infringement of the '052 patent had to be filed by the Court's June 14, 2005 cutoff date, it should dismiss the counterclaim (without prejudice). Alcatel can then decide whether it wants to refile the claim as a stand-alone action.

Even if the Court decides that Alcatel timely asserted its infringement counterclaim, the Court should reject Alcatel's position that the Court should defer any ruling on severing the '052 patent from the case until just prior to trial. *See* Alcatel Opp. at 24. On the contrary, the Court should immediately sever (and stay) the present case so that it is clear that the '052 patent is not part of the present case and the discovery ongoing in this case. Indeed, so long as it is made clear that Alcatel's claim for infringement of the '052 patent is to be divorced from Telcordia's infringement claims (both for discovery and trial), the Court can order severance either under Rule 21 of the Federal Rules of Civil Procedure (which would result in Alcatel's infringement claim being made a separate action) or under Rule 42(b) (which would keep the claim in this case, but result in separate trials). The prejudice suffered by Telcordia from the situation as it now exists, i.e., with the '052 patent being tried along with the '306 and '633 patents—including the significant complication of discovery caused by having to collect documents for the '052 patent, analyze the patent, and include the patent in its *Markman* preparations—is immediate.

The only way this prejudice can be prevented is to separate the '052 patent from the present case, and to do so both immediately and in all respects.

### III.   CONCLUSION

For the reasons stated in Telcordia's opening brief and this brief, Telcordia respectfully submits that Alcatel's patent infringement counterclaim should be dismissed or, in the alternative, severed and stayed.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*
*Telcordia Technologies, Inc.*

*Of Counsel:*

Donald R. Dunner
Don O. Burley
Richard H. Smith
James T. Wilson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C.  20001
(202) 408-4000

Dated:  November 1, 2005

163063.1

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2005, the attached **TELCORDIA'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER AND STAY ALCATEL USA, INC.'S PATENT INFRINGEMENT COUNTERCLAIM** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Josy W. Ingersoll, Esquire<br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street<br>Wilmington, DE  19801 | HAND DELIVERY |
| Stuart J. Sinder, Esquire<br>Kenyon & Kenyon<br>One Broadway<br>New York, NY  10004 | VIA FEDERAL EXPRESS |

/s/ *Tiffany Geyer Lydon*

Tiffany Geyer Lydon