# EXHIBIT 3



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
           Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/997,348 | 12/23/97 | HUANG | P    030 |

|  | EXAMINER |
|---|---|
| LM02/0811 | GEORGE, M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2756 | 4 |

BAKER & BOTTS
2001 ROSS AVENUE
DALLAS TX 75201-2980

DATE MAILED:
                    08.

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)                                                     1- File Copy

| *Office Action Summary* | Application No. 08/997,348 | Applicant(s) Peter Sung-An Huang et al. |
|---|---|---|
| | Examiner Geckil | Group/Art Unit 2756 |

—*The MAILING DATE of this communication appears on the cover sheet beneath the correspondence address*—

**Period for Response**

A SHORTENED STATUTORY PERIOD FOR RESPONSE IS SET TO EXPIRE 3 (three) MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a response be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for response is specified above, such period shall, by default, expire SIX (6) MONTHS from the mailing date of this communication .
- Failure to respond within the set or extended period for response will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

**Status**

☑ Responsive to communication(s) filed on 12/23/97

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 1 1; 453 O.G. 213.

**Disposition of Claims**

☑ Claim(s) 1 – 7 0 _____ is/are pending in the application.

    Of the above claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☑ Claim(s) 1 – 7 0 _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claim(s) _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119 (a)-(d)**

☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 11 9(a)-(d).

    ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

    ☐ received.

    ☐ received in Application No. (Series Code/Serial Number) _____

    ☐ received in this national stage application from the International Bureau (PCT Rule 1 7.2(a)).

    *Certified copies not received: _____

**Attachment(s)**

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☑ Notice of References Cited, PTO-892

☑ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Interview Summary, PTO-413

☐ Notice of Informal Patent Application, PTO-152

☐ Other _____

**Office Action Summary**

Application/Control Number: 08/997,348                                    Page 2

Art Unit: 2756

1.    Claims 1-30 are presented for examination.

2.    The abstract of the disclosure is objected to because it is not on a single page.  Correction

is required.  See MPEP § 608.01(b).

3.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

4.    This application currently names joint inventors.  In considering patentability of the claims

under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was

commonly owned at the time any inventions covered therein were made absent any evidence to

the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor

and invention dates of each claim that was not commonly owned at the time a later invention was

made in order for the examiner to consider the applicability of 35 U.S.C. 103© and potential 35

U.S.C. 102(f) or (g) prior art under 35 U.S.C. 103(a).

Application/Control Number: 08/997,348

Page 3

Art Unit: 2756

5.     Claims 1-30 are rejected under 35 U.S.C. 103(a) as being unpatentable over Branton, Jr. et al in view of Koved.

6.     Branton, Jr. et al (5,870,558) taught the invention substantially as claimed including a graphical user interface for enabling one or more users to access a sonet telecommunications switching system, comprising:

a) a remote computer having a browser (col 4-6);

b) a web server (284) accessible by the browser (col 4 line 4 et seq) and having an interface application program which enables the remote computer to communicate with the telecommunications network switching management system (col 4 line 5 et seq); and

c) a network management system or system manager building block (271-273) in communications with the remote computer running the browser application program, the system manager building block (271-273) also being in communication with the sonet (56,260) telecommunications switching system (cols 4-6), the system manager building block containing information related to authorized users (col 4 line 26 et seq and col 7 lines 1-8.)

7.     Branton Jr. et al due to the scope of his teachings did not go into details of determining whether to permit the users to access the telecommunications switching system, instead they only stated that authorized users associated with the service provider organization could access to the telecommunications switching system. It would have been obvious to one of ordinary skill in the Internet art at the time of the invention that users who has an account with a service provider are authorized to access the web services after passing an authentication scheme, e.g., filling the

Application/Control Number: 08/997,348                                    Page 4

Art Unit: 2756

information requested by the service provider, e.g. submitting user ID at the login prompt and

also submitting the password.  These are provided by the security manager software running on

the service provider computer.  These are all well known features of web accessing.  For example,

Koved (5,915,085) taught such a security manager, e.g., see figure 7.  It would have been

obvious to one of ordinary skill in the Internet art at the time of the invention to combine the

teachings of Branton Jr. et al and Koved because Koved just provided the well known details of

the security manager which is used to authorize users taught by Branton Jr. et al.  Koved also

suggested that one skilled in the art would realize that loadable content could be adapted to other

environments, such as active X, or OMG's CORBA and IIOP, where the loadable content is

executable (col 4 lines 62-66.)  Other claimed features are all obvious variations of the well

known features of using graphical interfaces to access remote devices via the www features.

It would have been obvious to one of ordinary skill in the Internet art at the time of the invention

that using applets to accomplish what has been done previously using the well known html or cgi

scripts is just an obvious variations of web accessing, see also Koven teaching applets.


8.     Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Mehmet Geckil whose telephone number is (703) 305-9676.  The examiner

can normally be reached on Monday through Friday from 6:30 A.M. to 3:00 P.M..

Application/Control Number: 08/997,348                                    Page 5

Art Unit: 2756

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

Frank Asta, can be reached on (703) 305-3817. The fax phone number for the organization where

this application or proceeding is assigned is (703) 305-9564.

Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703) 305-3900.

**Any response to this action should be mailed to:**

> Commissioner of Patents and Trademarks
> Washington, D.C. 20231

**or faxed to:**

> (703) 308-9051, (for formal communications intended for entry)

**Or:**

> (703) 308-5359 (for informal or draft communications, please label
> "PROPOSED" or "DRAFT")

Hand-delivered responses should be brought to Crystal Park II, 2021 Crystal
Drive, Arlington, VA., Sixth Floor (Receptionist).

8/10/99

*Mehmet Geckil*

MEHMET B. GECKIL
PRIMARY EXAMINER

Form PTO 948 (Rev. 8-98)     U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office     Application No. _08/999?__

## NOTICE OF DRAFTSPERSON'S
## PATENT DRAWING REVIEW

The drawing(s) filed (insert date) _____ are

A. ☐ approved by the Draftsperson under 37 CFR 1.84 or 1.152.
B. ☑ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 for the reasons indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawing must be submitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color. -
   ___ Color drawings are not acceptable until petition is granted.
   Fig(s) _____
   ___ Pencil and non black ink not permitted. Fig(s) _____
2. PHOTOGRAPHS. 37 CFR 1.84 (b)
   ___ 1 full-tone set is required. Fig(s) _____
   ___ Photographs not properly mounted (must use brystol board or
   photographic double-weight paper). Fig(s) _____
   ___ Poor quality (half-tone). Fig(s) _____
3. TYPE OF PAPER. 37 CFR 1.84(e)
   ___ Paper not flexible, strong, white, and durable.
   Fig(s) _____
   ___ Erasures, alterations, overwritings, interlineations,
   folds, copy machine marks not accepted. Fig(s) _____
   ___ Mylar, velum paper is not acceptable (too thin).
   Fig(s) _____
4. SIZE OF PAPER. 37 CFR 1.84(f): Acceptable sizes:
   ___ 21.0 cm by 29.7 cm (DIN size A4)
   ___ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
   ___ All drawing sheets not the same size.
   Sheet(s) _____
   ___ Drawings sheets not an acceptable size. Fig(s) _____
5. MARGINS. 37 CFR 1.84(g): Acceptable margins:
   Top 2.5 cm Left 2.5cm Right 1.5 cm Bottom 1.0 cm
   SIZE: A4 Size
   Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: 8 1/2 x 11
   ___ Margins not acceptable. Fig(s) _2—6, 8, 9, 11-13_
   ✕ Top (T) _____ Left (L) _____
   Right (R) _____ Bottom (B) _____
6. VIEWS. 37 CFR 1.84(h)
   REMINDER: Specification may require revision to
   correspond to drawing changes.
   Partial views. 37 CFR 1.84(h)(2)
   ___ Brackets needed to show figure as one entity.
   Fig(s) _____
   ✕ Views not labeled separately or properly.
   Fig(s) _2, 10_
   ___ Enlarged view not labeled separately or properly.
   Fig(s) _____
7. SECTIONAL VIEWS. 37 CFR 1.84 (h)(3)
   ___ Hatching not indicated for sectional portions of an object.
   Fig(s) _____
   ___ Sectional designation should be noted with Arabic or
   Roman numbers. Fig(s) _____

8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   ___ Words do not appear on a horizontal, left-to-right fashion
   when page is either upright or turned so that the top
   becomes the right side, except for graphs. Fig(s) _____
9. SCALE. 37 CFR 1.84(k)
   ___ Scale not large enough to show mechanism without
   crowding when drawing is reduced in size to two-thirds in
   reproduction.
10. CHARACTER OF LINES, NUMBERS, LETTERS.
    37 CFR 1.84(l)
    ✕ Lines, numbers & letters not uniformly thick and well
    defined, clean, durable, and black (poor line quality).
    Fig(s) _14—6, 10, 9, 11-14_
11. SHADING. 37 CFR 1.84(m)
    ___ Solid black areas pale. Fig(s) _____
    ___ Solid black shading not permitted. Fig(s) _____
    ___ Shade lines, pale, rough and blurred. Fig(s) _____
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.
    37 CFR 1.84(p)
    ✕ Numbers and reference characters not plain and legible.
    Fig(s) _14—6, 8, 9, 11-14_
    ✕ Figure legends are poor. Fig(s) _____
    ___ Numbers and reference characters not oriented in the
    same direction as the view. 37 CFR 1.84(p)(1)
    Fig(s) _____
    ___ English alphabet not used. 37 CFR 1.84(p)(2)
    Figs. _____
    ___ Numbers, letters and reference characters must be at least
    .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3)
    Fig(s) _14—6, 8, 9, 11-14_
13. LEAD LINES. 37 CFR 1.84(q)
    ___ Lead lines cross each other. Fig(s) _____
    ___ Lead lines missing. Fig(s) _____
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
    ___ Sheets not numbered consecutively, and in Arabic numerals,
    beginning with number 1. Sheet(s) _____
15. NUMBERING OF VIEWS. 37 CFR 1.84(u)
    ___ Views not numbered consecutively, and in Arabic numerals,
    beginning with number 1. Fig(s) _____
16. CORRECTIONS. 37 CFR 1.84(w)
    ___ Corrections not made from prior PTO-948
    dated _____
17. DESIGN DRAWINGS. 37 CFR 1.152
    ___ Surface shading shown not appropriate. Fig(s) _____
    ___ Solid black shading not used for color contrast.
    Fig(s) _____

COMMENTS

REVIEWER _____     DATE _8/2/01_     TELEPHONE NO. _____

ATTACHMENT TO PAPER NO. _4_

FAXED

| | Notice of References Cited | | | | | | |
|---|---|---|---|---|---|---|---|

**Notice of References Cited**

Application No. 08/997,348
Applicant(s) Peter Sung-An Huang et al
Examiner Geckil
Group Art Unit 2756
Page 1 of 1

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| | A | 5,931,917 | 8/3/99 | Nguyen et al | 709 | 250 |
| | B | 5,925,101 | 7/20/99 | Bayless et al | 709 | 214 |
| | C | 5,915,085 | 6/22/99 | Koved | 395 | 186 |
| | D | 5,884,312 | 3/16/99 | Dustan et al | 707 | 10 |
| | E | 5,870,558 | 2/9/99 | Branton, Jr. et al | 395 | 200.54 |
| | F | 5,867,495 | 2/2/99 | Elliott et al | 370 | 352 |
| | G | 5,838,682 | 11/17/98 | Dekelbaum et al | 370 | 401 |
| | H | 5,805,829 | 9/8/98 | Cohen et al | 395 | 200.32 |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

**NON-PATENT DOCUMENTS**

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| | U | | |
| | V | | |
| | W | | |
| | X | | |

* A copy of this reference is not being furnished with this Office action.
(See Manual of Patent Examining Procedure, Section 707.05(a).)

Part of Paper No. 4

# EXHIBIT 4

ATTORNEY'S DOCKET NO.
036560.5892

#5/Amdt.5/2256
INCB. #13 6000
PATENT APPLICATION
11/26/38
2757

1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:     Peter Sung-An Huang, et al.
Serial No.:               08/997,348
Filing Date:              December 23, 1997
Group Art Unit:           2756
Examiner:                 Mehmet B. Geckil
Title:                    GRAPHIC USER INTERFACE SYSTEM FOR A
                          TELECOMMUNICATIONS SWITCH MANAGEMENT
                          SYSTEM

Assistant Commissioner
    for Patents
Washington, D.C.    20231

Dear Sir:

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231, on the date shown below.

_Lori Vonin_
Name

_November 10, 1999_
Date of Signature

RESPONSE TO EXAMINER'S ACTION

In response to the Official Action mailed August 11, 1999, Applicants respectfully request the Examiner to reconsider the rejection of the claims in view of the following amendments thereto and the comments as set forth below.

IN THE ABSTRACT

Please delete the last sentence of the Abstract from page 56, line 26, to page 57, line 5.

DAL01:484197.1

ATTORNEY'S DOCKET NO.                    PATENT APPLICATION
036560.5892                                  08/997,348

2

## IN THE CLAIMS

For the convenience of the Examiner, all pending claims are shown below whether or not an amendment has been made.  Please amend the claims as follows:



1.    (Amended)    A graphic user interface system which provides displays for enabling one or more users to access a telecommunications switching system, comprising:

a remote computer having a browser for providing communications;

a server publicly accessible by said browser and having an application program which enables said remote computer to communicate with the telecommunications switching system, said server being in communication with said remote computer via a first public communications link, and being capable of providing a copy of said application program to said remote computer, said remote computer running the application program separate from the server; and

a system manager building block in communication via a second public communications link with said remote computer running said application program, said system manager building block also being in communication with a system management interface building block for communicating with the telecommunications switching system, said system manager building block containing information related to authorized users for determining whether to permit the users to access the telecommunications switching system.

2.    The graphic user interface system of claim 1, wherein said server further comprises a server page for storing said application program.

3.    The graphic user interface system of claim 1, wherein said server is a hypertext markup language (HTML) server.

DAL01:484197.1

ATTORNEY'S DOCKET NO.
036560.5892

PATENT APPLICATION
08/997,348

3

4.  The graphic user interface system of claim 1, wherein said system manager building block further comprises a runtime library for containing said information related to authorized users.

5.  The graphic user interface system of claim 1, wherein said system manager building block is configured to maintain records related to each instance a user accesses the telecommunications switching system.

6.  The graphic user interface system of claim 1, wherein said server provides said application program to said remote computer in the form of a Java Applet.

7.  The graphic user interface system of claim 1, wherein said application program is configured to run on said remote computer in a stand-alone capacity without additional communication with said server, in order to communicate with said system manager building block to access said telecommunications switching system.

8.  The graphic user interface system of claim 1, wherein said system manager building block and said system management interface building block conform to a common object request broker architecture (CORBA).

9.  The graphic user interface system of claim 1, wherein said remote computer is in communication with said server via a first communications link, and wherein said remote computer is in communication with said system manager building block via a second communications link.

10.  The graphic user interface system of claim 9, wherein said first and second communications links are internet communications links.

DAL01:484197.1

ATTORNEY'S DOCKET NO.
036560.5892

PATENT APPLICATION
08/997,348

4

11.  The graphic user interface system of claim 9, wherein said first and second communications links use an internet inter-ORB protocol (IIOP) communications protocol.

12.  The graphic user interface system of claim 9, wherein said first and second communications links use a hypertext transport protocol (HTTP) communications protocol.

13.  The graphic user interface system of claim 1, wherein said system manager building block further comprises said server, and wherein said remote computer is in communication with said server and with said system manager building block via a single communications link.

14.  The graphic user interface system of claim 13, wherein said single communications link is an internet communications link.

15.  The graphic user interface system of claim 13, wherein said single communications link uses an internet inter-ORB protocol (IIOP) communications protocol.

16.  The graphic user interface system of claim 13, wherein said single communications link uses a hypertext transport protocol (HTTP) communications protocol.

ATTORNEY'S DOCKET NO.                    PATENT APPLICATION
036560.5892                                        08/997,348

5
————————————————————————————————————————————

     17.  (Amended)  A method for accessing a telecommunications switching system, comprising the steps of:

        initializing a browser running on a remote computer;

        accessing a server with said browser, said server having an application program for communicating with said telecommunications switching system;

        providing a copy of the application program from said server to said remote computer;

        initializing said application program on said remote computer and accessing said telecommunications switching system with said application program from said remote computer;

        determining whether to permit access to said telecommunications switching system by said remote computer; and

        communicating with a system manager building block from said remote computer to provide communication with the telecommunications switching system.

     18.  The method of claim 17, wherein said step of accessing a server further comprises the step of accessing a server page in the server, wherein the server page contains said application program for communicating between said remote computer and said telecommunications switching system.

     19.  The method of claim 17, wherein the server comprises a hypertext markup language (HTML) server.

     20.   The method of .claim 17, wherein said step of determining whether to permit access to said telecommunications switching system further comprises the step of comparing information provided by a user at said remote computer with information related to authorized users contained in a runtime library in said system manager building block.

DAL01:484197.1

ATTORNEY'S DOCKET NO.                    PATENT APPLICATION
036560.5892                                    08/997,348

6

21.   The method of claim 17, wherein said step of
determining whether to permit access to said telecommunications
switching system further comprises the steps of:

comparing identification numbers provided by a user at
said remote computer with identification numbers of authorized
users; and

comparing passwords provided by said user with
passwords of authorized users.

22.   The method of claim 17, further comprising the step of
maintaining records related to each instance a user accesses the
telecommunications switching system.

23.   The method of claim 17, further comprising the step of
establishing a socket connection between said remote computer and
a system security manager client building block.

24.   The method of claim 17, wherein said application
program is provided to the remote computer in the form of a Java
Applet.

25.    The method of claim 17, wherein said step of
initializing said application program on said remote computer
comprises running said application program in a stand-alone
capacity without further communicating with the server.

26.   The method of claim 17, wherein said system manager
building block conforms to a common object request broker
architecture (CORBA).

ATTORNEY'S DOCKET NO.                    PATENT APPLICATION
036560.5892                                    08/997,348

7

27. A graphic user interface system which provides displays
for enabling one or more users to remotely access a
telecommunications switching system, comprising:

a remote computer having an internet browser for
accessing a first internet communications link;

a hypertext markup language (HTML) remote server
accessible by said internet browser and having a server page,
said server page having a Java application program which enables
said remote computer to communicate with the telecommunications
switching system, said remote server being in communication with
said remote computer via said first internet communications link,
and being capable of providing a copy of said Java application
program to said remote computer in the form of a Java Applet so
that said remote computer can run said copy of said Java
application program in a stand alone capacity without additional
communication with said remote server; and

a system manager building block having a CORBA
architecture and having a runtime library, said system manager
building block being in communication via a second internet
communications link with said remote computer running said copy
of said Java application program, said system manager building
block also being in communication with a system management
interface building block having a CORBA architecture for
communicating with the telecommunications switching system, said
runtime library containing information related to identification
numbers and passwords of authorized users for determining whether
to permit the users to access the telecommunications switching
system.

28. The graphic user interface launcher of claim 27,
wherein said system manager building block is configured to
maintain records related to each instance a user accesses the
telecommunications switching system.

29. The graphic user interface launcher of claim 27,
wherein said first and second internet communications links use
an internet inter-ORB protocol (IIOP) communications protocol.

DAL01:484197.1

ATTORNEY'S DOCKET NO.                                    PATENT APPLICATION
036560.5892                                                  08/997,348

8

30.   The graphic user interface launcher of claim 27,
wherein said first and second internet communications links use
a hypertext transport protocol (HTTP) communications protocol.

ATTORNEY'S DOCKET NO.                          PATENT APPLICATION
036560.5892                                          08/997,348

                                    9

                               <u>REMARKS</u>

    This Application has been carefully reviewed in light of the
Official Action mailed August 11, 1999.  In order to advance
prosecution of this case, Claims 1 and 17 have been amended in
order to clarify and further describe various inventive concepts.
Applicants respectfully request reconsideration and favorable
action in this case.

    The abstract of the disclosure has been objected to as not
being on a single page.  The abstract has been amended to comply
with M.P.E.P. § 608.01(b).

    Claims 1-30 stand rejected under 35 U.S.C. § 103(a) as being
unpatentable over Branton, Jr., et al. in view of Koved.
Applicants note that the Examiner only provided an examination
with respect to Independent Claim 1 and did not mention any of
the limitations found in the other claims.    Applicants
respectfully request a full and complete examination of each and
every presented claim.  With respect to Independent Claim 1,
there is recited ". . . said server being in communication with
said remote computer via a first public communication link, and
being capable of providing a copy of said application program to
said remote computer, said remote computer running said
application program separate from said server; and a system
manager building block in communication via a second public
communication link with said remote computer running said
application program . . ."  By contrast, the Branton, Jr., et al.
patent uses a private Intranet for communications between a
server and a workstation. Also, the workstations of the Branton,
Jr., et al. patent have no communication link to its switch
network other than through its server and no application program
is provided to the workstation by the server.  Thus, the Branton,
Jr., et al. patent does not provide public access to a
telecommunication switching system from a stand alone remote
computer as provided by the claimed invention.   Independent
Claims 17 and 27 include similar patentably distinct limitations.
Support for the above recitation can be found at page 12, lines
24-26, and page 13, lines 13-17, of Applicants' specification.
Therefore, Applicants respectfully submit that Claims 1-30 are

DAL01:484197.1

ATTORNEY'S DOCKET NO.
036560.5892

PATENT APPLICATION
08/997,348

10

patentably distinct from the proposed Branton, Jr., et al. - Koved combination.

Applicants have now made an earnest attempt to place this case in condition for allowance. For the foregoing reasons and for other reasons clearly apparent, Applicants respectfully request full allowance of Claims 1-30.

The Commissioner is hereby authorized to charge any fees or credit any overpayments to Deposit Account No. 02-0384 of Baker & Botts, L.L.P.

Respectfully submitted,
BAKER & BOTTS, L.L.P.
Attorneys for Applicant

Charles S. Fish
Reg. No. 35,870

2001 Ross Avenue
Dallas, Texas 75201-2980
(214) 953-6507
November 10, 1999

DAL01:484197.1

# EXHIBIT 5



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/997,348 | 12/23/97 | HUANG | P | 036569.50 |

| EXAMINER |
|---|
| GECKIL M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2756 | 6 |

LM01/0124

BAKER & BOTTS
2001 ROSS AVENUE
DALLAS TX 75201-2980

DATE MAILED:

01/24/00

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)          U.S. G.P.O. 1999 460-893          1- File Copy

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 08/997,348 | Peter Seong An Thuong et al |
| | Examiner | Group Art Unit |
| | Gechel | 2756 |

*—The MAILING DATE of this communication appears on the cover sheet beneath the correspondence address—*

**Period for Response**

A SHORTENED STATUTORY PERIOD FOR RESPONSE IS SET TO EXPIRE _3 (three)_ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a response be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for response is specified above, such period shall, by default, expire SIX (6) MONTHS from the mailing date of this communication .
- Failure to respond within the set or extended period for response will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

**Status**

☒ Responsive to communication(s) filed on _11/15/99_

☒ This action is **FINAL.**

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 1 1; 453 O.G. 213.

**Disposition of Claims**

☒ Claim(s) _1 – 70_ is/are pending in the application.

   Of the above claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _1 – 70_ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claim(s) _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119 (a)-(d)**

☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 11 9(a)-(d).

   ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

   ☐ received.

   ☐ received in Application No. (Series Code/Serial Number) _____

   ☐ received in this national stage application from the International Bureau (PCT Rule 1 7.2(a)).

   *Certified copies not received: _____

**Attachment(s)**

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____   ☐ Interview Summary, PTO-413

☒ Notice of References Cited, PTO-892   ☐ Notice of Informal Patent Application, PTO-152

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948   ☐ Other _____

**Office Action Summary**

U. S. Patent and Trademark Office
PTO-326 (Rev. 3-97)                              *U.S. GPO: 1997-417-381/82710                      Part of Paper No. _6_

Application/Control Number: 08/997,348                                    Page 2

Art Unit: 2756

1.      Claims 1-30 are presented for examination.

2.      Claims 1-16 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite

for failing to particularly point out and distinctly claim the subject matter which applicant regards

as the invention.

The claims are indefinite because the amended claim language recites first and second public

communications links but it is not clear whether the first and second public communications are

the same communications link or separate communications links. For example, it is not clear in

the claims whether these are dedicated separate communications wired links like frame relay links

connected to the web server and to the system manager separately or whether they are like

TCP/IP links for making a call to an address through a browser by writing the address like

http://www.geckil.com and http://www.geckil.com/~harvest . As it can be seen from these

examples, these are different links pointing to different addresses and for example, at

htttp://www.geckil.com first public link a public web server is running and at a second public link

at http://www.geckil.com/~harvest a harvest search engine is running. But in reality these first

and second links are the same link running from the ppp connection running between the service

provider and the server running at the geckil.com domain. Applicant's amending the claims in

such a way is generating an ambiguity to the nature of these first and second public links.

Application/Control Number: 08/997,348

Art Unit: 2756

3.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4.    Claims 1-30 are rejected under 35 U.S.C. 103(a) as being unpatentable over Branton, Jr. et al in view of Koved.

5.    Branton, Jr. et al (5,870,558) taught the invention substantially as claimed including a graphical user interface for enabling one or more users to access a sonet telecommunications switching system, comprising:

a) a remote computer having a browser (col 4-6);

b) a web server (284) accessible by the browser (col 4 line 4 et seq) and having an interface application program which enables the remote computer to communicate with the telecommunications network switching management system (col 4 line 5 et seq), and being capable of providing a copy of the application program to the remote computer, (col 13 line 1 et seq); and

c) a network management system or system manager building block (271-273) in communications with the remote computer running the browser application program, the system manager building block (271-273) also being in communication with the sonet (56,260) telecommunications

Application/Control Number: 08/997,348                                     Page 4

Art Unit: 2756

switching system (cols 4-6), the system manager building block containing information related to authorized users (col 4 line 26 et seq and col 7 lines 1-8.)

6.      Branton Jr. et al due to the scope of his teachings did not go into details of determining whether to permit the users to access the telecommunications switching system, instead they only stated that authorized users associated with the service provider organization could access to the telecommunications switching system. It would have been obvious to one of ordinary skill in the Internet art at the time of the invention that users who has an account with a service provider are authorized to access the web services after passing an authentication scheme, e.g., filling the information requested by the service provider, e.g. submitting user ID at the login prompt and also submitting the password. These are provided by the security manager software running on the service provider computer. These are all well known features of web accessing. For example, Koved (5,915,085) taught such a security manager, e.g., see figure 7. It would have been obvious to one of ordinary skill in the Internet art at the time of the invention to combine the teachings of Branton Jr. et al and Koved because Koved just provided the well known details of the security manager which is used to authorize users taught by Branton Jr. et al. Koved suggested that one skilled in the art would realize that loadable content could be adapted to other environments, such as active X, or OMG's CORBA and IIOP, where the loadable content is

Application/Control Number: 08/997,348                                    Page 5

Art Unit: 2756


executable (col 4 lines 62-66.) Other claimed features are all obvious variations of the well

known features of using graphical interfaces to access remote devices via the www features.

It would have been obvious to one of ordinary skill in the Internet art at the time of the invention

that using applets to accomplish what has been done previously using the well known html or cgi

scripts is just an obvious variations of web accessing, see also Koved teaching applets and

Branton et al also teaching applets on column 13 line 3.  Applicant's new language in claim 1,

e.g., "said remote computer running the application program separate from the server" is no more

than stating the obvious because that is the way applets works.  E.g., the applet is downloaded

from the server and then is executed in the user space or in the client's computer and therefore

runs in application program or applet separate from the server.


7.      Applicant in the response argued that the Branton did not teach providing application

program to the workstation from the server.  Examiner addressed this issue by pointing out that

Branton actually taught the applet program in column 13.  It appears that applicant missed that

portion of the patent while reading it through in order to understand how the Branton et al

teachings apply to the present claims. .Applicant further argued that Branton et al teaching were

not relevant because they taught their invention in the intranet environment.  Examiner states that

the intranet definition is such that the TCP/IP protocol is running in the networking environment.

Internet also runs with the same TCP/IP protocol.  Therefore the difference between the Intranet

and Internet is just in a degree.  One kill in the art knows how to implement a teaching based on

Application/Control Number: 08/997,348

Page 6

Art Unit: 2756

an intranet to the Internet. If one skill in the art cannot do that then it is not qualified to be defined as one skill in the art. Branton et al teachings is a major teaching and cannot be trivialized by saying that they taught it in the intranet environment. Examiner runs a web site and a search engine at the http://www.geckil.com for the past three years and is very familiar to the scope of the TCP/IP in the intranet and in the Internet. As a final comment examiner likes to point out that the present claims are very broad and reads on the cited teachings. If applicant finds a major different differentiating point other than what is in the these claims examiner would like consider them in an after final consideration. But the differentiating must be a considerable.

8.    **THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

Application/Control Number: 08/997,348                                   Page 7

Art Unit: 2756

9.    The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

Davis et al (5,870,545) taught accessing and managing a telecommunications switching system by

using middleware software like Corba and applets, e.g., see col 6 line 1 et seq and explanation of

figure 6 in column 9+.


10.    Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Mehmet Geckil whose telephone number is (703) 305-9676. The examiner

can normally be reached on Monday through Friday from 6:30 A.M. to 3:00 P.M..

       If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

Frank Asta, can be reached on (703) 305-3817. The fax phone number for the organization where

this application or proceeding is assigned is (703) 305-9564.


    Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the Group receptionist whose telephone number is (703) 305-3900.

        **Any response to this action should be mailed to:**

                Commissioner of Patents and Trademarks
                Washington, D.C. 20231

        **or faxed to:**

                (703) 308-9051, (for formal communications intended for entry)

Application/Control Number: 08/997,348                                    Page 8

Art Unit: 2756

     **Or:**

         (703) 308-5359 (for informal or draft communications, please label "PROPOSED" or "DRAFT")

     Hand-delivered responses should be brought to Crystal Park II, 2021 Crystal Drive, Arlington. VA., Sixth Floor (Receptionist).

18/20/00

MEHMET B. GECKIL
PRIMARY EXAMINER

**Notice of References Cited**

| Application No. | Applicant(s) |
|---|---|
| 08/997,348 | Peter Sung An Huang et al |
| Examiner | Group Art Unit | Page |
| Geckil | 2756 | 1 ~ 1 |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| | A | 5,907,547 | 5/25/99 | Foladare et al | 370 | 352 |
| | B | 5,870,545 | 2/9/99 | Davis et al | 709 | 201 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

**NON-PATENT DOCUMENTS**

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| | U | | |
| | V | | |
| | W | | |
| | X | | |

* A copy of this reference is not being furnished with this Office action.
(See Manual of Patent Examining Procedure, Section 707.05(a).)

Part of Paper No. _____ 6

U.S. Patent and Trademark Office
PTO-892 (Rev. 9-96)

U.S. GPO: 1997-417-216 /

West 3.2 Web Refine Search                    http://jupiter:88/bin/gate.exe?f=    1&st...rch=Refine+Search:&p_u_conepiece=p1¹⁴·¹·



**WEST**

Help     Logout

Main Menu   Search Form   Posting Counts   Show S Numbers   Edit S Numbers

### Search Results -

| Terms | Documents |
|---|---|
| l23 and applet | 9 |

Database: US Patents Full-Text Database

l23 and applet

Refine Search:

### Search History

| DB Name | Query | Hit Count | Set Name |
|---|---|---|---|
| USPT | l23 and applet | 9 | L30 |
| USPT | l24 and applet | 1 | L29 |
| USPT | l25 and applet | 1 | L28 |
| USPT | l26 and applet | 0 | L27 |
| USPT | l25 and l15 | 7 | L26 |
| USPT | l24 same (browser or interface or display) | 45 | L25 |
| USPT | l23 same (authenticat$ or password or secret or user or id or identification) | 158 | L24 |
| USPT | l22 same (java or applet or code or application or program) | 530 | L23 |
| USPT | l21 same (access$ or manag$) | 1643 | L22 |
| USPT | (telecommunication$1 adj3 (network$1 or switch$)) | 5715 | L21 |
| USPT | (telecommunication or network or switch$) same manag$ | 18269 | L20 |
| USPT | l17 and l18 | 3 | L19 |
| USPT | l7 and applet | 29 | L18 |
| USPT | l15 and applet | 8 | L17 |
| USPT | l15 and l8 | 10 | L16 |
| USPT | l13 same (authoriz$ or authenticat$ or password or user$1 or login or permit$ or access$ or service$ or allow$) | 1091 | L15 |
| USPT | l13 same (authoriz$ or authenticat$ or password or user$1 or login) | 492 | L14 |
| USPT | l12 same (manag$ or application or server or code or block or interface) | 1671 | L13 |
| USPT | ((telephon$ or phone) adj call) same (telecommunication or switch$) | 4006 | L12 |
| USPT | l8 same (telecommunication) | 3 | L11 |
| USPT | l9 same (allow$ or permit$ or letting or authorizing) | 4 | L10 |
| USPT | l8 same (check$ or authenticat$ or password or log$ or secret or authoriz$) | 28 | L9 |
| USPT | l6 same l7 | 90 | L8 |
| USPT | l5 same (making or calling or telephone or call or switch$ or telecommunication or phone) | 208 | L7 |

West 1.2 Web Refine Search                    http://jupiter:88/bin/gate.exe?f=    1&st...rch=Refine+Search:&p_u_concpiece  p1·

| | | | |
|---|---|---|---|
| USPT | l5 same (making or calling or telephone or call or switch$ or telecommunication or phone) | 208 | L7 |
| USPT | l5 same (run$ or execut$) | 292 | L6 |
| USPT | l4 same (access$ or enabl$ or making or connect$ or communicat$ or link$) | 678 | L5 |
| USPT | l3 same (user or interface or graphical or display$3) | 916 | L4 |
| USPT | l2 same (client or computer or remote or browser) | 1462 | L3 |
| USPT | l1 same server | 2208 | L2 |
| USPT | (applet or code or application) same (download$ or transmit$ or copy$) | 120450 | L1 |

Record Display Form                    http://jupiter:88/bin' 'te.exe7f=doc&state=qh724m.29.1&ESNAME. I.'



Help    Logout

Main Menu | Search Form | Report Set | Show S Numbers | Edit S Numbers | Referring Patents
First Hit                        Previous Document                Next Document
Full | Title | Citation | Front | Reverse | Classification | Date | Reference | Claims | KWIC

Document Number 1

Entry 1 of 1              File: USPT              Feb 9, 1999

DOCUMENT-IDENTIFIER: US 5870558 A
TITLE: Intranet graphical user interface for SONET network management

BSPR:
Two of the above mentioned needs are satisfied by above referenced
U.S. patent applications and the third above referenced need is
satisfied by the present invention. Specifically, the patent
application entitled "System and Method for Tracking and Monitoring
Network Elements" satisfies the above mentioned monitoring needs by
providing a network management system that is controlled by the
service provider. The Patent Application entitled "System And Method
For The Automated Configuration Of Network Elements In A
Telecommunications Network", satisfies the above mentioned
configuration needs by providing a network management system that
automatically configures the network elements. The present invention
satisfies the above mentioned shared access needs by providing a
graphical user interface that provides shared access to a network
management system for a wide variety of diverse computer systems
distributed over a large geographical area.

DEPR:
In a preferred embodiment, the user is notified and presented with
the results in a user request browser window. For example, web
browser programming tools such as Java.RTM. by Sun Microsystems, or
ActiveX.RTM., by Microsoft Corporation, can be used to launch a new
thread or applet when the user submits a request. The applet is used
to display a new and separate browser window which maintains
communication links with a web page used to display results of the
user request. In this fashion, the results page is updated with the
results of the user request as soon as the results are available. If
the user logs off the web browser before the results are available,
the user may be presented with an option to re-launch the applet at a
subsequent time to view the results of the user query. In addition to
the examples presented, other methods may be used to report the
results of a user request without departing from the principles
disclosed herein. Such methods will be apparent to those skilled in
the relevant arts. As such, the example used herein should not be
construed to limit the scope and breadth of the present invention.

DEPR:
Next, in steps 1206 and 1208, the user request is scheduled. This
involves assigning a time/date window, comprising a beginning time
and date and an ending time and date for the request. As indicated in
step 1206, for off-line requests, the determination of the time
window depends on the current work that is scheduled for the
controllers 271-273 and the requested time specified in the user
request (if any). As indicated in step 1208, online requests are
typically scheduled immediately if possible. In step 1210, the
completed work request(s) is (are) stored in the dispatch table and
control passes to step 1212. In step 1212, the scheduler sends status
information to the user. As previously described, the status can be
reported in an E-mail message, on the user request web page, or on a
separate applet-launched user result web page.

Record Display Form

http://jupiter:88/bir· 'e.exe?f=doc&state=qh724m.29.1&ESNAME· l

| Main Menu | Search Form | Result Set | Show S Numbers | Edit S Numbers | Referring Patents |

| First Hit | Previous Document | Next Document |

| Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | KWIC |

Help    Logout

Record Display Form                         http://jupiter:88/bin/  .exe?f=doc&state=qh724m.20.2&ESNAME=k''



Document Number 2

   Entry 2 of 3                    File: USPT                May 25, 1999

     DOCUMENT-IDENTIFIER: US 5907598 A
     TITLE: Multimedia web page applications for AIN telephony

     ABPL:
     The disclosure allows for creation of special web-page repositories
     within subsystems of the present PSTN (public switched telephone
     network) that conform to present architectures for advanced
     intelligent network (AIN) constructs in telephony. Such repositories
     would be formed to receive facsimile (fax) telephone transmissions,
     convert them to HTML (Hypertext Markup Language) web page format,
     store the converted results and render the latter available for
     viewing simultaneously--under control of PSTN call management
     intelligence--to multiple users of the Internet and World Wide Web
     subject to authorization of would be viewers by the sending party. A
     typical application of this capability allows for a PSTN user setting
     up a voice conference to controllably distribute expository charts to
     other conference participants, via the Internet, thereby adding a
     video dimension to the voice conference without imposing a bandwidth
     strain on the PSTN voice networks currently handling the conference,
     and also allowing for the transmissions to be sent in an orderly
     manner coordinated with a given participant's voice presentation so
     that the conference participants can not merely compete in a random
     and potentially chaotic manner for making such graphic presentations
     to each other. Such repositories also would be useful to receive
     graphic information in forms other than that associated with
     present-day facsimile transmission; e.g. text generated by word
     processor and/or e-mail applications, or images generated by ordinary
     computer-graphic applications, all of which could be sent from
     computers to respective repositories/servers within the PSTN, via the
     Internet, after conversion by appropriately configured applets (e.g.
     mini-applications written in a language consistent with web browsers
     presently used on computers).

     BSPR:
     The related architecture pertains to advanced intelligent network
     (AIN) concepts, in which telephone call processing and customer/user
     services related thereto, are handled by intelligent peripheral
     entities, each containing a network of computer systems and switching
     apparatus linked by data communication media. The referenced
     application concerns an intelligent peripheral system of that
     character which is organized as a multiprocessor wherein
     applicational responsibilities for implementation of customer/user
     service functions (call waiting, call forwarding, speech recognition,
     etc.) are distributed among plural processors, and which is
     structured to allow for communication with networks external to the
     PSTN, the latter including the Internet.

     BSPR:
     Such transmissions are intercepted by the respective AIN
     intelligence, converted to a format suited for reproducible
     construction of an image page on the Internet or Web (e.g. a format
     such as HTML or Hypertext Markup Language), and stored by the
     interfacing server at a URL (Uniform Resource Location) or net
     "address" assigned to the respective user. Thereafter, individuals

authorized by the user who sent the original fax image can access the
external data network (e.g. the Internet) via execution of standard
"browser" software applications on their computers (e.g. browser
applications such as Netscape's Navigator which are now ubiquitously
available on millions of computers), request access to certain data
resulting in a prompt from the browser to enter a PIN (personal
identification number) uniquely associated with the URL and a
pre-arranged password, and receive a downloaded copy of the stored
image(s) associated with the original transmission in a form
displayable on the requester's computer monitor. The PIN and password
can be given to these individuals by the original transmitting user;
e.g. in a voice telephone conversation or conference.

CLPR:
8. In a telephone call management system for the PSTN (public
switched telephone network), a facility for adapting said call
management system to provide users of said PSTN with an electronic
document distribution service enabling a user subscribing to said
service to have information representing a viewable document
transmitted from that subscribing user to multiple parties
pre-authorized by the subscribing user to view said viewable
document; said adapting facility comprising:

| Main Menu | Search Form | Result Set | Show's Number: | Edit G Numbers | Retaining Patent: |
|---|---|---|---|---|---|
| | Patent | | | | Next Document |
| Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | Refs |

```
[ Help ]   [ Logout ]
```

Record Display Form                              http://jupiter:88/bin/⌐   ⌐xe?f=doc&state=qh724m.17.2&ESNAME KV

## WEST

Help    Logout

Main Menu | Search Form | Result Set | Show S Numbers | Exit S Numbers | Retaining Patent
Full List                     Previous Document              Next Document
Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | FMC

Document Number 2

Entry 2 of 10                        File: USPT                        May 25, 1999

DOCUMENT-IDENTIFIER: US 5907598 A
TITLE: Multimedia web page applications for AIN telephony

BSPR:
The related architecture pertains to advanced intelligent network
(AIN) concepts, in which telephone call processing and customer/user
services related thereto, are handled by intelligent peripheral
entities, each containing a network of computer systems and switching
apparatus linked by data communication media. The referenced
application concerns an intelligent peripheral system of that
character which is organized as a multiprocessor wherein
applicational responsibilities for implementation of customer/user
service functions (call waiting, call forwarding, speech recognition,
etc.) are distributed among plural processors, and which is
structured to allow for communication with networks external to the
PSTN, the latter including the Internet.

BSPR:
Such transmissions are intercepted by the respective AIN
intelligence, converted to a format suited for reproducible
construction of an image page on the Internet or Web (e.g. a format
such as HTML or Hypertext Markup Language), and stored by the
interfacing server at a URL (Uniform Resource Location) or net
"address" assigned to the respective user. Thereafter, individuals
authorized by the user who sent the original fax image can access the
external data network (e.g. the Internet) via execution of standard
"browser" software applications on their computers (e.g. browser
applications such as Netscape's Navigator which are now ubiquitously
available on millions of computers), request access to certain data
resulting in a prompt from the browser to enter a PIN (personal
identification number) uniquely associated with the URL and a
pre-arranged password, and receive a downloaded copy of the stored
image(s) associated with the original transmission in a form
displayable on the requester's computer monitor. The PIN and password
can be given to these individuals by the original transmitting user;
e.g. in a voice telephone conversation or conference.

CLPR:
8. In a telephone call management system for the PSTN (public
switched telephone network), a facility for adapting said call
management system to provide users of said PSTN with an electronic
document distribution service enabling a user subscribing to said
service to have information representing a viewable document
transmitted from that subscribing user to multiple parties
pre-authorized by the subscribing user to view said viewable
document; said adapting facility comprising:

Main Menu | Search Form | Result Set | Show S Numbers | Exit S Numbers | Retaining Patent
Full List                     Previous Document              Next Document
Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | FMC

Record Display Form

http://jupiter:88/bin/        .exe?f=doc&state=qh724m.17.2&ESNAME  ¦

Help      Logout



Document Number 4

Entry 4 of 9                    File: USPT                    Feb 9, 1999

```
DOCUMENT-IDENTIFIER: US 5870545 A
TITLE: System and method for performing flexible workflow process
compensation in a distributed workflow management system


DEPR:
The overall architecture of the HP OpenPM system is depicted in FIG.
2. The core is the HP OpenPM engine 20, which supports five
interfaces. The interfaces enable the HP OpenPM engine 20 to interact
with workflow process designer 22a-c, workflow process instance
execution 23a-b, workflow process monitor 24a-c, workflow management
28a-c and business object management modules 30, 31, 32, 33. In
addition, worldwide web client support is provided by each individual
network node 12a which can execute middleware modules expressed in
platform-independent languages, such as Java Applets and HTML code.
An HP OpenPM database 21 is maintained on the centralized WFPM server
17 (shown in FIG. 1) for use by the HP OpenPM engine 20.

DEPR:
FIG. 7 is a process definition diagram for configuration management
of the telecommunications network in the example of FIG. 6 based on
the HP OpenPM system. It depicts a prototype to demonstrate the
application of WFPM technology in the specific domain of SONET
(Synchronous Optical Network) configuration management. The prototype
was a joint project between HP Laboratories in Bristol, England and
Palo Alto, Calif. to demonstrate the middleware technologies required
to automate the processes supporting the configuration management of
a SONET telecommunications network.
```

Record Display Form                              http://jupiter:88/b    ate.exe?f=doc&state=qh724m.31.8&ESNAME KV



Document Number 8

Entry 8 of 9                    File: USPT                    Oct 20, 1998

DOCUMENT-IDENTIFIER: US 5826239 A
TITLE: Distributed workflow resource management system and method

DEPR:
The overall architecture of the HP OpenPM system is depicted in FIG.
2. The core is the HP OpenPM engine 20, which supports five
interfaces. The interfaces enable the HP OpenPM engine 20 to interact
with workflow process designer 22a-c, workflow process instance
execution 23a-b, workflow process monitor 24a-c, resource management
28a-c and business object management modules 30, 31, 32, 33. In
addition, worldwide web client support is provided by each individual
network node 12a which can execute middleware modules expressed in
platform-independent languages, such as Java Applets and HTML code.
An HP OpenPM database 21 is maintained on the centralized WFPM server
17 (shown in FIG. 1) for use by the HP OpenPM engine 20.

DEPR:
FIG. 7 is a process definition diagram for configuration management
of the telecommunications network in the example of FIG. 6 based on
the HP OpenPM system. It depicts a prototype to demonstrate the
application of WFPM technology in the specific domain of SONET
(Synchronous Optical Network) configuration management. The prototype
was a joint project between HP Laboratories in Bristol, England and
Palo Alto, Calif. to demonstrate the middleware technologies required
to automate the processes supporting the configuration management of
a SONET telecommunications network.

Record Display Form                                    http://jupiter:88/~ ~nte.exe?f=doc&state=qh724m.31.9&ESNAME: 1~



Document Number 9

Entry 9 of 9                        File: USPT                    Aug 25, 1998

DOCUMENT-IDENTIFIER: US 5799285 A
TITLE: Secure system for electronic selling

DEPR:
In fact, the Open Systems Interconnection (OSI) seller interface
layers 29 shown on the left side of FIG. 1 which are the same as the
OSI layers 27 on the right side of FIG. 1 are the same as those
discussed in the TRY-BUY application. In prior art schemes, the
financial systems are based on interfacing to the Transport layer of
the OSI seven-layer architecture whereas the financial system taught
in the TRY-BUY application is coupled to the Physical layer of the
OSI scheme. The latter approach is similarly employed in the present
invention wherein the resulting system makes optimal use of two
networks, the switched public services telecommunication network
(PSTN) network, and the packet (Internet) network to achieve low cost
product presentation and secure product transaction and evaluation
thereby addressing the problem of security of information by using
direct connection over the PSTN in place of packet ("Postcard")
transmission over the (Internet). The present invention utilizes the
physical layer coupling to the financial system to minimize the cost
and to ease the access to the distribution systems.

DEPR:
The way in which the distributor system 20 automatically generates
product information in the form of HTML web pages by extracting the
product information included in the EKOM registration system 34, and
adding the HTML "tags" as appropriate to format the web page.
Accordingly, it is important for the seller to provide an accurate
product description (preferably covered in the legal agreement
between the seller and the distributor) and that the description of
the product to be in a pre-defined format in accordance with the
registration form's format. This will allow the distributor's
software to extract the seller's information and, using HTML tags, to
package it effectively for product advertising such as during the TRY
connection disclosed in the TRY-BUY application. The uploaded
registration form information provided by the seller to the
distributor's subsystem 20 may include graphics to allow advertising
of the seller's product through the use of graphics and potentially
JAVA applets. The present invention allows for complete automation of
the selling process with little or no human intervention.

DEPV:
Seller's "Demo" Applets or equivalent

DEPV:
a. create a JAVA class or applet (or story, etc.)



1 of 2                                                             1/19/00 10:5~

Record Display Form

http://jupiter:88/t`    ate.exe?f=doc&state=qh724m.31.9&ESNAME  h.`

Help    Logout

1/19/00 10:51

Record Display Form                              http://jupiter:88/f    te.exe?f=doc&state=qh724m.17.3&ESNAMF '



Document Number 3

Entry 3 of 10                    File: USPT                May 25, 1999

DOCUMENT-IDENTIFIER: US 5907547 A
TITLE: System and method for establishing internet communications
links

DEPR:
When client 12 receives the notification packet, a notification
message is displayed for the customer at client 12. For example, the
message "customer service representative is now available--would you
like to continue?" could be displayed. If the customer answers
affirmatively (e.g., by clicking on a "yes" button), a data
communications link is established between client 12 and server 14.
The data communications link is established based on linking
information provided to client 12. If desired, the linking
information can be provided in advance, when the notification applet
is downloaded. Alternatively, the linking information can be provided
dynamically, as part of the notification packet. Preferably, the
customer service representative and the customer both run standard
Web browsers, which server 14 bridges together to form the data
communications link. A telephone call between the customer and the
customer service representative is also set up, in addition to the
data communications link. For example, server 14 can direct private
branch exchange 34 to set up a telephone call between the customer
service representative and the customer via public switched telephone
network 36 and local exchange carrier 18. The telephone call is
established over lines 37.

Record Display Form                    http://jupiter:88/4-    te.exe?f=doc&state=qh724m.20.3&ESNAME· k·



Main Menu | Search Form | Result Set | Short S Numbers | Edit S Numbers | Referring Patents |
Hit List | Previous Document | Next Document |
Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | KWIC |

Document Number 3

Entry 3 of 3                    File: USPT                    May 25, 1999

DOCUMENT-IDENTIFIER: US 5907547 A
TITLE: System and method for establishing internet communications
links

BSPR:
While the customer is accessing information in the merchant's on-line
catalog, the customer may click on a button to request that one of
the merchant's customer service representatives contact the customer.
When the button is selected, the server downloads a notification
applet containing a notification source identifier that identifies
the server. The notification applet monitors incoming Internet
traffic using the notification source identifier.

BSPR:
When a customer service representative is available the server sends
a notification packet to the client, which is recognized by the
notification applet. A notification message is then displayed for the
customer that provides the customer with an opportunity to decide
whether or not to continue with the process of establishing contact
with the customer service representative. If the customer answers
affirmatively (e.g., by clicking on a "yes" button), a data
communications link is established between the client and the
terminal of the customer service representative.

BSPR:
The data communications link is established based on linking
information provided to the client. If desired, the linking
information can be provided in advance, when the notification applet
is downloaded. Alternatively, the linking information can be provided
dynamically, as part of the notification packet. Preferably, the
customer service representative and the customer both run standard
Web browsers, which the server bridges together to form the data
communications link. A telephone call between the customer and the
customer service representative is also set up, in addition to the
Internet data communications link.

DEPR:
In accordance with the present invention, the customer may click on a
button on a Web page to request that one of the merchant's customer
service representatives contact the customer. When the button is
selected, server 14 downloads a notification applet containing a
notification source identifier that identifies the source (i.e.,
server 14) from which a notification packet is to be sent when the
customer service representative is available. The notification applet
runs in the background on client 12 and continually monitors incoming
communications traffic from Internet 20 for notification packets
containing the notification source identifier.

DEPR:
When client 12 receives the notification packet, a notification
message is displayed for the customer at client 12. For example, the
message "customer service representative is now available--would you
like to continue?" could be displayed. If the customer answers
affirmatively (e.g., by clicking on a "yes" button), a data

communications link is established between client 12 and server 14.
The data communications link is established based on linking
information provided to client 12. If desired, the linking
information can be provided in advance, when the notification applet
is downloaded. Alternatively, the linking information can be provided
dynamically, as part of the notification packet. Preferably, the
customer service representative and the customer both run standard
Web browsers, which server 14 bridges together to form the data
communications link. A telephone call between the customer and the
customer service representative is also set up, in addition to the
data communications link. For example, server 14 can direct private
branch exchange 34 to set up a telephone call between the customer
service representative and the customer via public switched telephone
network 36 and local exchange carrier 18. The telephone call is
established over lines 37.

DEPR:
Various implementations of system 10 are possible. FIGS. 2 and 3 show
steps involved in notifying a customer that a customer service
representative is available to handle the customer's transaction. In
the process of FIG. 2, the linking information used to establish the
data communications link between the customer and the customer
service representative is provided dynamically, as part of the
notification packet. In the process of FIG. 3, the linking
information is provided ahead of time, when downloading the
notification applet.

DEPR:
In response to the request submitted at step 44, server 14 downloads
a notification applet (e.g., a Java applet) to client 12 over the
data communications link between client 12 and server 14 at step 46.
The data communications link over which the notification applet is
downloaded is preferably the same link used by the customer when
accessing the merchant's Web site on server 14. The notification
applet contains a notification source identifier that specifies how
the notification applet should monitor incoming Internet traffic to
determine when server 14 is trying to contact client 12. For example,
the notification source identifier may contain one or more ports or
Internet Protocol (IP) addresses to monitor. Preferably, the
notification source identifier specifies a particular port (e.g.,
port 80) and a unique IP address associated with server 14.

DEPR:
After the notification applet is downloaded from server 14, it runs
continuously in the background on client 12. While the notification
applet is running on client 12, the customer is free to break the
data communications link between client 12 and server 14 and to
browse elsewhere on the Internet. The customer does not need to
maintain a continuous data communications link between client 12 and
server 14, because a suitable data communications link can be readily
established once the customer service representative is available.

DEPR:
The notification applet can identify the notification packet by
comparing incoming packets of Internet traffic to the notification
source identifier and by confirming that the content of the data
field of a given packet indicates the packet is a notification
packet. The notification applet recognizes the notification packet
from server 14 at step 50.

DEPR:
FIG. 3 shows steps involved in notifying a customer that a customer
service representative is available to handle the customer's
transaction, where the linking information used to establish the data
communications link is provided ahead of time, when downloading the
notification applet. At step 62, after a customer views information
in an on-line catalog on the merchant's Web site, the customer can
submit a request that a telephone call be set up between the customer
and a customer service representative and that an associated data

communications link be established. The request can be made by
clicking on a button provided as part of the Web pages that make up
the online catalog. The customer typically provides the telephone
number for telephone 42 during or prior to step 62.

DEPR:
In response to the request submitted at step 62, server 14 downloads
linking information identifying the customer and a notification
applet (e.g., a Java applet) to client 12 over the data
communications link between client 12 and server 14 at step 64. The
data communications link used for downloading is preferably the same
link used by the customer when accessing the merchant's Web site on
server 14. The notification applet contains a notification source
identifier that specifies how the notification applet should monitor
incoming Internet traffic to determine when server 14 is trying to
contact client 12. For example, the notification source identifier
may contain one or more ports or Internet Protocol (IP) addresses to
monitor. Preferably, the notification source identifier specifies a
particular port and a unique IP address associated with server 14.

DEPR:
After the notification applet is downloaded from server 14, it runs
continuously in the background on client 12. While the notification
applet is running on client 12, the customer is free to break the
data communications link between client 12 and server 14 and to
browse elsewhere on the Internet. The customer does not need to
maintain a continuous data communications link between client 12 and
server 14, because a suitable data communications link can be readily
established once the customer service representative is available.

DEPR:
The notification applet can identify the notification packet by
comparing incoming packets of Internet traffic to the notification
source identifier and by confirming that the content of the data
field of a given packet indicates the packet is a notification
packet. The notification applet recognizes the notification packet
from server 14 at step 70.

DEPR:
Merchant facility 21 uses server 14 for supporting the on-line
catalog, the transmission of the notification applet and notification
packet, and the sales presentation function. Server 14 is preferably
a single computer or a cluster of interconnected computers. If
desired, however, server 14 could be provided by multiple
geographically remote computers. For example, two computers could be
used, a first to support the on-line catalog, and a second to handle
all other aspects of the transaction. If desired, three computers
could be used, a first to handle the on-line catalog, a second to
handle transmission of the notification applet and packet, and a
third to handle sales presentations.

Record Display Form                              http://jupiter.88/bin/⁓ .exe?f=doc&state=qh724m.20.1&ESNAME⁚ k.\

# WEST

| Help | Logout |

| Main Menu | Search Form | Result Set | Show S Number | Exit S Number | Referring Patents |
| Text S# | Previous Document | Next Document |
| Full | Hits | Citation | Front | Review | Classification | Date | Reference | Claims | Desc |

Document Number 1

Entry 1 of 3                    File: USPT                    Jun 29, 1999

DOCUMENT-IDENTIFIER: US 5916302 A
TITLE: Multimedia conferencing using parallel networks

*5785931*

PCPR:
Patent application Ser. No. 08/761,527 by J. M. Dunn et al, entitled
USER INVOCATION OF SERVICES IN PUBLIC SWITCHED TELEPHONE NETWORK VIA
PARALLEL DATA NETWORKS and filed on the same date as the present
application, discloses a telephone call management system for a PSTN
(public switched telephone network) enabling users of that network to
invoke or disable services (e.g. call waiting, call blocking, call
forwarding, etc.) via public data networks like the Internet, and via
user actions independent of telephone call activity; e.g. while a
telephone connection is active or while the user's telephone is idle
(on-hook). The present invention concerns extension of certain
teachings of the referenced application to telephone conferences.

DEPR:
These conference servers are communication-oriented digital computer
systems having communication links to both the PSTN and public data
communication networks like the Internet, Web, etc., and their
functions and sites of location are administered by the PSTN. The
conference servers in general will be able to communicate with
conference management resources of the PSTN. They also may be able to
communicate with speech recognition apparatus and associated
applications within a conference switching center of the PSTN so as
to be able to react to voice commands issued by conferees; for
example, commands to distribute data representing specific display
images provided by the conferee issuing the command. These servers
and their integration into the PSTN would enable the PSTN to offer
cost-effective conference management services to its end users that
are either completely new or presently considered impractical for
existing PSTN facilities. Such services would include cost effective
handling of voice conferences over conventional (unleased) lines in
the "plain old telephone system" (POTS), concurrent with distribution
of data over public data networks parallel to the PSTN (e.g. the
Web), wherein conferees would be able to use their data network
connections to control conditions of operation in the voice
connection path, and conversely able to use voice commands to control
functions performed in the data network, for example, to control
distribution of image data in coordination with voice presentations
Thus, a conferee would be able to administer and/or invoke specific
services in either the PSTN or the parallel data network via signals
sent on the other network. An example would be that a conferee could
issue a "follow me" data request to switch their current voice
connection (e.g. from a stationary phone to a mobile radio one), or
another data request to have the amplitude or other parameters of
voice transmitted to them changed (e.g. to adjust the sound delivered
to a hearing impaired conferee).

DEPR:
Collaborative editing may be achieved in several ways. The method
preferred presently would involve use at participating stations of
browser software capable of receiving and executing mini-programs or
"applets" suited to tasks required for performing collaborative

modifications. Such applets may for instance be written in a commonly
used language such as the Java.TM. language (Java is a Trademark of
Sun Microsystems company), which is interpretable by a number of
existing browsers constructed to interpret Java scripts (e.g.
Netscape Navigator, Microsoft Explorer, etc), stored in the
conference server, and transferred from the conference server to
conference participants as the latter sign onto the data network for
a conference session. These applets could be constructed to either
self-destruct/erase at participant stations when a conference ends,
or to remain stored at participant stations after a conference for
use in future conferences (since the server would not easily
distinguish which stations have previously transferred applets, the
preferred method would be to distribute them as a conference begins
and have them self-destruct at participant stations when the
conference ends. Such applets could enable conferees to modify
graphic and/or text elements of a currently displayed page image, and
communicate modifications to the conference server for distribution
to stations of other conferees).

DEPR:
Computers at these stations (those other than station A) are shown as
laptop style personal computers, but it is understood that they may
be computers of any physical form (e.g. laptop, desktop, floor
console, or even computers integral to an appliance such as a TV
monitor), and need not even be personal type computers (i.e. they
could even be computers like mainframes or such that are larger in
size and operating capabilities than personal computers). The only
requirement is that they contain browser software that is compatible
with applets or scripts written in a common language such as Java,
and that communicate with protocols that are compatible with those
employed at the conference server to be described below.

| Main Menu | Search Form | Result Set | Show'S Number | Edit S Number | Retaining Patent |
| First Hit | | Previous Document | | Next Document | |
| Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | 1980 |

| Help | Logout |

Record Display Form                    http://jupiter:88/bin/    exe?f=doc&state=qh724m.17.4&ESNAME...



DOCUMENT-IDENTIFIER: US 5889845 A
TITLE: System and method for providing a remote user with a virtual presence to an office

DEPR:
It is noted that a road warrior preferably has virtual phone and virtual fax software applications executing on his computer system. The telecommuter operating from his home may include a "real" fax machine as well as a "real" phone. Where a telecommuter's system includes a physical fax machine, and an ISDN connection is used, the analog facsimile data generated by the fax machine is preferably re-digitized in the remote computer system 102 and communicated over the PSTN to the virtual presence server 106. In this embodiment, each of the remote computer system 102 and the virtual presence server 106 include a fax/modem chip. When the remote user sends a fax using the "real" fax machine, the remote computer 102 receives the fax, converts the analog data to digital data, and transmits the digital data to the virtual presence server 106. The virtual presence server 106 uses its fax modem to perform digital to analog conversion and provides the analog fax data to a "real" or virtual fax machine at any location, such as the corporate office. Alternatively, the virtual presence server may forward the fax data to a fax server for transmission.

DEPR:
As shown in FIG. 15, first in step 562 the remote user initiates a communication, i.e., picks up the telephone, or in some manner enables the telephone or modem to become "off-hook". For example, if the user is using a virtual telephone executing on the remote computer system, the user clicks a telephone call icon on the virtual telephone. If the remote user is connected to the virtual presence server 106 in step 564, or after a connection is established in step 568, then the following steps occur. In step 570 the corporate PBX 112 provides a dial tone to the remote user. The corporate PBX 112 provides the dial tone through the virtual presence server 106, through the public switched telephone network (PSTN) and through the open connection to the user's telephone instrument, or to the user's virtual telephone executing on the computer system 102. Thus the corporate PBX 112 provides the dial tone to the remote user's telephone, and the remote user acts as an extension to the corporate PBX 112.

Record Display Form                                http://jupiter:88/b`    tc.exe?f=doc&state=qh724m.17.5&ESNAME: k.`

| WEST |
|---|

Help    Logout

Main Menu | Search Form | Result Set | Show S Numbers | Edit S Numbers | Retaining P-Kent:
Full 184 | Previous Document | No L Document
Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | Draw

Document Number 5

Entry 5 of 10                          File: USPT                    Feb 23, 1999

DOCUMENT-IDENTIFIER: US 5875234 A
TITLE: Computer integrated PBX system

BSPR:
The integration of telecommunication equipment with data processing
equipment provides for powerful tools that coordinate the advanced
features of digital telephony with the computer processing power of
digital computer networks. For example, computer integrated telephony
(CIT) systems exist that integrate PBX systems with LAN systems. These
PBX CIT systems provide advanced call control and processing. For
example, these CIT systems can run applications that detect incoming
telephone calls. employ a caller ID function to determine the
identified source of the incoming call, pass the source identification
information to a computer database application program that employs
the source identification as an entry point to the database. From the
database, the CIT system can collect relevant customer records such as
the invoice statements. The CIT system at that time can transfer both
the incoming call and the associated data records to a customer
service agent that is most suited for handling this incoming call. For
example, if the invoice records show that the account associated with
the call is overdue, the CIT system transfers both the incoming·call
and the relevant invoice data record to an available customer service
agent in the billing department of the company.

BSPR:
The logical connection between the PBX and the server determines how
messages are exchanged across the physical interface. Typically, a
client/server application running on the computer network generates
either requests for actions or requests for instructions for the PBX
system. The client passes these requests on to the server. The server
has a translator program that translates the message requests from the
application program into commands that can be used to operate the PBX.
These commands are sent to a software driver that puts the commands
into a format suitable for transmission over the data channel, such as
the ISDN line or X.25 line. The PBX system receives through its
interface card the commands and performs the functions as dictated.
The PBX then transmits status messages back to the server system which
translates the PBX messages into a format that the application program
can understand and the server sends the translated messages to the
application program. The application program determines from the
translated messages what data records the application program needs to
access and proceeds to route the data records to the appropriate
client computer and to send further instructions to the PBX system to
route any associated incoming calls to the telephone associated with
that client's computer.

DEPR:
The depicted telecom unit 14 is a PBX system according to the
invention that includes a host interface 44 with an onboard controller
for exchanging data and commands directly with server 12 and for
operating the switching functions to establish and maintain telephone
calls. Such a PBX system according to the invention can be physically
and logically integrated into a LAN server element, or stand alone
computer, running telephony enabled applications to thereby allow the

1 of 3                                                              1/19/00 10:1?

telephony enabled applications to directly communicate with the
onboard controller to direct the operation of the PBX system. The
depicted PBX telecom unit 14 creates circuit connections between the
trunk lines 20 and the subscriber telephone units 16. In a preferred
embodiment of the invention, the telecom unit 14 is an electrical
circuit card assembly dimensionally adapted for fitting within a PC
compatible file server and having an ISA PC bus interface for
connecting into an ISA bus slot and for exchanging data between the
telecom unit 14 and the server 12.

DETL:

_____ /* The following is an example of a platform neutral
telephony service application **program public interface message
service that operates on a message unit **in an input buffer and
produces a reply message unit in a result buffer. ** **Inputs: **
inBuffer pointer to incoming message unit ** outBuffer pointer to
space for reply message unit (big enough for max) **Returns: ** -1
error or failure, failure message unit in outBuffer to be sent ** 0
error, could not build reply message unit ** 1 success, reply message
unit in outBuffer No be sent LOCALDEF int NBmessageHandler(void far
*inBuffer,void far *outBuffer) /* declare pointers to the input and
output buffers */ TDIDriverControlBlock.sub.-- t far *inDCB =
(TDIDriverControlBlockt.sub.-- far *)inBuffer;
TDIDriverControlBlock.sub.-- t far *outDCB =
(TDIDriverControlBulock.sub.-- t far *)outBuffer; /* declare pointers
for the message unit and the reply message unit */ void far *pMsg;
void far *pReply; /* check in the input and output buffer pointers are
set */ if (outDCB == NULL) return 0; if (inDCB == NULL) return 0; /*
assign the pointers for the message unit and the reply message unit */
pMsg = &((char far *)inDCB)[inDCB.message Offset];/* the message
unit pointer is directed to the request block 124*/ pReply = &((char
far *)outBuffer) [sizeof(TDIDriverControlBlock.sub.-- t)]; /* copy and
initialize header information for the reply message unit */ .sub.--
fmemcpy(outDCB,inDCB,sizeof(TDIDriverControlBlock.sub.-- t));
outDCB.fwdarw.privateOffset = 0; outDCB.fwdarw.privateLength = 0;
outDCB.fwdarw.messageOffset = sizeof(TDIDriverControlBlock.sub.-- t);
outDCB.fwdarw.messageLength = 0; outDCB.fwdarw.monitorCrossRefID =
0;/* will be set as the message is shipped */ /*Begin the dispatch and
switch operation*/ switch (inDCB.fwdarw.messageClass) /* switch on the
type of message */{ case ACSREQUEST: outDCB.fwdarw.messageClass =
ACSCONFIRMATION;/* establish and intialize class of reply message unit
*/ switch (inDCB.fwdarw.messageType)/* switch on message type */{ * *
* case CSTA.sub.-- MAKE.sub.-- CALL: /* the CSTA.sub.-- MAKE.sub.--
CALL code is activated */ { LINE.sub.-- ID callerID; CALL.sub.-- ID
callID; CSTAMakeCall.sub.-- t far *pMake = pMsg;
CSTAMakeCallConfEvent.sub.-- t far *pCall = pReply;
outDCB.fwdarw.messageLength = sizeof(CSTAMakeCallConfEvent.sub.--
t);/*set size of reply message unit */ outDCB.fwdarw.messageType =
CSTA.sub.-- MAKE.sub.-- CALL.sub.-- CONF;/*set type of reply message
unit */ callerID = lookupDeviceID(pMake.fwdarw.callingDevice);/* get
local representation of the caller */ if (callerID == NO.sub.-- LINE)
{ cstaFail(outDCB,INVALID.sub.-- CALLING.sub.-- DEVICB); return -1; };
/* create a phone call */ callID =
callDeviceToDevice(callerID,pMake.fwdarw.calledDevice); if (callID ==
NO.sub.-- CALL) { cstaFail(outDCB,INVALID.sub.-- CALLED.sub.--
DEVICB); return -1; }; pCall.fwdarw.newCall.callID =
encodeCallID(callID);/* create an external representation of an
internal callID*/ .sub.--
fmemcpy(pCall.fwdarw.newCall.deviceID,pMake.fwdarw.callingDevice, .
DIM(pCall.fwdarw.newCall.deviceID));/ pCall.fwdarw.newCall.devIDType =
STATIC.sub.-- ID;/* define the type of device ID created */ return 1;
} * * * } default: }; return 0; }

Record Display Form

Pub | Title | Citation | Front | Review | Classification | Date | Reference | Claims | KWIC

Help    Logout

1/19/00 10:1

cord Display Form

http://jupiter:88/ ...     te.exe?f=doc&state=qh724m.17.6&ESNAME=KWI



Document Number 6

Entry 6 of 10        File: USPT       Nov 10, 1998

DOCUMENT-IDENTIFIER: US 5835565 A
TITLE: Telecommunication system tester with integrated voice and data

BSPR:
For example, a telecommunication system might run a telephony application that allows a telephone call to be transferred from the telecommunication system to a human operator, who can then request a set of data related to the telephone call from a file server for subsequent display on a computer screen. This is commonly known as a "screen pop." Also, local user switches that connect to switched telephone networks generally incorporate digital data lines for transmitting call history logs.



1 of 1

1/19/00 10:15

Record Display Form                          http://jupiter:88/b`    te.exe?f=doc&state=qh724m.17.7&ESNAME  `



Document Number 7

Entry 7 of 10                    File: USPT                    Jun 9, 1998

DOCUMENT-IDENTIFIER: US 5764639 A
TITLE: System and method for providing a remote user with a virtual
presence to an office

DEPR:
It is noted that a road warrior preferably has virtual phone and
virtual fax software applications executing on his computer system.
The telecommuter operating from his home may include a "real" fax
machine as well as a "real" phone. Where a telecommuter's system
includes a physical fax machine, and an ISDN connection is used, the
analog facsimile data generated by the fax machine is preferably
re-digitized in the remote computer system 102 and communicated over
the PSTN to the virtual presence server 106. In this embodiment, each
of the remote computer system 102 and the virtual presence server 106
include a fax/modem chip. When the remote user sends a fax using the
"real" fax machine, the remote computer 102 receives the fax,
converts the analog data to digital data, and transmits the digital
data to the virtual presence server 106. The virtual presence server
106 uses its fax modem to perform digital to analog conversion and
provides the analog fax data to a "real" or virtual fax machine at
any location, such as the corporate office. Alternatively, the
virtual presence server may forward the fax data to a fax xerver for
transmission.

DEPR:
As shown in FIG. 15, first in step 562 the remote user initiates a
communication, i.e., picks up the telephone, or in some manner
enables the telephone or modem to become "off-hook". For example, if
the user is using a virtual telephone executing on the remote
computer system, the user clicks a telephone call icon on the virtual
telephone. If the remote user is connected to the virtual presence
server 106 in step 564, or after a connection is established in step
568, then the following steps occur. In step 570 the corporate PBX
112 provides a dial tone to the remote user. The corporate PBX 112
provides the dial tone through the virtual presence server 106,
through the public switched telephone network (PSTN) and through the
open connection to the user's telephone instrument, or to the user's
virtual telephone executing on the computer system 102. Thus the
corporate PBX 112 provides the dial tone to the remote user's
telephone, and the remote user acts as an extension to the corporate
PBX 112.

Record Display Form

http://jupiter:88/bir    n.exe?f=doc&state=qh724m.17.8&ESNAME KV

**WEST**

Help    Logout

Main Menu | Search Form | Report Set | Show S Numbers | Edit S Numbers | Retaining Patents
Set RS | Previous Document | Next Document
Full | Title | Citation | Front | Review | Observation | Date | Reference | Claims | KWIC

Document Number 8

Entry 8 of 10                        File: USPT                    Jun 3, 1997

DOCUMENT-IDENTIFIER: US 5636209 A
TITLE: Modem to support multiple site call conferenced data
communications

DEPR:
Some on-line services (e.g. AMERICA ON-LINE.TM.) also provide special
access for computers with modems (11, 14) via a Wide Area Telephone
Service ("WATS," also known as "1-800" service in the United States).
Because the on-line service is charged for the duration of a user's
call through a WATS line (51, 52), such service is typically provided
only for a first-time dial-up so that the user can determine a local
access number to a modem pool in the user's calling area. In this
way, it is possible for the operators of an on-line service to
distribute generic client application software with no knowledge of a
given user's local calling area. Such client application software
executing in computers (11, 14) directs a new user's computer (11,
14) to dial up a WATS number (51, 52) and connect to a central modem
pool 53 accessible through that WATS number. Computers (11, 14)
thereby communicate with a server 54 dedicated to the task of
specifying local access numbers (and therefore local modem pool
access numbers), given a user's area code. Subsequently, client
application software executing in computers (11, 14) downloads one or
more local access numbers from the server 54 and terminates the WATS
call (51, 52). From this point on, the local access number (e.g. in
the case of computer 11, the phone number to call modem pool 22) is
used to access the on-line service. Even though the WATS access does
incur a charge to the on-line service, the actual WATS usage per
customer is insignificant relative to the overall time the user
spends using the on-line service.

DEPR:
Any of the above cases will cause the client application software
running in computer 65 to determine that it has not successfully
reached computer 66. Depending on the circumstances, it might be
worthwhile for the client application software to attempt to call
again (e.g. if the phone was busy), but if not, it will notify User A
that the connection attempt to User B was unsuccessful. Computer 65
will again dial into modem pool 76, log into server 88 using the
methods previously described, and report that it was unable to reach
computer 66. Server 88 makes a record internally of the problem. If
there has been a history of calling problems for computer 65, server
88 transmits a message to computer 65 to notify User A to call a
customer service number and get technical assistance. If there is no
history of calling problems, returning to Step 4 above, User A will
be matched up with a different currently logged-in user.

DEPR:
If User A is thus unsuccessful in reaching User B, the client
application software running in computer 66, after a reasonable mount
of time (e.g. 2 minutes) will give up waiting for computer 65 to
call. It will notify User B that the connection attempt to User A was
unsuccessful, and computer 66 will again dial into modem pool 76, log
into server 88 using the methods previously described, and report
that it was unable to reach computer with modem 65. Server 88 applies

1 of 2

1/19/00 10:16

heuristics to the report submitted by the client software of computer
65 combined with previous reports on the connection history of
computer 66 and attempts to diagnose the problem. The diagnosis will
be based on the past history of connection attempts to computer 66
(e.g. if there has never been a successful connection, a wrong number
was probably specified in Step 1). If the heuristics lead to a likely
cause of the connection problem, server 88 will transmit a message to
computer 66 to notify User B of the likely cause. If the heuristics
lead to an indeterminate cause, server 88 will transmit a message to
computer 66 to notify User B to call a customer service number and
get technical assistance.

DEPR:
f. Outside modem call to User B's telephone between Step 7(b) and
Step 8. If a modem happens to call User B's telephone after computer
66 has hung up from modem pool 76 and before computer 65 has called,
computer 66 will answer the phone, anticipating computer 65, and will
generate a modem answer tone. If the calling modem is not compatible
with the answer tone, it will hang up, or in any case the computer 66
will hang up within a reasonable amount of time (as defined in the
modem protocol) if it does not hear an originating modem tone in
reply. If the calling modem is compatible with the answer tone, the
two modems will synchronize and connect, and the client application
software running in computer 66 will expect to receive the
identification code it had been transferred in Step 5.
It is virtually impossible that the wrongly-calling modem will happen
to transmit this particular identification code if the code is of
reasonable complexity. When the client application software fails to
receive the identification code within a reasonable period of time
(e.g. under 5 seconds), it will hang up the telephone, and treat the
situation exactly the same as the outside voice call case described
above.

DEPR:
2) Another Custom Calling feature available in many areas of the
United States is Three-Way Calling. Three-Way Calling is typically
used to establish three-person conference calls, but in some
telephone areas (such as Mountain View, Calif.) when a telephone line
is equipped with both Three-Way Calling and Call Waiting, it is
possible to deactivate Call Waiting on an incoming call by flashing
the switchhook and dialing a Call Waiting deactivation number (*70 in
Mountain View, Calif.). In the situation shown in FIG. 28, the dummy
answering system 276 has just hung up. If USER B'S 272 telephone line
were equipped with Three-Way Calling as well as with Call Waiting,
computer 274 would then flash the switchhook and dial the Call
Waiting deactivation code, thereby deactivating Call Waiting for the
duration of telephone call 280.

| Main Menu | Search Form | Result Set | Show S Numbers | Edit S Number | Referring Patents |
| --- | --- | --- |
| First Hit | Previous Document | Next Document |
| Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | KWIC |

Help     Logout

Record Display Form                    http://jupiter.88/bin/    exe?f=doc&state=qh724m.17.9&ESNAME: k.'

```
┌─────────────────────────────────────────────────────────────┐
│                         WEST                                  │
└─────────────────────────────────────────────────────────────┘
```

                        [ Help ]  [ Logout ]

Main Menu | Search Form | Result Set | Show S Number | Edit S Number | Returning Patent
          Top Hit           Previous Document            Next Document
     Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | Date

Document Number 9

Entry 9 of 10                    File: USPT                    Dec 17, 1996

DOCUMENT-IDENTIFIER: US 5586257 A
TITLE: Network architecture to support multiple site real-time video
games

DEPR:
Some on-line services (e.g. America On-line) also provide special
access for computers with modems (11, 14) via a Wide Area Telephone
Service ("WATS," also known as "1-800" service in the United States).
Because the on-line service is charged for the duration of a user's
call through a WATS line (51, 52), such service is typically provided
only for a first-time dial-up so that the user can determine a local
access number to a modem pool in the user's calling area. In this
way, it is possible for the operators of an on-line service to
distribute generic client application software with no knowledge of a
given user's local calling area. Such client application software
executing in computers (11, 14) directs a new user's computer (11,
14) to dial up a WATS number (51, 52) and connect to a central modem
pool 53 accessible through that WATS number. Computers (11, 14)
thereby communicate with a server 54 dedicated to the task of
specifying local access numbers (and therefore local modem pool
access numbers), given a user's area code. Subsequently, client
application software executing in computers (11, 14) downloads one or
more local access numbers from the server 54 and terminates the WATS
call (51, 52). From this point on, the local access number (e.g. in
the case of computer 11, the phone number to call modem pool 22) is
used to access the on-line service. Even though the WATS access does
incur a charge to the on-line service, the actual WATS usage per
customer is insignificant relative to the overall time the user
spends using the on-line service.

DEPR:
Any of the above cases will cause the client application software
running in computer 65 to determine that it has not successfully
reached computer 66. Depending on the circumstances, it might be
worthwhile for the client application software to attempt to call
again (e.g. if the phone was busy), but if not, it will notify User A
that the connection attempt to User B was unsuccessful. Computer 65
will again dial into modem pool 76, log into server 88 using the
methods previously described, and report that it was unable to reach
computer 66. Server 88 makes a record internally of the problem. If
there has been a history of calling problems for computer 66, server
88 transmits a message to computer 65 to notify User A to call a
customer service number and get technical assistance. If there is no
history of calling problems, returning to Step 4 above, User A will
be matched up with a different currently logged-in user.

DEPR:
If User A is thus unsuccessful in reaching User B, the client
application software running in computer 66, after a reasonable
amount of time (e.g. 2 minutes) will give up waiting for computer 65
to call. It will notify User B that the connection attempt to User A
was unsuccessful, and computer 66 will again dial into modem pool 76,
log into server 88 using the methods previously described, and report
that it was unable to reach computer with modem 65. Server 88 applies

heuristics to the report submitted by the client software of computer
65 combined with previous reports on the connection history of
computer 66 and attempts to diagnose the problem. The diagnosis will
be based on the past history of connection attempts to computer 66
(e.g. if there has never been a successful connection, a wrong number
was probably specified in Step 1). If the heuristics lead to a likely
cause of the connection problem, server 88 will transmit a message to
computer 66 to notify User B of the likely cause. If the heuristics
lead to an indeterminate cause, server 88 will transmit a message to
computer 66 to notify User B to call a customer service number and
get technical assistance.

DEPR:
f. Outside modem call to User B's telephone between Step 7(b) and
Step 8. If a modem happens to call User B's telephone after computer
66 has hung up from modem pool 76 and before computer 65 has called,
computer 66 will answer the phone, anticipating computer 65, and will
generate a modem answer tone. If the calling modem is not compatible
with the answer tone, it will hang up, or in any case the computer 66
will hang up within a reasonable amount of time (as defined in the
modem protocol) if it does not hear an originating modem tone in
reply. If the calling modem is compatible with the answer tone, the
two modems will synchronize and connect, and the client application
software running in computer 66 will expect to receive the
identification code it had been transferred by server 88 in Step 5.
It is virtually impossible that the wrongly-calling modem will happen
to transmit this particular identification code if the code is of
reasonable complexity. When the client application software fails to
receive the identification code within a reasonable period of time
(e.g. under 5 seconds), it will hang up the telephone, and treat the
situation exactly the same as the outside voice call case described
above.

DEPR:
2) Another Custom Calling feature available in many areas of the
United States is Three-Way Calling. Three-Way Calling is typically
used to establish three-person conference calls, but in some
telephone areas (such as Mountain View, Calif.) when a telephone line
is equipped with both Three-Way Calling and Call Waiting, it is
possible to deactivate Call Waiting on an incoming call by flashing
the switchhook and dialing a Call Waiting deactivation number (*70 in
Mountain View, Calif.). In the situation shown in FIG. 28, the dummy
answering system 276 has just hung up. If USER B'S 272 telephone line
were equipped with Three-Way Calling as well as with Call Waiting,
computer 274 would then flash the switchhook and dial the Call
Waiting deactivation code, thereby deactivating Call Waiting for the
duration of telephone call 280.

Main Menu | Search Form | Result Set | Show S Numbers | Edit S Numbers | Returning Patents
Full Hit | Previous Document | Nis 4 Document
Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | Dr P

[ Help ]   [ Logout ]

Record Display Form                                    http://jupiter:88/bin'      exe?f=doc&state=qh724m.17.10&ESNAME '



Document Number 10

Entry 10 of 10                    File: USPT              Sep 24, 1996

DOCUMENT-IDENTIFIER: US 5558339 A
TITLE: Network architecture to support recording and playback of
real-time video games

DEPR:
Some on-line services (e.g. "AMERICA ON-LINE.TM.") also provide
special access for computers with modems (11, 14) via a Wide Area
Telephone Service ("WATS," also known as "1- 800" service in the
United States). Because the on-line service is charged for the
duration of a user's call through a WATS line (51, 52), such service
is typically provided only for a first-time dial-up so that the user
can determine a local access number to a modem pool in the user's
calling area. In this way, it is possible for the operators of an
on-line service to distribute generic client application software
with no knowledge of a given user's local calling area. Such client
application software executing in computers (11, 14) directs a new
user's computer (11, 14) to dial up a WATS number (51, 52) and
connect to a central modem pool 53 accessible through that WATS
number. Computers (11, 14) thereby communicate with a server 54
dedicated to the task of specifying local access numbers (and
therefore local modem pool access numbers), given a user's area code.
Subsequently, client application software executing in computers (11,
14) downloads one or more local access numbers from the server 54 and
terminates the WATS call (51, 52). From this point on, the local
access number (e.g. in the case of computer 11, the phone number to
call modem pool 22) is used to access the on-line service. Even
though the WATS access does incur a charge to the on-line service,
the actual WATS usage per customer is insignificant relative to the
overall time the user spends using the on-line service.

DEPR:
Any of the above cases will cause the client application software
running in computer 65 to determine that it has not successfully
reached computer 66. Depending on the circumstances, it might be
worthwhile for the client application software to attempt to call
again (e.g. if the phone was busy), but if not, it will notify User A
that the connection attempt to User B was unsuccessful. Computer 65
will again dial into modem pool 76, log into server 88 using the
methods previously described, and report that it was unable to reach
computer 66. Server 88 makes a record internally of the problem. If
there has been a history of calling problems for computer 65, server
88 transmits a message to computer 65 to notify User A to call a
customer service number and get technical assistance. If there is no
history of calling problems, returning to Step 4 above, User A will
be matched up with a different currently logged-in user.

DEPR:
If User A is thus unsuccessful in reaching User B, the client
application software running in computer 66, after a reasonable
amount of time (e.g. 2 minutes) will give up waiting for computer 65
to call. It will notify User B that the connection attempt to User A
was unsuccessful, and computer 66 will again dial into modem pool 76,
log into server 88 using the methods previously described, and report
that it was unable to reach computer with modem 65. Server 88 applies

heuristics to the report submitted by the client software of computer
65 combined with previous reports on the connection history of
computer 66 and attempts to diagnose the problem. The diagnosis will
be based on the past history of connection attempts to computer 66
(e.g. if there has never been a successful connection, a wrong number
was probably specified in Step 1). If the heuristics lead to a likely
cause of the connection problem, server 88 will transmit a message to
computer 66 to notify User B of the likely cause. If the heuristics
lead to an indeterminate cause, server 88 will transmit a message to
computer 66 to notify User B to call a customer service number and
get technical assistance.

DEPV:
f. Outside modem call to User B's telephone between Step 7(b) and
Step 8. If a modem happens to call User B's telephone after computer
66 has hung up from modem pool 76 and before computer 65 has called,
computer 66 will answer the phone, anticipating computer 65, and will
generate a modem answer tone. If the calling modem is not compatible
with the answer tone, it will hang up, or in any case the computer 66
will hang up within a reasonable amount of time (as defined in the
modem protocol) if it does not hear an originating modem tone in
reply. If the calling modem is compatible with the answer tone, the
two modems will synchronize and connect, and the client application
software running in computer 66 will expect to receive the
identification code it had been transferred by server 88 in Step 5.
It is virtually impossible that the wrongly-calling modem will happen
to transmit this particular identification code if the code is of
reasonable complexity. When the client application software fails to
receive the identification code within a reasonable period of time
(e.g. under 5 seconds), it will hang up the telephone, and treat the
situation exactly the same as the outside voice call case described
above.

DEPV:
2) Another Custom Calling feature available in many areas of the
United States is Three-Way Calling. Three-Way Calling is typically
used to establish three-person conference calls, but in some
telephone areas (such as Mountain View, Calif.) when a telephone line
is equipped with both Three-Way Calling and Call Waiting, it is
possible to deactivate Call Waiting on an incoming call by flashing
the switchhook and dialing a Call Waiting deactivation number (*70 in
Mountain View, Calif.). In the situation shown in FIG. 28, the dummy
answering system 276 has just hung up. If USER B'S 272 telephone line
were equipped with Three-Way Calling as well as with Call Waiting,
computer 274 would then flash the switchhook and dial the Call
Waiting deactivation code, thereby deactivating Call Waiting for the
duration of telephone call 280.

Main Menu | Search Form | Result Set | Show $ Numbers | Edit $ Numbers | Retaining Patents
Patents | File Prior Document | Nx $ Document
Full | Title | Citation | Front | Review | Classification | Date | Reference | Claims | P1 $C $

Help    Logout

```
L37        14 S L36 AND SESSION
L38         3 S L3  ND APPLET
L39         4 S SE  ET#
```

ASSIGNEE:      Verifone, Inc., Santa Clara, CA (U.S. corp.)

ABSTRACT:
A plurality of clients are connected to one or more servers. When a
client initiates a connection with a server, the server responds to the
request for connection by transmitting a message back to the client to
determine whether the client is a network terminal or not. The client
responds with a message that is received by an application dispatcher at
the server which takes one of a pair of actions based on whether the
client is a network terminal. If the client terminal is a network
terminal, then the application dispatcher spawns a server application in
the server which responds to the client application in the client. Going
forward, the server application responds to all future requests from the
client application. If the client is not a network terminal, then the
application dispatcher initiates a client application in the server to
service the client terminal application requirements. Requests from the
client application on behalf of the client terminal are subsequently
serviced by a server application at the server which communicates to the
client terminal via the client application at the server.

=> d his

```
    (FILE 'USPAT' ENTERED AT 09:40:48 ON 09 AUG 1999)
L1      3583 S (BROWSER OR CLIENT)(30A)(SERVER)
L2       383 S L1(30A)(TELECOMMUNICATION OR TELEPHONE OR SWITCH?)
L3       254 S APPLET#
L4        12 S L2 AND L3
L5      3545 S L1(30A)(APPLICATION OR CLIENT OR PROGRAM OR INTERFACE OR
TE
L6       416 S L1(30A)(TELECOMMUNICATION# OR TELEPHONE OR SWITCH?)
L7       131 S L6(30A)ACCESS?
L8       407 S L6(30A)(APPLICATION OR CLIENT OR PROGRAM OR INTERFACE)
L9       407 S L6(30A)(APPLICATION OR CLIENT OR PROGRAM OR INTERFACE OR
AP
L10       70 S L7(30A)(PERMI? OR AUTHORIZ? OR USER# OR AUTHENTICAT? OR
LET
L11        9 S L10(30A)(PAGE OR START? OR HOME OR BLOCK)
L12       18 S L10(30A)(PAGE OR START? OR HOME OR BLOCK OR MANAG? OR LI
BRA
L13       15 S L12 AND (WEB OR HTTP OR HTML OR IIOP OR PASSWORD# OR RUN
TIM
L14        2 S L13 AND SOCKET
L15      571 S 713/2!!/CCLS
L16      584 S JAVA OR APPLET
L17       16 S L16 AND CORBA
L18        2 S L15 AND L17
L19      254 S L16  AND (TELECOMMUNICATION# OR TELEPHONE OR SWITCH?)
L20      148 S L19 AND BROWSER
L21      144 S L20 AND ACCESS?
L22    39656 S ACCESS?(30A)(TELECOMMUNICATION# OR TELEPHONE OR SWITCH?)
L23     3600 S MANAGER(30A)(LOGON OR SECUR? OR PASSWORD OR AUTHENT? OR
USE
L24       15 S L23(30A)SOCKET
L25        2 S L24 AND L22
L26       54 S L22(30A)L23
L27        3 S L26 AND BROWSER
L28        0 S L27 AND SOCKET
L29        2 S L26 AND SOCKET
L30       72 S L19 AND L23
L31       72 S L19(30A)L23
L32       36 S JAVA AND APPLET AND SOCKET#
L33       11 S L32 AND L31
L34       38 S APPLET AND SOCKET# AND BROWSER
L35       13 S L34 AND L23
L36       33 S INTERNET(30A)TELEPHONE CALL
```