# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TELCORDIA TECHNOLOGIES, INC.,

*Plaintiff,*
*Counterclaim-Defendant,*

vs.

Case No. 04-CV-874 GMS

ALCATEL USA, INC.,

*Defendant,*
*Counterclaim-Plaintiff.*

---

## ALCATEL'S ANSWERING CLAIM
## CONSTRUCTION BRIEF FOR U.S. PATENT NO. 6,247,052

Josy W. Ingersoll (I.D. No. 1088)
Adam Poff (I.D. No. 3990)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street
Wilmington, DE 19801
jingersoll@ycst.com
(302) 571-6672

*Attorneys* for *Defendant / Counterclaim Plaintiff*
*Alcatel USA, Inc.*

OF COUNSEL:

Stuart J. Sinder
Michelle Carniaux
Lewis V. Popovski
Mark A. Hannemann
Clement J. Naples
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Dated: March 24, 2006

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................... 1

    A.    "First" and "Separate Second Communication Links" ........................ 1

        1.    The Terms "First" and "Separate Second Communications Links" Are Not Found In Claim 17 ....................... 2

        2.    Telcordia's Construction Improperly Reads in Limitations From the Preferred Embodiments ........................ 3

        3.    Telcordia's Reliance On the Prosecution History Is Misplaced As There Was No Unambiguous Disclaimer Concerning Claim 17 During Prosecution ....................... 3

        4.    Telcordia's Constructions Would Improperly Exclude an Embodiment of the '052 Patent ................................ 6

    B.    "Telecommunications Switching System" .......................................... 7

    C.    "Remote Computer" ........................................................................... 10

    D.    "Accessing a Server With Said Browser" ......................................... 12

    E.    "System Manager Building Block" .................................................... 13

    F.    "Monitoring" ...................................................................................... 14

    G.    "HTML Server" .................................................................................. 15

    H.    "Java Applet" ..................................................................................... 15

    I.    Telcordia's Requests To Preclude Alcatel From Contesting The Constructions of Three Claims Terms Should be Denied ................................. 16

III.    CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004) ...................................................................... 12

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
  334 F.3d 1294 (Fed. Cir. 2003) ................................................................. 10, 11

*Brown v. 3M*,
  265 F.3d 1349 (Fed. Cir. 2001) ...................................................................... 16

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001) ...................................................................... 12

*In re Hyatt*,
  211 F.3d 1367 (Fed. Cir. 2000) ........................................................................ 5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004) ................................................................. 12, 13

*Intervet America, Inc. v. Kee-Vet Labs., Inc.*,
  887 F.2d 1050 (Fed. Cir. 1989) ..................................................................... 4, 5

*Liebel-Flarsheim Co. v. Medrad Inc.*,
  2006 WL 335846 (S.D. Ohio Feb. 14, 2006) ................................................. 16

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005) ........................................................................ 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................ passim

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*,
  318 F.3d 1143 (Fed. Cir. 2003) ................................................................... 3, 13

*Schumer v. Lab. Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002) ...................................................................... 16

*Storage Tech. Corp. v. Cisco Sys.*,
  329 F.3d 823 (Fed. Cir. 2003) ..................................................................... 9, 10

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .......................................................................... 7

**Rules**

MPEP § 2111 .......................................................................................................................................... 6

Defendant/Counterclaim-Plaintiff Alcatel USA, Inc. ("Alcatel") respectfully submits this Answering Claim Construction Brief regarding Alcatel's U.S. Patent No. 6,247,052 (the "'052 patent").

Alcatel herein relies on, adopts, and joins Lucent's and Cisco's joint Answering Claim Construction Brief with respect to United States Patent Nos. 4,863,306 and RE 36,633, filed concurrently by Lucent Technologies, Inc. and Cisco Systems, Inc. in 04-CV-875 and 04-CV-876, respectively.

## I.    INTRODUCTION

It is black letter law that the specification should be used as a guide to interpreting the claims (*see Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc)) and for every disputed claim term, Alcatel has done so.  However, unlike Alcatel, Telcordia commits "one of the cardinal sins of patent law" by importing limitations from the specification into the claims.  *Id.*

As Alcatel foresaw in its opening brief, Telcordia resorts to creating claim limitations where none exist in a thinly veiled effort to avoid infringement.  Telcordia attempts to justify its actions by pointing to limitations found only in preferred embodiments and by distorting the prosecution history of the '052 patent.  Legions of Federal Circuit cases hold this is improper and, accordingly, Telcordia's proposed constructions should be rejected.

## II.    ARGUMENT

### A.    "First" and "Separate Second Communication Links"

Telcordia's claim constructions seek to insert into claim 17 "first" and "separate second communications link" limitations where none exist in the claim.  *See, e.g.,* Telcordia Br., p. 9. To justify the wholesale insertion of limitations, Telcordia repeats the same argument for four claim elements.  In the interest of brevity, Alcatel will discuss those four elements together. The four elements and their proposed constructions are set forth below with Telcordia's "link" limitations highlighted:

1

| '052 claim term | Alcatel's Construction | Telcordia's Construction |
|---|---|---|
| "accessing a server with said browser" | Communicating with a server using a browser. | Using the browser to access a server through a *first communication link.* |
| "providing a copy of the application program from said server to said remote computer" | Ordinary meaning | Providing an application program from the server to the remote computer *through the first communications link.* |
| "accessing said telecommunications switching system with said application program from said remote computer" | Ordinary meaning | Using the application program at the remote computer to *directly and independently access the telecommunication switching system through a separate second communications link.* |
| "communicating with a system manager building block of the telecommunications switching system from said remote computer" | The remote computer communicates with a message passage and handling system of the telecommunications switching system. | Communicating from the remote computer to the system manager building block *through the second communications link.* |

Telcordia's constructions for each of these terms and phrases essentially use the same words as the phrase to be construed, and unashamedly add either a "first" or "second communications link" element to the claim. Here, as always, Telcordia relies on the preferred embodiment and a tortured reading of the prosecution history to justify its improper attempt to add extraneous limitations to the claim elements.

### 1.    The Terms "First" and "Separate Second Communications Links" Are Not Found In Claim 17

First, as Alcatel explained in its opening brief (pp. 11-12), claim 17 does *not* contain limitations directed to "first" and "second communications links." In contrast, the other independent claims – claims 1 and 27 – do recite separate communications links. The differences between these claims confirm that claim 17 does *not* require first and second communications links. *See Phillips*, 415 F.3d at 1323 ("The manner in which the patentee uses

a term within the specification and claims usually will make the distinction apparent."). For this reason alone, Telcordia's construction should be rejected.

### 2. Telcordia's Construction Improperly Reads in Limitations From the Preferred Embodiments

Telcordia relies on the specification's preferred embodiments[1] to justify the addition of the "separate links." However, it is black letter law that where, as here, the limitation is found only in the specification and not in the claims, it is improper to read those limitations into the claims. *See, e.g., id.*; *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1151 (Fed. Cir. 2003) ("claims of a patent are not limited to the preferred embodiment, unless by their own language"). Claim 17 contains no language whatsoever which could even arguably be construed to mean or even imply separate communication links.

### 3. Telcordia's Reliance On the Prosecution History Is Misplaced As There Was No Unambiguous Disclaimer Concerning Claim 17 During Prosecution

Telcordia also argues that "first and second communications link" limitations should be added to claim 17 under the theory of prosecution history estoppel. This argument must also fail because the patentee did not unequivocally disavow the scope of claim 17 during prosecution. *See Phillips*, 415 F.3d at 1319 (prosecution history estoppel applies "if the inventor has disavowed or disclaimed scope of coverage, *by using words or expressions of manifest exclusion or restriction*, representing a *clear disavowal* of claim scope") (emphasis added).

Telcordia focuses primarily on remarks made in the November 6, 2000 Response to the third Office Action. However, as explained in Alcatel's opening brief (pp. 5-6, pp. 12-13),

---

[1]    For example, one of the portions of the specification Telcordia cites as support for its argument actually states: "The Telecommunications Switch Management System of the present invention *preferably includes* a Graphic User Interface (GUI) Launcher 8 for the Telecommunications Switch Management System. . . ." (Ex. 2, col. 5, ll. 5-8, emphasis added).

these remarks only *generally* characterized the amalgamation of the various features of claims

1, 17 and 27, as follows:

> Independent Claims 1, 17, and 27 recite *in general* the ability to access a telecommunications switching system for monitoring purposes over a second communication link from a remote computer independently from a server upon receiving an application program from the server over a first communication link separate from the second communication link.

(Ex. 8, p. 9, emphasis added).    Contrary to Telcordia's argument, these remarks cannot

constitute a clear disavowal of less than two communication links because no "communication

links" language is found in the claims to begin with.  *See, e.g., Intervet America, Inc. v. Kee-Vet

Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989) (the claims themselves control the scope of

the invention).  There simply is no language for these parasitic limitations to attach to.

    From the time claim 17 was first presented for review and as ultimately issued, that

claim never included first and second communications link limitations, or indeed any reference

at all to communications links.  Only claims 1 and 27 contain such features.  (*See* Ex. 9).    In

view of the explicit language of claims 1 and 27 including two communication links (as

compared to that of claim 17, which does not), that portion of the patentee's generalized

statement is not – and cannot – be a clear, express and unambiguous disavowal of the scope of

claim 17.  *See Phillips*, 415 F.3d at 1319.

    Similarly, the patentee did not expressly and unequivocally disavow claim scope when

it discussed the Ingrassia reference as Telcordia argues (Telcordia Br., pp. 6-7).  Here, as

before, the patentee's numerous statements were not each directed to claim 17:

> [T]he Ingrassia, Jr., et al. patent has a single communication link between its terminal and its web site through its network.  The dotted lines identified by the Examiner as communication links in Figure 3 of the Ingrassia, Jr., et al. patent merely show process steps through the single communication link and not separate communication links.  Thus, the Ingrassia, Jr., et al. patent cannot access a telecommunications switching system for monitoring thereof through a dual communication link function *provided for by the claimed* invention.

(Ex. 8, p. 9, emphasis added).

4

Thus, the prosecuting attorney's statement is not specifically directed to *all* of the claims, and would be understood by everyone to only refer to those claims which did contain the dual communication link function. However, even assuming, arguendo, that the prosecuting attorney mistakenly thought the "communications links" limitations were in all the claims, the mistaken remarks of an attorney during prosecution cannot and do not control the scope of the claim. *See, e.g., Intervet*, 887 F.2d at 1054 ("When it comes to the question of which should control, an erroneous remark by an attorney in the course of prosecution of an application or the claims of the patent as finally worded and issued by the Patent and Trademark Office as an official grant, we think the law allows for no choice. *The claims themselves control*.") (emphasis added).

In similar fashion, Telcordia also points to the patentee's remarks in the April 10, 2000 Response to the second Office Action with respect to U.S. Patent No. 5,870,558 to Branton, Jr. et al. ("Branton") (Ex. 6). As explained in Alcatel's opening brief (pp. 4-5), in applying the references relied upon, the Examiner made assertions of a general nature and only addressed claim 1 on an individual basis. (Ex. 5, pp. 3-6). For example, in the Response filed on April 10, 2000, the Applicant addressed the Examiner's general discussion of Branton in the context of claim 1 and began the discussion by stating:

> With respect to *Independent Claim 1*, there is recited ". . . a server accessible by said browser and operable to receive the access request from the remote computer over a first communications link. . . ." The Examiner has not shown how the cited references provide for these limitations of the claimed invention.

(Ex. 6, p. 9, emphasis added). This statement does not even mention claim 17, which is the claim at issue.

The patentee then went on to distinguish Branton in an amalgamated and general way, with some distinctions clearly not applying to claim 17. For example, while the "communications links" distinction was clearly applicable to claim 1, claim 17 could not have been distinguished on that ground because those limitations were not present. *See In re Hyatt*, 211 F.3d 1367, 1372 (Fed. Cir. 2000) ("claims are given their broadest reasonable

interpretation consistent with the specification"); MPEP § 2111 (Ex. 21) ("During patent examination, the pending claims must be 'given their broadest reasonable interpretation consistent with the specification.'").  Indeed, that the applicant did not intend to apply each and every distinction made to each and every claim is clear from its remark to the Examiner that:

> The Examiner has not provided a full and complete examination of every claim pending in the present Application.  Though Claims 1-30 were stated as being rejected, the Examiner only has shown that Claim 1 was considered in the Office Action with no specific reference made to claims 2-30.

(Ex. 6, p. 10).[2]

Thus, it is apparent that the patentee did not expressly disclaim limitations that are not even found in claim 17.  As such, the patentee's distinguishing remarks with respect to Branton cannot be taken as an "expression[] of manifest exclusion or restriction, representing a clear disavowal" of the scope of claim 17.  *See Phillips*, 415 F.3d at 1319.  The claims themselves support this conclusion – claim 1 was amended to add the "first" and "second communications link[s]" (*see* Ex. 6, p. 2), but claim 17 was *not* amended, thereby remaining as originally filed, without any reference to communications links.  (Ex. 6, p. 5).

### 4.    Telcordia's Constructions Would Improperly Exclude an Embodiment of the '052 Patent

Finally, Telcordia's addition of the "separate communications links" limitations into the claims should be rejected because it would leave a preferred embodiment uncovered under any claim.   Only claim 17 encompasses the preferred embodiment where only a single communications link 16 exists:

> Although Remote Server 14 generally can be located anywhere, as depicted in FIG. 1, Remote Server 14 may for example be configured to be included within System Manager 18. In such a case where Remote Server 14 is included within System Manager 18, Remote Computer 10 would communicate with System Manager 18, and also with Remote Server 14 contained therein, via communications link 16.  *Communications link 12 therefore would not be required.* . . .

---

[2]    The Applicant thereafter requested the Examiner to remedy this "in order that proper consideration can be given to all pending claims and their limitations." (Ex. 6, pp. 10-11).

(Ex. 2, col. 5, ll. 50-60, emphasis added).

Telcordia's construction would leave the "single communication link" embodiment uncovered by any claim, and to do so would be improper. *See, e.g., Pfizer, Inc. v. Teva Pharms. USA, Inc.,* 429 F.3d 1364, 1374 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment . . . is 'rarely, if ever, correct.'") (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

### B.     "Telecommunications Switching System"

| Alcatel's Construction | Telcordia's Construction |
|---|---|
| A telecommunication system for establishing and releasing connections among telecommunication transmission paths. | A system that includes one or more switch fabrics for processing call information and a central unit for control and management of the calls. |

Alcatel's construction reflects the meaning of the term "telecommunications switching system" as understood by a person skilled in the art in the 1997 timeframe as evidenced by the dictionary published by the Institute of Electrical and Electronics Engineers ("IEEE"). Alcatel's definition is in complete harmony with the IEEE definition of "telecommunications switching," meaning "selectively establishing and releasing connections among telecommunication transmission paths." THE NEW IEEE STANDARD DICTIONARY OF ELECTRICAL AND ELECTRONIC TERMS 1088 (6th ed. 1996) (Ex. 11). *See also* Alcatel Br., pp. 7-9 (discussing the IEEE dictionary and prior art cited in the '052 patent).

Telcordia asserts that the "specification expressly defines" the term "telecommunications switching system." *See* Telcordia Br., p. 4. There is no such express definition. Rather, the specification sets forth preferred embodiments that include various features that *may* be found in a telecommunications switching system. The specification never states the invention "must" have any specific feature. (Ex. 2, Fig. 1; cols. 3-4) (detailing various features or "blocks" of the preferred embodiments). While Telcordia latches on to a

specific "call information" feature and argues that the claims "contemplate[] a more specific and complex system" as the "invention" (Telcordia Br., p. 4), the specification defines the invention broadly:

> The graphic user interface launcher of the *present invention* provides graphic displays for enabling one or more users to access a telecommunications switching system for *any desired purpose*. . . .

(Ex. 2, col. 1, ll. 60-64, emphasis added).

Telcordia's attempt to read in "switch fabrics for call processing" and the "control and management" elements features clearly violates the well-settled claim construction precedent prohibiting the importation of features of specific embodiments into the claims. *See, e.g., Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"). Realizing the difficulty in convincing the Court to go against well established precedent, Telcordia proffers a fall-back argument that during the prosecution of the '052 patent, the patentee disclaimed the construction that Alcatel is now urging. *See* Telcordia Br., p. 5. Telcordia's reliance on the prosecution history is misplaced.

United States Patent No. 6,035,332 to Ingrassia, Jr. et al. ("Ingrassia") is entitled "method for monitoring user interactions with web pages from web server using data and command lists for maintaining information visited and issued by participants." (Ex. 22). That patent concerns a method and apparatus for tracking web site interactions: "the invention provides a method [and system] for tracking interactions with pages that have been loaded from a web server to a terminal, and for storing information about the interactions to a page tracking server." (Ex. 21, col. 2, ll. 27-30). In a November 6, 2000 Response to an Office Action in the prosecution leading to the '052 patent, the patentee distinguished Ingrassia on numerous grounds. For example, after generalizing the scope of the claims, the patentee stated:

> By contrast, the Ingrassia, Jr., et al. patent provides only a terminal to server occupied web site connection with *no capability to access a telecommunications switching system* as required by the claimed invention. The Ingrassia, Jr., et al. patent merely discloses the ability for a consumer to

connect to a call center by dialing a telephone number but has *no capability to monitor a telecommunications switching system.*

(Ex. 8, p. 9, emphasis added). From this, Telcordia argues that "Alcatel expressly distinguished 'telecommunications switching systems' from systems that merely 'establish and release connections.'" Telcordia Br., p. 3. But as the above quoted statement shows, Ingrassia was not distinguished on the ground that it "merely establishe[s] and release[s] connections among telecommunication transmission paths." The patentee's remarks set forth above show only that Ingrassia is directed to a "terminal to server" system and, as such, did not have the ability to *access or monitor* a "telecommunications switching system" as claimed. Telcordia simply reads too much into the patentee's general statement.

Telcordia's argument must also fail because a skilled artisan reading the intrinsic record would *not* have concluded from the patentee's remarks that it was disclaiming "a telecommunication system for establishing and releasing connections among telecommunication transmission paths." *Storage Tech. Corp. v. Cisco Sys.*, 329 F.3d 823, 833-34 (Fed. Cir. 2003) ("Prosecution history . . . cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter."). As explained above and in Alcatel's opening brief, during the 1997 timeframe, the term "telecommunications switching" had an ordinary and customary meaning to persons skilled in the art. *See, supra,* page 1. Thus, the well-known meaning of the term would not have led skilled artisans to confuse a "telecommunications switching system" with "web pages" so as to warrant an estoppel.

Furthermore, persons skilled in the art would have known that in a system like Ingrassia's, there would be no need to *monitor connections* because no continuous connections exist between an HTTP server and its client. *See, e.g.,* United States Patent No. 5,742,762 to Scholl et al. (Ex. 23, col. 2, ll. 27-30) ("HTTP is a stateless protocol. That is, with HTTP, there is *no continuous connection* between each client and each server.") (emphasis added). Because no one skilled in the art would have thought that the patentee disclaimed a telecommunications

9

switching system, Telcordia's estoppel argument should be rejected for this additional reason. *Storage Tech.*, 329 F.3d at 833-34.

### C.    "Remote Computer"

| Alcatel's Construction | Telcordia's Construction |
|---|---|
| A computer that is separate from the telecommunications switching system. | A computer at a location that is remote from the telecommunication switching system being monitored. |

First of all, Telcordia's proposed construction of "remote computer" is not helpful as its construction circularly uses the word "remote." Secondly, Telcordia contravenes and ignores the specification which teaches that a "remote computer" can be located "anywhere."

It is axiomatic that construing a claim term without considering the intrinsic evidence violates the basic tenets of claim construction law. *See, e.g., Phillips*, 415 F.3d at 1313. Dictionaries may be helpful in construing a claim term "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.* at 1322-23. The Federal Circuit has repeatedly warned against using dictionaries as the sole source for claim construction:

> Our precedent referencing the use of dictionaries should not be read to suggest that abstract dictionary definitions are alone determinative. In construing claim terms, the general meanings gleaned from reference sources, such as dictionaries, *must always be compared against the use of the terms in context, and the intrinsic record must always be consulted to identify which of the different possible dictionary meanings is most consistent with the use of the words by the inventor.*

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003) (emphasis added).

Here, the specification refutes Telcordia's construction by expressly removing any geographical or distance connotation that Telcordia seeks to add to the term "remote computer" by stating that "authorized users *located anywhere* can access the Telecommunications Switching System 230. . . ." (Ex. 2, col. 5, ll. 41-42).

Telcordia relies on the Federal Circuit's construction of the term "remote location" in the *Brookhill* case. However, Telcordia's reliance on *Brookhill* is misplaced. First, the construction of a particular claim term found in an entirely different and unrelated patent is wholly irrelevant and it would be improper to consider it as part of the claim construction analysis in this case. Second, *Brookhill* actually refutes Telcordia's argument and supports Alcatel's construction. The *Brookhill* case involved a patent directed to systems and methods for performing robotic surgery from a "remote location." The defendant tried to limit the term to "a location outside the operating room," or "far apart" or "distant." *See Brookhill*, 334 F.3d at 1297, 1302. The Federal Circuit declined to so limit the term because "[t]he written description sets forth no specific parameters as to the distance between the surgeon and the patient, but teaches generally that a surgeon using the disclosed assembly may operate without directly touching the patient . . . regardless of the extent of the physical separation between the surgeon and the patient." *Id.* at 1300.

Like the *Brookhill* case, the '052 patent specification did not set forth a distance parameter for the remote computer. Rather, the specification expressly provides that the "remote computer" equipped with the browser allows a user to be located *anywhere*: "authorized users located *anywhere* can access the Telecommunications Switching System 230 for all of the same purposes as could a user of a dedicated terminal located proximate to the Telecommunications Switching System 230." (Ex. 2, col. 5, ll. 41-45, emphasis added). The specification further states that "[a] technical advantage of the GUI launcher of the present invention is the GUI launcher's ability to provide users access to telecommunications switching systems *from any desired* remote location having a remote computer." (Ex. 2, col. 2, ll. 34-37, emphasis added).

Because the specification clearly did not limit "remote computer" to a computer that is, as Telcordia contends, "located far away," Telcordia's construction must be rejected. *See Brookhill*, 334 F.3d at 1301 ("the written description and prosecution history fail to express a manifest exclusion or restriction limiting the claim term, and where the written description

11

otherwise supports the broader interpretation, 'we are constrained to follow the language of the claims'"); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1341 n.1 (Fed. Cir. 2001) ("[a] common meaning, such as one expressed in a relevant dictionary, that flies in the face of the patent disclosure is undeserving of fealty").

### D.    "Accessing a Server With Said Browser"

| Alcatel's Proposed Construction | Telcordia's Proposed Construction |
|---|---|
| Communicating with a server using a browser. | Using the browser to access a server through a first communications link. |

Most of the issues with respect to this phrase were addressed in Section A above. However, Telcordia's argument that the term "accessing" cannot mean "communicating" warrants clarification. The Federal Circuit has recognized that it is possible for two different terms in a claim to have similar or overlapping meanings. *See, e.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1120 (Fed. Cir. 2004) ("we must conclude that this is simply a case where the patentee used different words to express similar concepts");[3] *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) (the inference that different meanings should be assigned to different terms in the same claim "is not conclusive; it is not unknown for different words to be used to express similar concepts").

Here, the term "communicating" does not necessarily preclude encompassing the function of "accessing." The term "accessing" is a non-technical term that is defined as, among other things, to "communicate with." *See, e.g.,* Merriam Webster's Collegiate Dictionary 6 (10th ed. 1997) (Ex. 14). Indeed, in many instances, the '052 patent specification uses the term "accessing" synonymously with "communicating." For example, the specification teaches that:

> A user at Remote Computer 10 initiates a system *access session* by *establishing communication* over link 12 with Remote Server 14. In response, Remote

---

[3]    Indeed, Telcordia cited to the *Innova* case for basic claim construction principles but conveniently overlooked the Court's discussion on this particular issue.

> Server 14 downloads the application program to Remote Computer 10 which enables Remote Computer 10 *to communicate with* Telecommunications Switching System 230.

(Ex. 2, col. 5, ll. 21-27, emphasis added).

Thus, it is apparent that in the context of the specification, the terms "accessing" and "communicating" had similar and overlapping meanings. *See Innova/Pure Water, Inc.*, 381 F.3d at 1120.

###    E.    "System Manager Building Block"

| Alcatel's Proposed Construction | Telcordia's Proposed Construction |
|---|---|
| A message passage and handling system. | Software resident in the telecommunications switching system used to manage the telecommunications switching system, including establishing communications with between the remote computer and the telecommunications switching system. |

Alcatel does not dispute that the System Manager may be implemented in software. Telcordia's construction, however, requires the System Manager Building Block to be resident in the telecommunications switching system it is monitoring. Contrary to Telcordia's assertion, the specification never indicates that the System Manager Building Block must be located in the telecommunications switching system. Rather, System Manager 18 is a building block of the "Telecommunications Switch *Management* System" which may or may not be part of the "telecommunications switching system" that it is monitoring.

Additionally, Telcordia cannot limit the functions of the System Manager Building Block to just "manage" and "establish[] communications." The functionalities that Telcordia lists in its opening brief to support this argument are merely functionalities that *may* be included in preferred embodiments, but they are *not* required by the claims. *See Prima Tek*, 318 F.3d at

1151 ("claims of a patent are not limited to the preferred embodiment, unless by their own language").[4]  Thus, Telcordia's construction is improper.

Alcatel's proposed construction simply adopts the definition of the term as it is specifically defined and used by the specification.  The specification distinctly defines the "System Manager 18 [as] *any type of message passing and handling system*."  (Ex. 2, col. 6, ll. 14-16, emphasis added).  No further restriction is warranted or proper.  Unlike Telcordia's construction, Alcatel attributes to the system manager building block only the functionality that it needs to implement the "communicating" function of the claim.  Alcatel's construction should therefore be adopted by the Court.

### F.    "Monitoring"

| Alcatel's Proposed Construction | Telcordia's Proposed Construction |
|---|---|
| Plain and ordinary meaning; does not require additional construction. | Obtaining performance status information from elements of the telecommunications switching system. |

The term "monitoring" is a non-technical term and is understood equally well by those of ordinary skill in the art and laypersons alike.  Accordingly, Alcatel believes that the term does not require further construction.

Telcordia's proposed construction uses the extraneous words "obtaining performance status information," which is improper for two reasons.  First, it adds an active element to the claim language that is simply not there.  Second, and more importantly, Telcordia sets out a "performance status" function that is also not found in the claim language.   That the claim is not limited to monitoring performance data is made clear by the specification.  For example, the specification teaches that monitoring "performance" is only one of the functions the user can monitor: "in FIG. 12, the user can select from the GUI Launcher 8 options as 'Monitor, 'Configuration', 'Applications', 'Performance', and 'Security'."  (Ex. 2, col. 7, ll. 49-52).

---

[4]    By the same token, Telcordia's reliance on Figure 1 is also misplaced because, again, it is just one embodiment of the '052 patent.

14

Thus, "monitoring" does not mean "obtaining performance data" as Telcordia proposes – it means simply "monitoring."

### G.    "HTML Server"

| Alcatel's Proposed Construction | Telcordia's Proposed Construction |
|---|---|
| A server that handles hypertext markup language. | A server that provides information in hypertext markup language. |

As discussed in Alcatel's opening brief, Telcordia's proposed construction of the term "HTML server" is improperly limiting.  The specification provides that the claimed server may receive, store and transmit information.  (Ex. 2, col. 5, ll. 21-27, ll. 54-58; col. 6, ll. 26-32). Alcatel's proposed construction – "a server that handles hypertext markup language" – includes each of these functions.  However, Telcordia's use of the words "provides information" improperly limits the server to only *transmission* of information.  Telcordia cannot and does not point to any portion of the specification that supports such a narrow interpretation.

### H.    "Java Applet"

| Alcatel's Proposed Construction | Telcordia's Proposed Construction |
|---|---|
| A computer program, which is written in the Java language. | An application program written in Java program code that is invoked by the web-browser and that runs within the web-browser. |

Alcatel does not dispute that the Java Applet *may* be run in a web browser.  However, Alcatel disputes that the Java Applet is necessarily "invoked" by the web browser.  As an initial matter, Telcordia does not define the term "invoke" in its proposed construction or in its opening brief.

The key point is that Telcordia's construction is not supported by the claim language and the intrinsic record.  Neither claim 17 nor dependent claim 24, which recites a Java Applet, require the Java Applet to be invoked by the web browser.  And, contrary to Telcordia's argument, the figures of the '052 patent do not show that the applet is "invoked" in the browser.

15

The figures are simply screen shots of the browser and no "invoking" is actually shown. Indeed, Telcordia's citation to the definition of "applet" does not support its construction because the definition merely states that the program is "written in the Java language to run within HotJava, the world wide web (WWW) browser." (Telcordia Br., p. 16). For these reasons, Telcordia's construction should be rejected.

I.     **Telcordia's Requests To Preclude Alcatel From Contesting The Constructions of Three Claims Terms Should be Denied**

Telcordia complains that because Alcatel offers only "ordinary meaning" for three of the disputed claim terms, Alcatel should be precluded from contesting Telcordia's constructions. This flies in the face of Federal Circuit precedent. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. *See also Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1312 (Fed. Cir. 2002); *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) ("These are not technical terms of art, and do not require elaborate interpretation.").   As difficult as it may be for Telcordia to accept, sometimes the words mean what they say.

Telcordia's reliance on the *Liebel-Flarsheim* case is misplaced because in that case, the plaintiff absolutely refused to engage in the claim construction process. *See Liebel-Flarsheim Co. v. Medrad Inc.*, 2006 WL 335846, at *3-5 (S.D. Ohio Feb. 14, 2006).[5]

Here, contrary to Telcordia's accusation, Alcatel has *not* refused to engage in claim construction.   The parties had several meet-and-confers where the disputed terms were discussed at length.[6]   The parties exchanged summary claim charts before submitting a Joint

---

[5]    In particular, the plaintiff refused to participate in a "meet-and-confer" to discuss claim construction issues. *See Liebel-Flarsheim*, 2006 WL 335846 at *3-4.

[6]    Telcordia never indicated or suggested to Alcatel that it would seek preclusion, despite the fact that Alcatel's position had been conveyed to Telcordia on numerous occasions during the meet-and-confer discussions.

Chart to the Court. Alcatel believes that the claim phrases mean what they say and do not require any further elaboration. Telcordia, on the other hand, simply reiterates the claim language and adds extraneous limitations.

Telcordia's assertion that "Alcatel does not actually offer a construction that captures or explains what it believes is 'ordinary meaning'" is especially disingenuous because some of its own constructions are simply a restatement of the claim terms and another opportunity for Telcordia to again improperly import its "communication link" non-infringement theory into claim 17.

In sum, Alcatel submits that three of the disputed claim terms have an ordinary meaning not only to persons skilled in the art but also to laypersons. In addition to the term "monitoring," discussed above, the other claim terms that have an ordinary meaning are as follows:[7]

**"Providing a copy of the application program from said server to said remote computer"**

Alcatel does not believe that this claim phrase needs to be construed because, since the term "remote computer" is being separately construed, there is nothing ambiguous about this claim feature. It plainly states that the server provides a copy of the application program to the remote computer, and rewording it does not and cannot offer any further clarity.

**"Accessing said telecommunications switching system with said application program from said remote computer"**

Alcatel also submits that this phrase needs no additional construction because there is nothing ambiguous about this claim element. It plainly states that the remote computer uses the application program to access the telecommunications switching system. Indeed, the Court has been separately asked to construe the component terms "accessing," "telecommunications switching system" and "remote computer," leaving nothing else to construe.

---

[7]    Other issues relating to these two claim terms and phrases were addressed in Section A above. This section only addresses Telcordia's argument with respect to ordinary meaning.

## III.    CONCLUSION

For the reasons set forth above, and in the Joint Submission on Claim Construction, the

Court should adopt Alcatel's proposed claim constructions in all respects.

Dated:  March 24, 2006                              Respectfully submitted:

                                        _____
                                        Josy W. Ingersoll (I.D. No. 1088)
                                        Adam W. Poff (I.D. No. 3990)
                                        YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                        The Brandywine Building
                                        1000 West Street, 17th Floor
                                        Wilmington, DE 19801
                                        Tel. (302) 571-6672
                                        jingersoll@ycst.com
                                        apoff@ycst.com

                                        *Attorneys for Defendant / Counterclaim Plaintiff
                                        Alcatel USA, Inc.*

OF COUNSEL:
Stuart J. Sinder
Michelle Carniaux
Lewis V. Popovski
Mark A. Hannemann
Clement J. Naples
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel. (212) 425-7200

18

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire hereby certify that on March 24, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

**BY HAND DELIVERY**

> Steven J. Balick, Esquire
> Ashby & Geddes
> 222 Delaware Avenue
> Wilmington, DE 19801

I further certify that on March 24, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

> Donald R. Dunner, Esquire
> Don O. Burley, Esquire
> Finnegan, Henderson, Farabow
>  Garrett & Dunner, L.L.P.
> 901 New York Avenue, NW
> Washington, DC 20001

> YOUNG CONAWAY STARGATT & TAYLOR, LLP


> Josy W. Ingersoll (No. 1088)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> jingersoll@ycst.com
> Attorneys for Alcatel USA, Inc.

**COURTESY COPIES TO:**

Jack B. Blumenfeld, Esquire  (by hand delivery)
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

Edward R. Reines, Esquire (by Federal Express)
Weil, Gotshal & Manges
Silicon Valley
201 Redwood Shores Parkway
Redwood Shores, CA  94065

John W. Shaw, Esquire (by hand delivery)
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801

Steven C. Cherny, Esquire (by Federal Express)
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY  10022