# EXHIBIT 21



Maheu Publishing
*The IP Book Store*

# The Manual of PATENT EXAMINING PROCEDURE

Original Eighth Edition, August 2001
Latest Revision August 2005

U.S. DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

*Local-703-426-0633  Fax-703-426-0833*
*WWW.MAHEUPUBLISHING.COM*

situation, experts at the FDA have assessed the rationale for the drug or research study upon which an asserted utility is based and found it satisfactory. Thus, in challenging utility, Office personnel must be able to carry their burden that there is no sound rationale for the asserted utility even though experts designated by Congress to decide the issue have come to an opposite conclusion. "FDA approval, however, is not a prerequisite for finding a compound useful within the meaning of the patent laws." *In re Brana*, 51 F.3d 1560, 34 USPQ2d 1436 (Fed. Cir. 1995) (citing *Scott v. Finney*, 34 F.3d 1058, 1063, 32 USPQ2d 1115, 1120 (Fed. Cir. 1994)).

Thus, while an applicant may on occasion need to provide evidence to show that an invention will work as claimed, it is improper for Office personnel to request evidence of safety in the treatment of humans, or regarding the degree of effectiveness. See *In re Sichert*, 566 F.2d 1154, 196 USPQ 209 (CCPA 1977); *In re Hartop*, 311 F.2d 249, 135 USPQ 419 (CCPA 1962); *In re Anthony*, 414 F.2d 1383, 162 USPQ 594 (CCPA 1969); *In re Watson*, 517 F.2d 465, 186 USPQ 11 (CCPA 1975); *In re Krimmel*, 292 F.2d 948, 130 USPQ 215 (CCPA 1961); *Ex parte Jovanovics*, 211 USPQ 907 (Bd. Pat. App. & Inter. 1981).

## VI. TREATMENT OF SPECIFIC DISEASE CONDITIONS

Claims directed to a method of treating or curing a disease for which there have been no previously successful treatments or cures warrant careful review for compliance with 35 U.S.C. 101. The credibility of an asserted utility for treating a human disorder may be more difficult to establish where current scientific understanding suggests that such a task would be impossible. Such a determination has always required a good understanding of the state of the art as of the time that the invention was made. For example, prior to the 1980's, there were a number of cases where an asserted use in treating cancer in humans was viewed as "incredible." *In re Jolles*, 628 F.2d 1322, 206 USPQ 885 (CCPA 1980); *In re Buting*, 418 F.2d 540, 163 USPQ 689 (CCPA 1969); *Ex parte Stevens*, 16 USPQ2d 1379 (Bd. Pat. App. & Inter. 1990); *Ex parte Busse*, 1 USPQ2d 1908 (Bd. Pat. App. & Inter. 1986); *Ex parte Krepelka*, 231 USPQ 746 (Bd. Pat. App. & Inter. 1986); *Ex parte Jovanovics*, 211 USPQ 907 (Bd. Pat. App. & Inter. 1981). The fact that there is no known cure for a disease, however, cannot serve as the basis for a conclusion that such an invention lacks utility. Rather, Office personnel must determine if the asserted utility for the invention is credible based on the information disclosed in the application. Only those claims for which an asserted utility is not credible should be rejected. In such cases, the Office should carefully review what is being claimed by the applicant. An assertion that the claimed invention is useful in treating a symptom of an incurable disease may be considered credible by a person of ordinary skill in the art on the basis of a fairly modest amount of evidence or support. In contrast, an assertion that the claimed invention will be useful in "curing" the disease may require a significantly greater amount of evidentiary support to be considered credible by a person of ordinary skill in the art. *In re Sichert*, 566 F.2d 1154, 196 USPQ 209 (CCPA 1977); *In re Jolles*, 628 F.2d 1322, 206 USPQ 885 (CCPA 1980). See also *Ex parte Ferguson*, 117 USPQ 229 (Bd. Pat. App. & Inter. 1957).

In these cases, it is important to note that the Food and Drug Administration has promulgated regulations that enable a party to conduct clinical trials for drugs used to treat life threatening and severely-debilitating illnesses, even where no alternative therapy exists. See 21 CFR 312.80-88 (1994). Implicit in these regulations is the recognition that experts qualified to evaluate the effectiveness of therapeutics can and often do find a sufficient basis to conduct clinical trials of drugs for incurable or previously untreatable illnesses. Thus, affidavit evidence from experts in the art indicating that there is a reasonable expectation of success, supported by sound reasoning, usually should be sufficient to establish that such a utility is credible.

## 2111    Claim Interpretation; Broadest Reasonable Interpretation [R-1]

**CLAIMS MUST BE GIVEN THEIR BROADEST REASONABLE INTERPRETATION**

During patent examination, the pending claims must be "given *>their< broadest reasonable interpretation consistent with the specification." >*In re Hyatt*, 211 F.3d 1367, 1372, 54 USPQ2d 1664, 1667 (Fed. Cir. 2000).< Applicant always has the opportunity to amend the claims during prosecution, and broad interpretation by the examiner reduces the possibility that

the claim, once issued, will be interpreted more broadly than is justified. *In re Prater*, 415 F.2d 1393, 1404-05, 162 USPQ 541, 550-51 (CCPA 1969) (Claim 9 was directed to a process of analyzing data generated by mass spectrographic analysis of a gas. The process comprised selecting the data to be analyzed by subjecting the data to a mathematical manipulation. The examiner made rejections under 35 U.S.C. 101 and 102. In the 35 U.S.C. 102 rejection, the examiner explained that the claim was anticipated by a mental process augmented by pencil and paper markings. The court agreed that the claim was not limited to using a machine to carry out the process since the claim did not explicitly set forth the machine. The court explained that "reading a claim in light of the specification, to thereby interpret limitations explicitly recited in the claim, is a quite different thing from 'reading limitations of the specification into a claim,' to thereby narrow the scope of the claim by implicitly adding disclosed limitations which have no express basis in the claim." The court found that applicant was advocating the latter, i.e., the impermissible importation of subject matter from the specification into the claim.). See also *In re Morris*, 127 F.3d 1048, 1054-55, 44 USPQ2d 1023, 1027-28 (Fed. Cir. 1997) (The court held that the PTO is not required, in the course of prosecution, to interpret claims in applications in the same manner as a court would interpret claims in an infringement suit. Rather, the "PTO applies to verbiage of the proposed claims the broadest reasonable meaning of the words in their ordinary usage as they would be understood by one of ordinary skill in the art, taking into account whatever enlightenment by way of definitions or otherwise that may be afforded by the written description contained in applicant's specification.").

The broadest reasonable interpretation of the claims must also be consistent with the interpretation that those skilled in the art would reach. *In re Cortright*, 165 F.3d 1353, 1359, 49 USPQ2d 1464, 1468 (Fed. Cir. 1999) (The Board's construction of the claim limitation "restore hair growth" as requiring the hair to be returned to its original state was held to be an **>incorrect< interpretation of the limitation. The court held that, consistent with applicant's disclosure and the disclosure of three patents from analogous arts using the same phrase to require only some increase in hair growth, one of ordinary skill would construe "restore hair growth" to mean that the claimed method increases the amount of hair grown on the scalp, but does not necessarily produce a full head of hair.).

## 2111.01 Plain Meaning [R-3]

### I. THE WORDS OF A CLAIM MUST BE GIVEN THEIR "PLAIN MEANING" UNLESS THEY ARE DEFINED IN THE SPECIFICATION

While the claims of issued patents are interpreted in light of the specification, prosecution history, prior art and other claims, this is not the mode of claim interpretation to be applied during examination. During examination, the claims must be interpreted as broadly as their terms reasonably allow. *In re American Academy of Science Tech Center*, **>367 F.3d 1359, 1369, 70 USPQ2d 1827, 1834 (Fed. Cir. 2004)< (The USPTO uses a different standard for construing claims than that used by district courts; during examination the USPTO must give claims their broadest reasonable interpretation.). This means that the words of the claim must be given their plain meaning unless applicant has provided a clear definition in the specification. *In re Zletz*, 893 F.2d 319, 321, 13 USPQ2d 1320, 1322 (Fed. Cir. 1989) (discussed below); *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1372, 69 USPQ2d 1857 (Fed. Cir. 2004) (Ordinary, simple English words whose meaning is clear and unquestionable, absent any indication that their use in a particular context changes their meaning, are construed to mean exactly what they say. Thus, "heating the resulting batter-coated dough to a temperature in the range of about 400°F to 850°F" required heating the dough, rather than the air inside an oven, to the specified temperature.). One must bear in mind that, especially in nonchemical cases, the words in a claim are generally not limited in their meaning by what is shown or disclosed in the specification. See, e.g., *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004) (discussing recent cases wherein the court expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment). It is only when the specification provides definitions for terms appearing in the claims that the specification can be