# EXHIBIT 1



FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

SMITH R. BRITTINGHAM IV
202.408.4158
smith.brittingham@finnegan.com

CBI _06-316_

May 15, 2006

DOCKET
NUMBER

2485

Office of the
Secretary
Int'l Trade Commission

**VIA HAND DELIVERY**

The Honorable Marilyn Abbott
Secretary
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re:     *Certain Equipment For Telecommunications Or
Data Communications Networks, Including
Routers, Switches, And Hubs, And Components
Thereof*

Dear Secretary Abbott:

Enclosed for filing on behalf of Complainant Telcordia Technologies, Inc. ("Telcordia" or "Complainant") are the following documents in support of Telcordia's request that the Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended. A separate request for confidential treatment of confidential Exhibits 18-19 and confidential Appendix G, is included with this filing.

Accordingly, Telcordia submits the following documents for filing:

1.     An original and twelve (12) copies of the verified Complaint and an original and six (6) copies of the accompanying exhibits, with the Confidential Exhibits segregated from the other material submitted (original and (1) copy unbound, without tabs (Rules 201.6(c), 210.4(f)(3)(i), and 210.8(a));

2.     Four (4) additional copies of both the Complaint and accompanying non-confidential exhibits for service upon each proposed respondent. (Rules 210.4 (f)(3)(i), 210.8(a), and 210.11(a));

3.     Four (4) additional copies of the Confidential Exhibits;

4.     Certified copies of United States Letters Patent Nos. 4,893,306 ("the '306 patent"), Re. 36,633 ("the '633 patent"), and 4,835,763 ("the '763 patent") (collectively the "Asserted Patents"), included as

The Honorable Marilyn Abbott
May 15, 2006
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Exhibits 1-3 in the original Complaint, and copies thereof included as Exhibits 1-3 in all copies of the Complaint;

5.    Certified copies of the assignments involving the Asserted Patents included as Exhibits 4-6 in the original Complaint, and copies thereof included as Exhibits 4-6 in all copies of the Complaint;

6.    Certified copies and three (3) copies thereof of the prosecution histories of each of the Asserted Patents included as Appendices A, C, and E (Rule 210.12(c)(2));

7.    Four (4) copies of each reference document mentioned in the prosecution histories of the applications leading to the issuance of the Asserted Patents included as Appendices B, D, and F;

8.    Three copies of each license under the asserted patents included as Confidential Appendix G;

9.    One (1) additional copy of the Complaint and the accompanying non-confidential exhibits for service upon the French embassy in Washington, D.C. (Rule 210.8(a) and 210.11(a)(1)); and

10.   A letter and certification pursuant to Commission Rules 201.6(b) and 210.5(d) requesting confidential treatment of Confidential Exhibits 18-19 and Confidential Appendix G.

Thank you for your attention to this matter.

Respectfully submitted,

*Smith R. Brittingham IV/can*

Smith R. Brittingham IV

Enclosures



901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

SMITH R. BRITTINGHAM IV
202.408.4158
smith.brittingham@finnegan.com

May 15, 2006

**VIA HAND DELIVERY**

The Honorable Marilyn Abbott
Secretary
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

      Re:    *Certain Equipment For Telecommunications Or*
*Data Communications Networks, Including*
*Routers, Switches, And Hubs, And Components*
*Thereof*

Dear Secretary Abbott:

    This firm represents Complainant Telcordia Technologies, Inc. ("Telcordia" or "Complainant"), who is concurrently filing a complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337.

    In accordance with Commission Rules 201.6, 210.5, 19 C.F.R. §§ 201.6 and 210.5, Telcordia requests confidential treatment of the business information contained in Confidential Exhibits 18-19 and Confidential Appendix G.

    The information for which confidential treatment is sought is proprietary commercial information not otherwise publicly available.  Specifically, these Exhibits contain proprietary commercial information concerning Telcordia's licensing of the Asserted Patents, and investments in the domestic industry.

    The information described above qualifies as confidential business information pursuant to Rule 210.6(a) because:

    1.    it is not available to the public;

    2.    unauthorized disclosure of such information could cause substantial harm to the competitive position of Telcordia; and

    3.    the disclosure of which could impair the Commission's ability to obtain information necessary to perform its statutory function.

The Honorable Marilyn Abbott
May 15, 2006
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

 

Please contact me if you have any questions about this request, or if this request is not granted in full.

We appreciate your assistance in this matter.

Respectfully submitted,

*Smith R. Brittingham IV /EAN*

Smith R. Brittingham IV

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### WASHINGTON, D.C.

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN EQUIPMENT FOR TELECOMMUNICATIONS OR DATA COMMUNICATIONS NETWORKS, INCLUDING ROUTERS, SWITCHES, AND HUBS, AND COMPONENTS THEREOF** | Investigation No. 337-TA-_____ |

## COMPLAINT OF TELCORDIA TECHNOLOGIES, INC.
### UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANT**

Telcordia Technologies, Inc.
One Telcordia Drive
Piscataway, NJ 08854
(732) 699-2000

**COUNSEL FOR COMPLAINANT**

Smith R. Brittingham IV
Donald R. Dunner
Steven M. Anzalone
Houtan K. Esfahani
James T. Wilson
John Williamson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

**PROPOSED RESPONDENTS**

Cisco Systems, Inc.
170 West Tasman Drive
San Jose, CA 95134
(408) 526-4000

Lucent Technologies, Inc.
600 Mountain Avenue
Murray Hill, NJ 07974
(908) 582-3000

Alcatel S.A.
rue La Boétie
75008, Paris, France
33-1-3077-3077

Alcatel USA, Inc.
3400 W. Plano Parkway
Plano, TX 75075
(972) 519-3000

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................ 1

II.   Complainant ....................................................................................................... 2

III.  Proposed Respondents ....................................................................................... 3

IV.   The Technology and Products in Issue .............................................................. 4

V.    The Patents-In-Suit and Non-Technical Descriptions Of The Inventions ......... 5

    A.   The '306 Patent ............................................................................................. 5
       1.   Identification of the Patent and Ownership by Telcordia .................... 5
       2.   Non-Technical Description of the Patent ............................................. 5
       3.   Foreign Counterparts to the Patent ..................................................... 7
       4.   Licenses ............................................................................................... 7

    B.   The '633 Patent ............................................................................................. 7
       1.   Identification of the Patent and Ownership by Telcordia .................... 7
       2.   Non-Technical Description of the Patent ............................................. 8
       3.   Foreign Counterparts to the Patent ..................................................... 9
       4.   Licenses ............................................................................................... 9

    C.   The '763 Patent ............................................................................................. 9
       1.   Identification of the Patent and Ownership by Telcordia .................... 9
       2.   Non-Technical Description of the Patent ........................................... 10
       3.   Foreign Counterparts to the Patent ................................................... 11
       4.   Licenses ............................................................................................. 11

VI.   Unlawful And Unfair Acts Of Respondents—Patent Infringement ................ 12

    A.   Cisco ........................................................................................................... 13
       1.   The '306 Patent ................................................................................. 13
       2.   The '633 Patent ................................................................................. 15
       3.   The '763 Patent ................................................................................. 16

    B.   Lucent ......................................................................................................... 16
       1.   The '306 Patent ................................................................................. 16
       2.   The '633 Patent ................................................................................. 18
       3.   The '763 Patent ................................................................................. 18

    C.   Alcatel ........................................................................................................ 19
       1.   The '306 Patent ................................................................................. 19
       2.   The '633 Patent ................................................................................. 19

    D.   Direct, Contributory, and Induced Infringement ....................................... 20

VII.  Specific Instances Of Unfair Importation And Sale ....................................... 21

A.   Cisco ........................................................................................................... 22

B.   Lucent ......................................................................................................... 23

C.   Alcatel ........................................................................................................ 24

VIII.   Harmonized Tariff Schedule Item Number ...................................................... 24

IX.   The Domestic Industry ...................................................................................... 25

X.   Related Litigation ............................................................................................... 26

XI.   Relief Requested ............................................................................................... 27

## TABLE OF EXHIBITS AND APPENDICES

**Public Exhibit**   **Document**

Exhibit 1        Certified copy of United States Letters Patent No. 4,893,306

Exhibit 2        Certified copy of United States Letters Patent No. Re. 36,633

Exhibit 3        Certified copy of United States Letters Patent No. 4,835,763

Exhibit 4        Certified copy of the recorded assignments of United States Letters Patent No. 4,893,306

Exhibit 5        Certified copy of the recorded assignments of United States Letters Patent No. Re. 36,633

Exhibit 6        Certified copy of the recorded assignments of United States Letters Patent No. 4,835,763

Exhibit 7        Claim Chart Comparing Cisco Products (such as the Catalyst 8510) to Claim 3 of U.S. Patent No. 4,893,306

Exhibit 8        Claim Chart Comparing Cisco Products (such as the Lightspeed 1010) to Claim 33 of U.S. Patent No. Re. 36,633

Exhibit 9        Claim Chart Comparing Cisco Products (such as the ONS 15327) to Claim 7 of U.S. Patent No. 4,835,763

Exhibit 10       Claim Chart Comparing Lucent Products (such as the CBX-500) to Claim 1 of U.S. Patent No. 4,893,306

Exhibit 11       Claim Chart Comparing Lucent Products (such as the CBX-500) to Claim 1 of U.S. Patent No. Re. 36,633

Exhibit 12       Claim Chart Comparing Lucent Products (such as the DMX Access Multiplexer (AM)) to Claim 7 of U.S. Patent No. 4,835,763

Exhibit 13       Claim Chart Comparing Alcatel Products (such as the OmniSwitch ) to Claim 1 of U.S. Patent No. 4,893,306

Exhibit 14       Claim Chart Comparing Alcatel Products (such as the Omniswitch) to Claim 1 of U.S. Patent No. Re. 36,633

Exhibit 15       A series of photographs of the Cisco Catalyst 8510 product

| | |
|---|---|
| Exhibit 16 | A series of photographs of the Lucent CBX-500 product |
| Exhibit 17 | A series of photographs of the Alcatel Omniswitch product |
| **Confidential Exhibit** | **Document** |
| Confidential Exhibit 18 | A list of all entities licensed under the Asserted Patent |
| Confidential Exhibit 19 | Description of Telcordia's Domestic Industry |
| **Appendix** | **Document** |
| Appendix A | Four copies of the prosecution history of United States Letters Patent No. 4,893,306 |
| Appendix B | Four copies of each reference mentioned in the prosecution history of United States Letters Patent No. 4,893,306 |
| Appendix C | Four copies of the prosecution history of United States Letters Patent No. Re. 36,633 |
| Appendix D | Four copies of each reference mentioned in the prosecution history of United States Letters Patent No. Re. 36,633 |
| Appendix E | Four copies of the prosecution history of United States Letters Patent No. 4,835,763 |
| Appendix F | Four copies of each reference mentioned in the prosecution history of United States Letters Patent No. 4,835,763 |
| **Confidential Appendices** | **Document** |
| Confidential Appendix G | Three copies of licenses under the Asserted Patents |

## I.    INTRODUCTION

1. This Complaint is filed by Telcordia Technologies, Inc. ("Telcordia"), pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on the unlawful importation into the United States, the sale for importation and the sale within the United States after importation, by manufacturers, importers, or consignees of certain equipment for telecommunications or data communications networks, including routers, switches, and hubs, and components thereof that infringe any of United States Letters Patent Nos. 4,893,306 ("the '306 patent"), Re. 36,633 ("the '633 patent"), and 4,835,763 ("the '763 patent") sometimes collectively referred to as "the Asserted Patents."

2. The proposed respondents are Cisco Systems, Inc., Lucent Technologies, Inc., Alcatel, S.A., and Alcatel USA, Inc.

3. Certified copies of the Asserted Patents are attached as **Exhibits 1 through 3,** respectively. Telcordia owns all right, title, and interest in each of the Asserted Patents. Certified copies of the recorded assignments of each of the patents are attached as **Exhibits 4 through 6.**

4. An industry as required by 19 U.S.C. § 1337(a)(2) and (3) exists in the United States relating to the technology protected by the Asserted Patents.

5. Telcordia seeks, as relief, an exclusion order barring from entry into the United States infringing equipment for telecommunications or data communications networks, including routers, switches, and hubs, and components thereof intended for Cisco, Lucent, or Alcatel equipment. Telcordia also seeks, as relief, cease and desist orders prohibiting the importation, sale, offer for sale, advertising, testing, or the soliciting of the sale of equipment for telecommunications or data communications networks, including routers, switches, and hubs, and components thereof, encompassed by the Asserted Patents.

1

## II.    COMPLAINANT

6.    Complainant Telcordia is a corporation organized under the laws of the Delaware, with its principal place of business located at One Telcordia Drive, Piscataway, New Jersey 08854.

7.    Telcordia is a provider of communications software, engineering, and consulting services throughout the United States.

8.    Telcordia's roots in the telecommunications industry begin with Alexander Graham Bell. Telcordia was formerly known as Bell Communications Research, Inc. (sometimes referred to as "Bellcore"). Bellcore was formed in 1984 as part of the breakup of AT&T to assist the newly created Regional Bell Operating Companies with technical support and research aimed at insuring the safety and integrity of the U.S. telecommunications network.

9.    Over the years, Telcordia has obtained more than 800 U.S. patents and has developed a rich history as an agent of change in the telecommunications industry. Telcordia's research led to a number of important communications formats and standards, such as the Multipurpose Internet Mail Extensions (MIME), Asymmetric Digital Subscriber Line (ADSL), Virtual Local Area Network (VLAN), Asynchronous Transfer Mode (ATM), Frame Relay, Synchronous Optical NETwork (SONET), Advanced Intelligent Network (AIN), Integrated Services Digital Network (ISDN), as well as other industry breakthroughs.

10. Today Telcordia is a leading provider of the software and services needed to manage multi-vendor, multi-technology, and multi-service networking infrastructures.

11. Telcordia continues to be at the forefront of telecommunications and data communications research, employing a number of research and licensing personnel in the United States.

2

### III.    PROPOSED RESPONDENTS

12.  On information and belief, proposed respondent Cisco Systems, Inc. ("Cisco") is a corporation organized under the laws of California with its principal place of business located at 170 West Tasman Drive, San Jose, California 95134. Cisco designs and sells hardware, software, and services relating to Internet networks, including routers, switches and hubs used in regulating and directing the transmission of data over various types of Internet networks.

13.  On information and belief, proposed respondent Lucent Technologies, Inc. ("Lucent") is a corporation organized under the laws of Delaware with its principal place of business located at 600 Mountain Avenue, Murray Hill, New Jersey 07974. Lucent designs and sells hardware, software, and services relating to various types of communications networks, including networks operating over the Internet.

14.  On information and belief, proposed respondent Alcatel S.A. is a corporation organized under the laws of France with its principal place of business located at 54, rue La Boétie, 75008, Paris, France. Alcatel S.A. provides a wide range of communications solutions in the form of hardware and software to telecommunication carriers, Internet service providers and enterprises for delivery of voice, data and video applications. In 2000, Alcatel S.A. acquired a Canadian company known as "Canadian Newbridge," and began providing the ATM products previously being sold by Canadian Newbridge.

15.  On information and belief, proposed respondent Alcatel USA, Inc. ("Alcatel USA") is a corporation organized under the laws of Delaware with its principal place of business located at 3400 W. Plano Parkway, Plano, Texas 75075, and is a subsidiary of Alcatel S.A. Alcatel USA assists Alcatel in selling products and services to United States customers. At times, Alcatel S.A. and Alcatel USA are referred to collectively as "Alcatel."

3

IV.    THE TECHNOLOGY AND PRODUCTS IN ISSUE

16.    The products in issue in this Complaint are certain types of equipment for telecommunications or data communications networks, including (but not limited to) devices commonly referred to as routers, switches, and hubs.  Also at issue are components of that equipment, particularly printed circuit boards and semiconductor chips that go onto those boards.

17. Communications networks rely on creating a path for data travel from one node to another, often over lines that are shared by many different types of devices attempting to communicate with many other devices.  As a result, success depends on devices and systems that can direct a variety of data types to the correct destination.

18. Since information is placed on shared lines, it must be identifiable so that it can later be extracted from the stream of information traveling over the shared line.  Thus, such a network requires devices that will read the incoming information, determine where particular pieces of information should go, and direct each piece to the next series of lines available to send that particular information on its way.  Today's communications networks use devices known generally as routers, switches, and hubs, to perform the functions of identifying information and directing it to its proper address or further distributing it.

19. Initially, the most substantial nationwide communications network involved telephone signals, ie. voice transmission.  With the advent of the internet and the widespread use of fiber optic cable, communications networks now can carry different types of information. For example, fiber optic cables now carry data as well as voice transmissions, and the various types of data now traveling over those networks can be formatted in different ways.

20. In addition, modern devices, such as computers, are now capable of accepting different types of signals—data, voice files, faxes, etc.  This in turn requires networks capable of

4

handling and routing different formatted information, as well as routers, switches and hubs that can support such capabilities.

## V.  THE PATENTS-IN-SUIT AND NON-TECHNICAL DESCRIPTIONS OF THE INVENTIONS

### A.  The '306 Patent

#### 1.  Identification of the Patent and Ownership by Telcordia

21.  United States Letters Patent No. 4,893,306, entitled "Method and Apparatus for Multiplexing Circuit and Packet Traffic," issued on January 9, 1990, to inventors Hung-Hsiang J. Chao, San H. Lee, and Liang T. Wu.  The '306 patent expires on November 10, 2007, and is based on Patent Application Serial No. 118,977 filed on November 10, 1987.

22.  The '306 patent has four independent claims and three dependent claims. Independent claims 1 and 3 and dependent claim 4 are being asserted in this investigation.

23.  Telcordia owns by assignment the entire right, title, and interest in and to the '306 patent. *See* **Exhibit 4.**

24.  This Complaint is accompanied by four copies of the certified prosecution history of the '306 patent, and four copies of each reference mentioned in the prosecution history. *See* **Appendices A and B.**

#### 2.  Non-Technical Description of the Patent

25.  The '306 invention allows different data sources, even those providing data at different bit rates (for example, voice, video, and computer data), to share the same communication link using a technique the patent calls "Dynamic Time Division Multiplexing" (DTDM).  In conventional "Time Division Multiplexing" (TDM), signals from different sources are transmitted over the same link by transmitting signals from each of the sources only during a fixed time period (slot) and in a fixed rotation.  In contrast, DTDM permits data from different

sources to be transmitted during any available time period, i.e., the multiplexing of signals is

flexible or "dynamic." Further, because DTDM does not require each source to wait before its

data can be transmitted over the shared link (as can happen in TDM), each stream of source data

can be transmitted at its own particular "bit rate."

26. DTDM takes advantage of "high bandwidth" communication links, i.e., transmission

media that can transfer large volumes of data at a high rate. Before source data (in the form of a

series of ones and zeroes, or "bits") is transmitted, the bits are first arranged in the form of

"packets," which consist of discrete blocks of data, each having a "header" at the front

indicating where the data is being sent. As soon as a packet from any source has been formed

and is ready to be sent, that packet can be written into an even larger package of data, referred to

as a "frame," for transmission over a communication link. The frames, which are continually

being created, are divided into separate "overhead" and "payload" fields, which are arranged so

that packets of source data can be placed in the payload fields.

27. A simplified illustration of the "dynamic" multiplexing of data from three different

sources on the same communication link, as taught by the '306 patent, is set forth below.



28. The '306 patent's DTDM technique thus accommodates different sources of data,

even ones that transmit data at different bit rates. This means that variable bit-rate sources (such

as packet-generating computer devices that can transmit large but intermittent "bursts" of data)

as well as constant bit-rate sources (such as traditional telephones that transmit a smaller but

continuous volume of data) can transmit data over the same communication link. In this way,

6

the '306 invention eliminates the need to construct separate telecommunications infrastructures to deal with different kinds of data sources.

### 3. Foreign Counterparts to the Patent

29. There are no foreign patents or foreign patent applications corresponding to the '306 patent.

### 4. Licenses

30. A list of entities licensed under the Asserted Patents is attached as **Confidential Exhibit 18**. Pursuant to Commission Rule 210.12(c)(1) three copies of the licenses are included in **Confidential Appendix G**.

## B. The '633 Patent

### 1. Identification of the Patent and Ownership by Telcordia

31. United States Letters Patent No. Re. 36,633, entitled "Synchronous Residual Time Stamp for Timing Recovery in a Broadband Network," was reissued on March 28, 2000, to inventors Paul E. Fleischer and Chi-Leung Lau. The '633 patent is based on Patent Application Serial No. 09/639,887, filed on November 8, 1995. The '633 patent is a reissue of U.S. Patent 5,260,978, issued November 9, 1993 and now surrendered, which was based on Patent Application Serial No. 07/969,592, filed on October 30, 1992. The '633 patent expires on October 30, 2012.

32. The '633 patent has 15 independent claims and 17 dependent claims. Independent claims 1, 3, 5, 8, 11, and 33 are asserted in this investigation.

33. Telcordia owns by assignment the entire right, title, and interest in and to the '633 patent. *See* **Exhibit 5**.

34.  This Complaint is accompanied by four copies of the certified prosecution history of the '633 patent, and four copies of each reference mentioned in the prosecution history. *See* **Appendices C and D.**

### 2.    Non-Technical Description of the Patent

35.  The '633 invention ensures that the source and destination clocks used in transporting data over a packet network are synchronized, using a technique referred to in the industry as the Synchronous Residual Time Stamp ("SRTS") method of clock recovery. Without "clock recovery," small timing differences caused by the packet transmission process will eventually result in a loss of information. This problem can be illustrated by imagining a telephone call as a series of telegrams provided to a messenger at a rate of one every five seconds. If the messenger delivers the telegrams at a slower rate than they were received, the telegrams will at some point overflow the "in basket," and the phone call will become unintelligible as telegrams get lost or jumbled.

36. One solution to this problem is for the messenger to apply a "time stamp" to each telegram as it is received, which would allow the messenger to deliver the telegrams at the same rate they were received.  As explained above in connection with the '306 patent, source data can be transmitted on a communication link with the bits arranged in the form of packets and frames, which can be divided into separate fields.  In such a network, time stamp information can be included in, for example, the "overhead" field of the packets or frames being transported.

37. Unfortunately, traditional clock recovery techniques using a "time stamp" required transport of a relatively large number of data bits, thus taking up "bandwidth" in the communication links (and "space" in the frames and packets) that could otherwise be used to transmit data, voice, or video information. Instead of relying on this traditional approach, the '633 patent discloses a technique that transports timing information on a network more

8

efficiently, i.e., using less bandwidth and space. The invention discloses a "Residual" Time Stamp technique that significantly reduces the number of bits required to provide a time reference but still provides enough timing information to enable synchronization of the source and destination clocks. In a simplified analogy, instead of sending a message with a time stamp having information regarding the year, month, day, hour, minute, and second, the '633 invention provides a time stamp consisting only of the information regarding the second. Due to the inventors' ingenuity, however, this is still enough information to allow the clocks to be synchronized.

### 3.    Foreign Counterparts to the Patent

38.    There are no foreign patents or foreign patent applications corresponding to the '633 patent.

### 4.    Licenses

39.    A list of entities licensed under the Asserted Patents is attached as **Confidential Exhibit 18**. Pursuant to Commission Rule 210.12(c)(1) three copies of the licenses are included in **Confidential Appendix G**.

## C.    The '763 Patent

### 1.    Identification of the Patent and Ownership by Telcordia

40.    United States Letters Patent No. 4,835,763, entitled "Survivable Ring Network," issued on May 30, 1989, to Chi-Leung Lau. The '763 patent expires on February 4, 2008, and is based on Patent Application Serial No. 152,238, filed on February 4, 1988.

41.    The '763 patent has four independent claims and four dependent claims. Independent claims 1 and 7 and dependent claims 2 and 8 are asserted in this investigation.

42.    Telcordia owns by assignment the entire right, title, and interest in and to the '763 patent. *See* **Exhibit 6**.

9

43.  This Complaint is accompanied by four certified copies of the prosecution history of the '763 patent, and four copies of each reference mentioned in the prosecution history. *See* **Appendices E and F.**

### 2.    Non-Technical Description of the Patent

44.  The '763 patent provides a novel way for communications networks to survive accidents that might occur to portions of the network, such as utility workers digging into the ground and cutting a cable, potentially disrupting phone service, email, and other communications to buildings in the area.

45. In the typical prior art communications network, a "node" on the network can send messages to other nodes, but only in one direction.  As a result, the most common approach used in the prior art to avoid service disruptions caused by accidents is (as shown in the figure below) to have both a main path (Ring 1) and a standby path (Ring 2) that is used when the main path fails:



46. When a problem occurs, the prior art systems transfer communications to the standby ring or initiate a "looping back" of communication received on one ring to the other ring.  The techniques for transferring communications and "looping back," however, are complicated.

47. The '763 patent improves on the prior art by providing a simple way to survive accidents and other service failures. Like the old arrangements, the invention of the '763 patent arranges the network in a ring configuration and uses redundant communications paths. But unlike the prior art, the invention of the '763 patent does not seek to maintain the ring characteristics by transferring communications to a standby path following a fault. Indeed, the patented arrangement does not function as a ring following a break in the main path. Instead, the '763 patent teaches parallel, active paths and provides protection switching for lower level, or "subrate" communications, within the rings when faults occur.

48. Ring communications consist of message-carrying subrate channels that are combined together, or "multiplexed," to form a main signal. When a fault is detected, the patented arrangement inserts error signals into the faulty subrate channels within the main signal. The error signals allow the signals from the good subrate channels on the other ring to be substituted at the destination node for the signals from the faulty subrate channels. Using this arrangement, the nodes do not need to know in advance which "ring" or main signal to use, significantly reducing the complexity of the arrangement.

### 3.    Foreign Counterparts to the Patent

49.    There are no foreign patents or foreign patent applications corresponding to the '763 patent.

### 4.    Licenses

50.    A list of entities licensed under the Asserted Patents is attached as **Confidential Exhibit 18.** Pursuant to Commission Rule 210.12(c)(1) three copies of the licenses are included in **Confidential Appendix G.**

11

## VI.   UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS—PATENT INFRINGEMENT

51. The accused products are devices and systems that work with telecommunications or data communications networks, including routers, switches, and hubs. Although the accused products have specific product numbers, the specific items sold to an individual customer may be uniquely configured for that customer. Indeed, many of the accused products are said to be "scalable," meaning they can be expanded to meet the customer's specific needs.

52. As sold to the customer, the accused products usually consist of a metal chassis or rack with a backplane communicating to slots for insertion of boards, the boards inserted into the chassis, and related items. The size of the chassis depends on the application for which the product is intended. Products for smaller applications may be roughly the size of a home stereo system component, while products for larger applications may be the size of a refrigerator or even larger. The chassis holds one or more modules or printed circuit boards, which in turn contain various integrated circuits as well as hardware for connecting the products to the telecommunications or data network. On information and belief, the final products may be assembled in the United States or abroad, but for those products assembled in the United States, most of the modules, printed circuit boards, and integrated circuits that make up final products are imported.

53. The specific products of Cisco, Lucent, and Alcatel that Telcordia currently believes have infringed or are infringing the asserted patent claims are set forth below. The list is based on Telcordia's current understanding, and it may be expanded or contracted as further information is obtained. By identifying specific products below, Telcordia is not intending to limit the scope of the investigation to the specific products listed, but rather intends to accused any products that infringe any of the asserted patent claims.

12

54. Among the components that may be imported and that, therefore, are at issue in this investigation, are boards that go into the accused routers, switches, and hubs, as well as particular semiconductor chips that are specially adapted for use in the accused devices. For example, on information and belief, many of the accused products use PMC-Sierra "framing" chips, such as the "S/UNI" family of chips, in a manner that infringes the '306 patent. ("S/UNI" is a PMC-Sierra registered trademark that stands for "Saturn User Network Interface".) Framing chips perform the function of arranging the data to be transmitted by the router or switch into frames as called for in, for example, the '306 patent. Without those chips, the larger equipment could not function, and the chips are designed and sold specifically to perform that function.

55. Many of the accused products also use other PMC-Sierra chips that implement, among other functions, the use of SRTS in a manner that infringes the '633 patent. Without those chips, the larger equipment could not perform that function, and the chips are designed and sold specifically to perform that function.

A.    **Cisco**

1.    **The '306 Patent**

56. On information and belief, Cisco products having components with framing chips that map packetized data into SONET frames infringe one or more of claims 1, 3 and 4 of the '306 patent. At least some of the accused Cisco products use PMC-Sierra framing chips.

57. The Cisco products believed to infringe claims 1, 3, and/or 4 of the '306 patent include at least:

- Cisco's Optical Networking Products including at least the ONS 15190, 15194, 15327, 15300 series (including 15301/ISR3301, 15303/ISR3303, 15304,15310, 15310-CL, 15310-MA, and 15327 units), 15454 MSPP, 15454 MSTP, and 15600 MSPP;

13

- Cisco's Switching Products, including at least the Catalyst 5000 series (including at least the 5000 and 5002 units), Catalyst 5500 series (including at least the 5500, 5505, and 5509 units), Catalyst 6000 series (including at least the 6006 and 6009 units), Catalyst 6500 series (including at least the 6503, 6509, 6509-NEB, 6509-NEB-A, and 6513 units), Catalyst 8500 series (including at least the 8510 MSR, 8510 CSR, and 8540 MSR units), Lightstream 1010, Lightstream 2020, MGX 8200 series (including at least the MGX 8220, 8230, 8240, 8250, and 8260 units), MGX 8800 series (including at least the MGX 8830, 8830/B, 8850, 8850/B and 8880 units), MGX 8900 series (including at least the MGX 8900 and 8950 units), IGX 8400 series (including at least the IGX 8410, IGX 8420, IGX 8430, and IGX 8450), BPX 8600 series (including at least the BPX 8620, BPX 8650, and BPX 8680);

- Cisco's Router Products including at least the 2691, 3600 series (including at least the 3620, 3631, 3640, 3660, 3661, and 3662 units), 3700 series (including at least the 3725 and 3745 units), 3800 series (including at least the 3725 and 3745 units), Cisco 6000 series (including at least the 6015, 6130, 6160, 6260, 6701, 6705, and 6732 units), Cisco 7000 series (including at least the 7000 and 7010 units), 7100 series (including at least the 7120 and 7140 units and the Cisco uBR7100 Universal Broadband Router Series, including the uBR7111, 7111E, 7114, and 7114E units), 7200 series (including at least the 7202, 7204, 7204 VXR, 7206, and 7206 VXR units and the Cisco uBR7200 Universal Broadband Router Series, including the uBR7223, uBR7246, and uBR7246VXR units), 7300 series (including at least the 7301 and 7304 units), 7400 series (including at least the 7401 ASR unit), 7500 series (including at least the 7505, 7507, 7513, and 7576 units), 7600 series (including at least the 7603, 7604, 7606, 7609,

14

and 7613), 10000 series (including at least the 10005, 10008, and 10720 units and the

Cisco uBR10012 Universal Broadband Router), 12000 series (including at least the

12004, 12006, 12008, 12010, 12012, 12016, 12404, XR12404, 12406, XR12406, 12410,

XR12410, 12416, XR12416, 12810, and 12816 units), and CRS-1, 6400 Broadband

Concentrator, and 8110 Broadband Termination Unit.

58. A chart that applies representative claim 3 of the '306 patent to one of the products

within the class of Cisco products using ATM SONET Framing Chips, specifically the Catalyst

8510, is attached as **Exhibit 7**.

### 2.    The '633 Patent

59. On information and belief, Cisco's products capable of using the Synchronous

Residual Time Stamp ("SRTS") clock recovery technique complying with the ATM Forum

Standard, ITU-T Standard I.363.1 issued by the International Telecommunications Union,

and/or ANSI T1.630 issued by the American National Standards Institute, infringe one or more

of claims 1, 3, 5, 8, 11, and 33 of the '633 patent.

60. The Cisco products believed to infringe claims 1, 3, 5, 8, 11, and 33 of the '633 patent

are products with ATM-enabled ports, including at least Cisco's Lightstream 1010 Switch, 3600

series (including at least the 3620, 3631, 3640, 3660, 3661, and 3662 units), uBR7200 series

routers (including at least the uBR7223, uBR7246, and uBR7246VXR units), 7200 series

routers (including at least the 7202, 7204, 7204VXR, 7206, and 7206VXR units), 7500 series

routers (including at least the 7505, 7507, 7513, and 7576 units), MGX 8200 Series Edge

Concentrator (including at least the 8220, 8230, 8240, 8250, and 8260 units), IGX 8400 series

switches (including at least the 8410, 8420, 8430, and 8450 units), Catalyst 5500 series and

8500 series switches (including at least the 8510MSR, 8510CSR, and 8540MSR units), MGX

8830, 8850 and 8880 series switches, 8110 Broadband Termination Unit, IP Transfer Point, and

ATM Port Adapter and Interface Modules.

61. A chart that applies representative claim 33 of the '633 patent to the Cisco products

that uses the SRTS standard clock recovery technique, such as the Lightspeed 1010 Switch, is

attached as **Exhibit 8**.

### 3.    The '763 Patent

62. On information and belief, Cisco's products that provide path protection switching,

including Unidirectional Path Switched Ring ("UPSR") switching, infringe one or more of

claims 1, 2, 7, and 8 of the '763 patent.

63. The Cisco products believed to infringe claims 1, 2, 7, and/or 8 of the '763 patent

include at least the ONS 15301/ISR3301, ONS 15303/ISR1303, ONS 15304, ONS 15305, ONS

15310, ONS 15310-CL, ONS 15310-MA, ONS 15327, ONS 15350, ONS 15454, ONS15454

MSPP, ONS 15454 MSTP, ONS 15455, ONS 15530, ONS 15540 ESP, ONS 15540 ESPx, ONS

15600 MSPP, 6705 Access Device, and 6732 Access Device..

64. A chart that applies representative claim 7 of the '763 patent to one of the Cisco

products that uses UPSR, specifically the ONS 15327, is attached as **Exhibit 9**.

### B.    Lucent

### 1.    The '306 Patent

65. On information and belief, Lucent products having components with framing chips

that map packetized data into SONET frames infringe one or more of claims 1, 3 and 4 of the

'306 patent. At least some of the accused Lucent products use PMC-Sierra framing chips.

66. The Lucent products believed to infringe claims 1, 3, and/or 4 of the '306 patent

include at least:

- Lucent products or processes using PMC-Sierra S/UNI framing chips for mapping packets (ATM cells) into SONET frames, including Lucent's CBX-500 Multiservice WAN switch equipped with ATM enabled ports;

- Lucent's CBX-500 switch using physical layer devices other than the PMC-Sierra S/UNI ATM framing chips;

- the DMX Access Multiplexer, the GX-550 Multiservice WAN Switch, CBX-3500 Multiservice Edge Switch, DMXtend Access Multiplexer, DMXplore Access Multiplexer, DMXpress Access Multiplexer, DDM 2000, and LambdaUnite Multiservice Switch;

- the Flexent Serving GPRS Support Node (SGSN), Lucent Gateway GPRS Support Node (GGSN), and AnyMedia Access System;

- the AXC 2000, APX 1000, APX 8000, MAX TNT Universal Gateway, APX 8100;

- the Stinger series of products (including Stinger FS+, Stinger RT, Stinger LS, Stinger DSL, and Stinger MRT);

- the 5E-XC Switch and Lucent Compact Switch;

- the PacketStar PSAX 20, 1000, 1250, 2300, and 4500 platforms, and the PacketStar AC 60;

- and the B-STDX 8000/9000 and TMX0880 products.

67. A chart that applies representative claim 3 of the '306 patent to one of the products within the class of Lucent products using ATM SONET Framing Chips, specifically the CBX-500 with an S/UNI framing chip, is attached as **Exhibit 10**.

17

### 2.    The '633 Patent

68. On information and belief, Lucent's products capable of using the Synchronous Residual Time Stamp ("SRTS") clock recovery technique complying with the ATM Forum Standard, ITU-T Standard I.363.1 issued by the International Telecommunications Union, and/or ANSI T1.630 issued by the American National Standards Institute, infringe one or more of claims 1, 3, 5, 8, 11, and 33 of the '633 patent.

69. The Lucent products believed to infringe claims 1, 3, 5, 8, 11, and 33 of the '633 patent include at least the CBX 3500 MS Edge Switch, CBX 500 MS WAN Switch, GX 550 MS Wan Switch, the PacketStar PSAX 1000, 1250, 2300, and 4500, the PacketStar AC60, PacketStar PSAX 20, and AXC 2000 Switch.

70. A chart that applies representative claim 33 of the '633 patent to one of the Lucent products that uses the SRTS standard clock recovery technique, specifically the CBX-500 with a PMC-Sierra S/UNI framing chip, is attached as **Exhibit 11**.

### 3.    The '763 Patent

71. On information and belief, Lucent's products that provide path protection switching, including UPSR ("Unidirectional Path Switched Ring") switching, infringe one or more of claims 1, 2, 7, and 8 of the '763 patent.

72. The Lucent products believed to infringe claims 1, 2, 7, and/or 8 of the '763 patent include at least the DMX Access Multiplexer (AM), DMXtend Access Multiplexer, DMXplore Access Multiplexer, DMXpress Access Multiplexer, DDM 2000, LambdaUnite Multiservice Switch, WaveStar TDM 10G, and Wave Star TDM 2.5G products.

73. A chart that applies representative claim 7 of the '763 patent to one of the Lucent products that uses UPSR, specifically the DMX Access Multiplexer (AM), is attached at **Exhibit 12**.

C.    **Alcatel**

1.    **The '306 Patent**

74.  On information and belief, Alcatel products having components with framing chips that map packetized data into SONET frames infringe one or more of claims 1, 3 and 4 of the '306 patent. At least some of the accused Alcatel products use PMC-Sierra framing chips.

75.  The Alcatel products believed to infringe claims 1, 3, and/or 4 of the '306 patent include at least:

- Alcatel's Omniswitch products using PMC-Sierra S/UNI framing chips in ATM Access Modules or other physical layer devices for mapping packets (ATM cells) into SONET frames;

- Alcatel's OmniAcess, 7670 RSP, 7670 ESE, 7x50 (including at least the 7450 and 7750), 7470 MSP, 7270 MSC, 3600 Mainstreet, and 3600+ Mainstreet products that map either or both ATM and non-ATM forms of packetized data into SONET frames.

76.  A chart that applies representative claim 3 of the '306 patent to one of the products within the class of Alcatel products using ATM SONET Framing Chips, specifically the Omniswitch, is attached as **Exhibit 13**.

2.    **The '633 Patent**

77.  On information and belief, Alcatel's products capable of using the Synchronous Residual Time Stamp ("SRTS") clock recovery technique complying with the ATM Forum Standard, ITU-T Standard I.363.1 issued by the International Telecommunications Union, and/or ANSI T1.630 issued by the American National Standards Institute, infringe one or more of claims 1, 3, 5, 8, 11, and 33 of the '633 patent.

19

78. The Alcatel products believed to infringe claims 1, 3, 5, 8, 11, and 33 of the '633 patent include at least the Omniswitch, OmniAccess, 7670 RSP, 7670 ESE, 7470 MSP, 7270 MSC, 3600 Mainstreet, 3600+ Mainstreet, and SpeedTouch 690 products.

79. A chart that applies representative claim 33 of the '633 patent to one of the Alcatel products that uses the SRTS standard clock recovery technique, specifically the Omniswitch, is attached as **Exhibit 14.**

**D.    Direct, Contributory, and Induced Infringement**

80. To the extent any of the asserted claims require products sold by the respondents to be installed in a network or operated in order to satisfy all claim elements, on information and belief the accused products infringe both directly and indirectly.

81. On information and belief, each of the respondents tests or operates the accused products in the United States by using them in a network and performing the claimed methods, thereby directly infringing any claim requiring such operation.

82. Cisco, Lucent, and Alcatel have had notice of the three asserted patents since, at a minimum, the filing of lawsuits in the U.S. District Court for Delaware in July 2004, as described below in Section X.

83. Each of the accused products listed above are specifically designed to be combined with telecommunications or data communications networks and to comply with various standards in a manner that results in the apparatuses and methods of the asserted claims.

84. The accused products have no substantial non-infringing use other than to be combined with telecommunications or data communications networks and to comply with various standards in a manner that results in the apparatuses and methods of the asserted claims.

85. Respondents induce infringement of the asserted claims by designing the accused products or boards to be incorporated into the accused products specifically for use in

telecommunications or data communications networks and to comply with various standards in a manner that results in the apparatuses and methods of the asserted claims, by publishing materials describing the use of the accused products in infringing manners, and by offering support and technical assistance to their customers that encourages use of the accused products in telecommunications or data communications networks in ways that infringed the asserted claims.

## VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

86. The accused equipment is not widely available to the general public. Instead, it is typically sold directly to customers developing or operating a telecommunications or data communications network, and is often modified to meet a customer's specific requirements. Some of the accused equipment is extremely large and costs several thousand dollars or more. The accused equipment is not sold at retail establishments and does not always have standard packaging or markings with geographic origins of the equipment or its components. Once installed in telecommunications or data communications networks, the equipment is typically kept in secure locations away from public scrutiny.

87. Cisco, Lucent, Alcatel, and PMC-Sierra have not stated publicly where the specific accused equipment or chips are manufactured, and such information is not widely available to the general public. As a result, Telcordia is unable to provide publicly available information that details the importation of the accused products.[1]

88. On information and belief, Cisco, Lucent, and Alcatel import, sell for importation, and/or sell within the United States after importation, the accused equipment, or at a minimum

---

[1] Telcordia has obtained information during discovery in the pending district court cases regarding these issues, but cannot currently disclose that information in light of the protective orders governing those litigations.

those three companies (or their contract manufacturers acting on their behalf) import components used in the accused products or they sell those imported components after importation as part of the larger accused equipment. Specifically, it is believed that Cisco, Lucent, and Alcatel use imported boards or modules containing, among other things, PMC-Sierra chips made overseas, to assemble and sell final products in the United States.

89. Due to the size and costs of the accused products, Telcordia has not submitted physical exemplars together with the Complaint. As described below, Telcordia has included as exhibits digital pictures of the accused infringing devices it has been able to obtain.

A.    **Cisco**

90. On information and belief, Cisco manufacturers and assembles various infringing routers, switches, hubs and other telecommunications equipment, and sells that equipment in the United States. It is believed that Cisco contracts with several well-known companies who provide printed circuit boards to the electronics industry, that those companies make the boards that go into Cisco's accused products, and that many (if not all) of those boards are made outside the United States. For example, in their most recent annual reports, Jabil Electronics, Celestica, Inc., and Solectron Corporation all list Cisco as one of their largest customers for electronic manufacturing services. *See generally* http://www.jabil.com, http://www.celestica.com, and http://www.solectron.com. Each of those suppliers has significant overseas operations.

91. In addition, each Cisco board contains a number of integrated circuits. On information and belief, nearly all integrated circuits are made, at least in part, outside the United States.

92. A Telcordia employee obtained a Cisco Catalyst 8510 from a distributor in the United States. Exhibit 15 is a series of photographs of that product. The metal chassis indicates that it

22

was made in the United States, but at several of the circuit boards contained within the chassis indicates that they were made in Malaysia, and many of the chips bear legends indicating they were manufactured outside the U.S. The Catalyst 8510 boards include several PMC-Sierra chips, including a PMC-Sierra S/UNI 155-Lite framer chip, which is believed to be manufactured outside the United States.

**B.    Lucent**

93. On information and belief, Lucent manufacturers and assembles various infringing routers, switches, hubs and other telecommunications equipment, and sells that equipment in the United States. It is believed that Lucent contracts with several well-known companies who provide printed circuit boards to the electronics industry, that those companies make the boards that go into Lucent's accused products, and that many of those boards are made outside the United States. For example, in their most recent annual reports, Celestria, Inc., and Solectron Corporation all list Lucent as one of their largest customers for electronic manufacturing services. *See generally* http://www.celestria.com, and http://www.solectron.com. Each of those suppliers has significant overseas operations.

94. In addition, each Lucent board contains a number of integrated circuits. On information and belief, nearly all integrated circuits are made, at least in part, outside the United States.

95. A Telcordia employee obtained a Lucent CBX-500 from a distributor in the United States. **Exhibit 16** is a series of photographs of that product. The metal chassis indicates that it was assembled in the U.S. of U.S. and non-U.S. components. Many of the chips on those boards bear legends indicating that they were manufactured outside the U.S. At least one board contains a PMC-Sierra S/UNI 155 Dual framer chip, which is believed to be manufactured outside the United States.

23

### C.    Alcatel

96.   On information and belief, Alcatel manufacturers and assembles various infringing routers, switches, hubs and other telecommunications equipment, and sells that equipment in the United States.  Like Cisco and Lucent, it is believed that Alcatel contracts with several well-known companies who provide printed circuit boards to the electronics industry, that those companies make the boards that go into Alcatel's accused products, and that many of those boards are made outside the United States. .

97. In addition, each Alcatel board contains a number of integrated circuits.  On information and belief, nearly all integrated circuits are made, at least in part, outside the United States.

98.   A Telcordia employee obtained an Alcatel Omniswitch product from a distributor in the United States.  **Exhibit 17** is a series of photographs of that product.  The metal chassis indicates that it was assembled in the U.S. of U.S. and non-U.S. components.  Many of the chips on those boards bear legends indicating that they were manufactured outside the U.S.

## VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBER

99. Since Telcordia is not a seller or importer of the accused products and is unaware of precisely which products or components are being imported, it is unsure what HTSUS numbers are used to cover the imports associated with the accused products.  At a minimum, semiconductor chips used as components in the accused products may be imported under any of the following classifications:  8541.50.00 (other semiconductor devices), various categories within section 8542 (electronic integrated circuits and microassemblies; parts thereof).  Routers, switches or hubs (including components such as modules or boards) may be imported under any of the following classifications:  various categories within section 8517.30 (telephonic or telegraphic switching apparatus), 8517.90.34 (electrical apparatus for line telephony or line

telegraphy ..., parts, printed circuit assemblies), 8534.00.00 (printed circuits), 8543.89.60

(articles designed for connection to telegraphic or telephonic apparatus or instruments or to

telegraphic or telephonic networks), or 8543.90.68 (electrical machines and apparatus ...,

printed circuit assemblies, other).

## IX.    THE DOMESTIC INDUSTRY

100.    Complainants have established a domestic industry under 19 U.S.C. §

1337(a)(3)(c).

101.    A domestic industry as defined by 19 U.S.C. § 1337(a)(3)(c) exists with respect to

Telcordia's activities in the United States that exploit the Asserted Patents by reason of

Complainants' substantial investment in licensing of the Asserted Patents.

102.    Telcordia employs several domestic employees whose primary responsibilities are

to further Telcordia's licensing activities related to the exploitation of Telecordia's

communications technology patent holdings, including the Asserted Patents.  Other employees,

such as clerical personnel and contract specialists, assist the licensing effort in addition to

supporting other corporate departments..

103.    The activities of these employees devoted to the Telcordia licensing program

include: the identification of companies that make, use, or sell products that may be covered by

any of the claims of any of the Telcordia patents; the contact of potential licensees, preparation

of correspondence with those potential licensees identifying products and patent claims in issue,

and the conduct of licensing negotiations; participation in the enforcement of the patents when

licensing negotiations fail; market and industry research; and participation in industry groups

and standards bodies that promote the use of the technology covered by Telcordia's patents.

104.    The licensing employees are employed in Telcordia's domestic facilities in

Piscataway, New Jersey.

105.   As noted above, **Confidential Exhibit 18** is a list of entities that are licensed under the Asserted Patents. In addition to those licenses, Telcordia's licensing personnel, or attorneys acting under their supervision, have contacted multiple other companies to offer potential licensing opportunities under the Telcordia patents, including the Asserted Patents.

106.   Telcordia has made substantial investments in the operating costs devoted to the licensing program at its domestic facility, including paying the salaries for personnel responsible for licensing activities. Telcordia has also made substantial investment in third party service providers related to the exploitation of the Asserted Patents. *See* **Confidential Exhibit 19.**

## X.    RELATED LITIGATION

107.   The '306 patent was the subject of litigation between Telcordia (then known as Bell Communications Research, Inc.) and Marconi Communications, Inc. (then known as Fore Systems, Inc. in the U.S. District Court for the District of Delaware. *See Bell Communications Research, Inc. v. Fore Systems, Inc.*, C.A. No. 98-586-JJF (D. Del.), amended as *Telcordia Technologies, Inc. v. Fore Systems, Inc.*, No. 98-586-JJF (D. Del.). An appeal of Judge Farnan's summary judgment ruling of September 21, 2000 was appealed to the Court of Appeals for the Federal Circuit, reversed, and remanded. *Bell Communications Research, Inc. v. Fore Systems, Inc.*, 62 Fed. Appx. 951 (Fed. Cir. 2003) (unpublished). While on remand, the parties settled, with Fore Systems taking a license under the '306 patent in addition to other Telcordia patents, including the Asserted Patents.

108.   All three Asserted Patents are the subject of litigation between Telcordia and Cisco that was filed on July 16, 2004 and is currently pending in the U.S. District Court for the District of Delaware. *See Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, C.A. No. 04-876-GMS (D. Del.). The case is currently in discovery, and a Markman hearing was held on May 5, 2006. Trial is currently scheduled for May 2007.

109.    All three Asserted Patents are the subject of litigation between Telcordia and

Lucent that was filed on July 16, 2004 and is currently pending in the U.S. District Court for the

District of Delaware. *See Telcordia Technologies, Inc. v. Lucent Technologies, Inc.*, C.A. No.

04-875-GMS (D. Del.). The case is currently in discovery, and a Markman hearing was held on

May 5, 2006. Trial is currently scheduled for May 2007.

110.    All three Asserted Patents are the subject of litigation between Telcordia and

Alcatel that was filed on July 16, 2004 and is currently pending in the U.S. District Court for the

District of Delaware. *See Telcordia Technologies, Inc. v. Alcatel S.A.*, C.A. No. 04-87-GMS (D.

Del.). Alcatel filed a counterclaim asserted that Telcordia infringed an Alcatel patent. The case

is currently in discovery, and a Markman hearing was held on May 5, 2006. Trial is currently

scheduled for May 2007.

## XI.    RELIEF REQUESTED

111.    WHEREFORE, by reason of the foregoing, Complainant Telcordia requests that

the United States International Trade Commission:

(a)  Institute an immediate investigation, pursuant to Section 337 of the Tariff Act of

1930, as amended, 19 U.S.C. § 1337(a)(1)(B)(i) and (b)(1), with respect to violations of Section

337 based upon the importation, sale for importation, and sale after importation, into the United

States of certain equipment for telecommunications or data communications networks, including

routers, switches, and hubs, and components thereof intended for incorporation into Cisco,

Lucent, and Alcatel equipment, that infringe each of United States Letters Patent Nos.

4,893,306, 4,835,763, and Re. 36,633.

(b)  Schedule and conduct a hearing on said unlawful acts and, following said

hearing;

(c)  Issue a permanent limited exclusion order, pursuant to 19 U.S.C. § 1337(d)(2)

27

barring from entry into the United States imported Cisco, Lucent, and Alcatel equipment for telecommunications or data communications networks, including routers, switches, and hubs, and components thereof intended for Cisco, Lucent, and Alcatel equipment, that infringe one or more claims of any of United States Letters Patent Nos. 4,893,306, 4,835,763, and Re. 36,633;

(d)  Issue permanent cease and desist orders, pursuant to 19 U.S.C. § 1337(f), directing those respondents in the United States to cease and desist from importing, marketing, advertising, demonstrating, testing, or warehousing inventory for distribution, sale or use of equipment for telecommunications or data communications networks, including routers, switches, and hubs, and components thereof intended for Cisco, Lucent, and Alcatel equipment, that infringe one or more claims of any of United States Letters Patent Nos. 4,893,306, 4,835,763, and Re. 36,633; and

(e)  Grant such other and further relief as the Commission deems just and proper based on the facts determined by the investigation and the authority of the Commission.

Respectfully Submitted,

Smith R. Brittingham IV
Donald R. Dunner
Steven M. Anzalone
Houtan K. Esfahani
James T. Wilson
John Williamson

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400
Counsel for Complainant Telcordia
Technologies, Inc.

## VERIFICATION OF COMPLAINT

I, Joe Giordano, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1.    I am a Vice-President and Deputy General Counsel of Complainant Telcordia Technologies, Inc. and am duly authorized to sign this Complaint on behalf of Complainant;

2.    I have read the foregoing Complaint;

3.    To the best of my knowledge, information, and belief, based on reasonable inquiry, the foregoing Complaint is well-founded in fact and is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

4.    The allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

5.    The foregoing Complaint is not being filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed on _____*May 9*_____, 2006.

29

# EXHIBIT 2

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.

---

**In the Matter of**

**CERTAIN EQUIPMENT FOR
TELECOMMUNICATIONS OR DATA
COMMUNICATIONS NETWORKS,
INCLUDING ROUTERS, SWITCHES,
AND HUBS, AND COMPONENTS
THEREOF**

Inv. No. 337-TA-574

---

## NOTICE OF INVESTIGATION

AGENCY:  U.S. International Trade Commission

ACTION:  Institution of investigation pursuant to 19 U.S.C. § 1337

SUMMARY:  Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on May 15, 2006, under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, on behalf of Telcordia Technologies, Inc. of Piscataway, New Jersey.  An amended complaint was filed on June 5, 2006.  The complaint as amended alleges violations of section 337 in the importation into the United States, the sale for importation, and the sale within the United States after importation of certain equipment for telecommunications or data communications networks, including routers, switches, and hubs, and components thereof, by reason of infringement of claims 1, 3, and 4 of U.S. Patent No. 4,893,306, claims 1, 3, 5, 8, 11, and 33 of U.S. Patent No. Re. 36,633, and claims 1, 2, 7, and 8 of U.S. Patent No. 4,835,763.  The amended complaint further alleges that an industry in the United States exists as required by subsection (a)(2) of section 337.

The complainant requests that the Commission institute an investigation and, after the investigation, issue a permanent limited exclusion order and permanent cease and desist orders.

ADDRESSES:  The amended complaint, except for any confidential information contained therein, is available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street, S.W., Room 112, Washington, D.C. 20436, telephone 202-205-2000.  Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on 202-205-1810.  Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at 202-205-2000.  General information concerning the Commission may also be obtained by accessing its internet server at http://www.usitc.gov.  The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at http://edis.usitc.gov.

FOR FURTHER INFORMATION CONTACT:  Steven R. Pedersen, Office of Unfair Import Investigations, U.S. International Trade Commission, telephone 202-205-2781.

AUTHORITY:  The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 C.F.R. § 210.10 (2005).

SCOPE OF INVESTIGATION:  Having considered the amended complaint, the U.S. International Trade Commission, on June 9, 2006, ORDERED THAT –

        (1)  Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain equipment for telecommunications or data communications networks, including routers, switches, and hubs, or components thereof, by reason of infringement of one or more of claims 1, 3, and 4 of U.S. Patent No. 4,893,306, claims 1, 3, 5, 8, 11, and 33 of U.S. Patent No. Re. 36,633, and claims 1, 2, 7, and 8 of U.S. Patent No. 4,835,763, and whether an industry in the United States exists as required by subsection (a)(2) of section 337;

        (2)  For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

                (a)  The complainant is –

                        Telcordia Technologies, Inc.
                        One Telcordia Drive
                        Piscataway, New Jersey  08854

      (b)  The respondents are the following entities alleged to be in violation of section 337, and are the parties upon which the amended complaint is to be served:

> Cisco Systems, Inc.
> 170 West Tasman Drive
> San Jose, California  95134
>
> Lucent Technologies, Inc.
> 600 Mountain Avenue
> Murray Hill, New Jersey  07974
>
> Alcatel S.A.
> 54, rue La Boétie
> 75008, Paris, France
>
> Alcatel USA, Inc.
> 3400 W. Plano Parkway
> Plano, Texas  75075
>
> PMC-Sierra, Inc.
> 3975 Freedom Circle
> Santa Clara, CA  95054

      (c)  The Commission investigative attorney, party to this investigation, is Steven R. Pedersen, Esq., Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street, S.W., Suite 401, Washington, D.C. 20436; and

      (3)  For the investigation so instituted, the Honorable Robert L. Barton, Jr. is designated as the presiding administrative law judge.

      Responses to the amended complaint and the notice of investigation must be submitted by the named respondents in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 C.F.R. § 210.13.  Pursuant to 19 C.F.R. §§ 201.16(d) and 210.13(a), such responses will be considered by the Commission if received not later than 20 days after the date of service by the Commission of the amended complaint and the notice of investigation. Extensions of time for submitting responses to the amended complaint and the notice of investigation will not be granted unless good cause therefor is shown.

3

Failure of a respondent to file a timely response to each allegation in the amended complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the amended complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the amended complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of a limited exclusion order or cease and desist order or both directed against the respondent.

By order of the Commission.

/s/
Marilyn R. Abbott
Secretary to the Commission

Issued: June 9, 2006

4